UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------x

PANTELIS CHRYSAFIS, BETTY COHEN,
BRANDIE LACASSE, MUDAN SHI, and
FENG ZHOU,

               Plaintiffs,

               -against-

LETITIA JAMES, in her official capacity as
Attorney General of the State of New York,

               Defendant.

                      No. 21-cv-00998 -SJF-ARL

: : : : : : : : : : : : : : :

---------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

GIBSON, DUNN & CRUTCHER LLP

200 Park Avenue
New York, NY  10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND .................................................................................................... 6

    I.     Eviction Proceedings Prior To The COVID-19 Pandemic. ............................................ 6

    II.    Governor Cuomo Issues A Temporary Eviction Moratorium. ....................................... 7

    III.   CEEFPA Extends And Expands The Eviction Moratorium. ........................................... 8

    IV.   CEEFPA Permits Hardship Declarations Based On Undefined Hardship Categories And Gives Landlords No Ability To Review Such Claims. ......................................... 12

    V.    CEEFPA Has Severely Impacted Plaintiffs. ................................................................. 13

LEGAL STANDARD ............................................................................................................. 15

ARGUMENT .......................................................................................................................... 16

    I.     Plaintiffs Will Be Irreparably Harmed Absent Injunctive Relief. ............................... 16

    II.    Plaintiffs Are Likely To Succeed On The Merits Of Each Of Their Claims................ 17

      A. CEEFPA Violates Plaintiffs' Freedom Of Speech Rights. ........................................ 18

      B. CEEFPA Violates Plaintiffs' Due Process Rights. ................................................... 21

      C. CEEFPA Violates Plaintiffs' Right To Petition Under The First Amendment ........... 23

      D. CEEFPA Constitutes Unconstitutional Judicial Delegation. ..................................... 24

    III.   The Balance Of Hardships And Public Interest Strongly Favor Injunctive Relief....... 24

CONCLUSION ....................................................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*3M Co. v. Performance Supply, LLC*,
   458 F. Supp. 3d 181 (S.D.N.Y. 2020)..................................................................15

*725 Eatery Corp. v. City of New York*,
   408 F. Supp. 3d 424 (S.D.N.Y. 2019)..................................................................15

*Abdul Wali v. Coughlin*,
   754 F.2d 1015 (2d Cir. 1985)..............................................................................16

*ACA Int'l v. Healey*,
   457 F. Supp. 3d 17 (D. Mass. 2020) ...................................................................23

*Agudath Israel of Am. v. Cuomo*,
   983 F.3d 620 (2d Cir. 2020)...................................................................3, 16, 25

*All. for Open Soc'y Int'l, Inc. v. U.S. Agency for Int'l Dev.*,
   651 F.3d 218 (2d Cir. 2011), *aff'd sub nom. Agency for Int'l Dev. v. All. for
   Open Soc'y Int'l, Inc.*, 570 U.S. 205 (2013) ......................................................20

*Bill Johnson's Rests., Inc. v. N.L.R.B.*,
   461 U.S. 731 (1983)........................................................................................5, 23

*Bloom v. Crosson*,
   590 N.Y.S.2d 328 (3d Dep't 1992), *aff'd*, 82 N.Y.2d 768 (1993)......................24

*Boreali v. Axelrod*,
   71 N.Y.2d 1 (1987) .............................................................................................17

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*,
   447 U.S. 557 (1980)............................................................................................19

*Christopher v. Harbury*,
   536 U.S. 403 (2002)............................................................................................23

*Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*,
   598 F.3d 30 (2d Cir. 2010)..................................................................................15

*Cunney v. Bd. of Trustees of Vill. of Grand View*,
   660 F.3d 612 (2d Cir. 2011)................................................................................21

*Elrod v. Burns*,
   427 U.S. 347 (1976).........................................................................................3, 16

*F.C.C. v. Fox Television Stations, Inc.*,
   567 U.S. 239 (2012).....................................................................................5, 21, 22

*Fisher v. Univ. of Tex. at Austin,*
  570 U.S. 297 (2013)..........................................................................................18

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.,*
  515 U.S. 557 (1995)..........................................................................................20

*Jolly v. Coughlin,*
  76 F.3d 468 (2d Cir. 1996)........................................................................4, 15, 16

*Kramer v. N.Y. City Bd. of Educ.,*
  715 F. Supp. 2d 355 (E.D.N.Y. May 20, 2010) ...................................................21

*Mathews v. Eldridge,*
  424 U.S. 319 (1976)..................................................................................5, 21, 22

*N.Y. State Superfund Coal. v. N.Y. State Dept. of Env't Conservation,*
  75 N.Y.2d 88 (1989) .........................................................................................17

*Nat'l Advert. Co. v. Town of Babylon,*
  900 F.2d 551 (2d Cir. 1990)...............................................................................17

*Nat'l Inst. of Family & Life Advocates v. Becerra,*
  138 S. Ct. 2361 (2018)............................................................................4, 19, 20

*PSEG Long Island LLC v. Town of N. Hempstead,*
  158 F. Supp. 3d 149 (E.D.N.Y. 2016) ...............................................................20

*Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.,*
  487 U.S. 781 (1988)..........................................................................................18

*Roman Catholic Diocese of Brooklyn, N.Y. v. Cuomo,*
  141 S.Ct. 63 (Nov. 25, 2020) (per curiam) ...........................................................3

*Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.,*
  547 U.S. 47 (2006).......................................................................................4, 18

*United Mine Workers of Am., Dist. 12 v. Ill. State Bar Ass'n,*
  389 U.S. 217 (1967)..........................................................................................23

*United States v. Playboy Entm't Grp., Inc.,*
  529 U.S. 803 (2000)..........................................................................................18

*Wooley v. Maynard,*
  430 U.S. 705 (1977)..........................................................................................20

*Zauderer v. Off. of Disciplinary Counsel of Supreme Court of Ohio,*
  471 U.S. 626 (1985)..........................................................................................18

**Statutes, Acts & Executive Orders**

COVID-19 Emergency Eviction and Foreclosure Prevention Act of 2020...........................*passim*

Executive Order No. 202.8 ...............................................................................7

Executive Order No. 202.28 .............................................................................7

N.Y. Judiciary Law § 212 .............................................................................6, 24

N.Y. Penal Law § 210 ....................................................................................22

N.Y. Real Property Actions and Proceedings Law § 711 ...............................................6

N.Y. Real Property Actions and Proceedings Law § 721 ...............................................8

N.Y. Real Property Law § 7 ............................................................................8

Tenant Safe Harbor Act ...................................................................7, 11, 13, 22

**Other Authorities**

11A Charles Allen Wright & Arthur R. Miller, Federal Practice & Procedure
§ 2948.1 (3d ed. 2020) ...............................................................................16

**Constitutional Provisions**

U.S. Const. amend I ..................................................................................*passim*

U.S. Const. amend XIV ...............................................................................21, 23

N.Y. Const. art. I § 8 ................................................................................18

N.Y. Const. art. I § 6 ................................................................................21

N.Y. Const. art. I § 9 ................................................................................23

N.Y. Const. art. VI § 30 ............................................................................6, 24

Plaintiffs Pantelis Chrysafis, Betty S. Cohen, Brandie LaCasse, Mudan Shi, and Feng Zhou ("Plaintiffs") submit this memorandum of law in support of their application for a temporary restraining order and preliminary injunction.

## PRELIMINARY STATEMENT

This case challenges the constitutionality of New York State's new eviction moratorium law, Part A of the COVID-19 Emergency Eviction and Foreclosure Prevention Act of 2020 ("CEEFPA") (Ex. 1).[1]  CEEFPA extends a temporary eviction moratorium into a more than year-long eviction-free span that has pushed so many of the State's small property owners, like Plaintiffs here, to the brink of financial catastrophe and emotional disaster.  CEEFPA effectively frees tenants from any consequence for refusing to pay rent and shackles landlords from taking any meaningful action to protect their livelihoods.  With the State's latest—and most severe—eviction moratorium law, many property owners may not be able to pay their mortgages or otherwise meet their financial obligations, leading to the loss of their properties and other irreparable harms.  On top of all that, CEEFPA tramples on Plaintiffs' constitutional rights in at least five significant, separate ways.  Plaintiffs accordingly seek emergency and preliminary injunctive relief preventing CEEFPA Part A's further enforcement until this Court decides Plaintiffs' claims and issues permanent declaratory and injunctive relief finding that CEEFPA is unconstitutional on its face and as applied to Plaintiffs.

*First*, CEEFPA impermissibly compels property owners to disseminate government messages with which they disagree, in violation of their rights under the First Amendment and the New York State Constitution.  Specifically, under CEEFPA, property owners are compelled to

---

[1]  References to "Ex. __" are to the exhibits to the Declaration of Akiva Shapiro, dated February 25, 2021 and filed herewith.  References to "___ Decl." are to the declarations submitted in support of the instant application.

distribute "Hardship Declaration" forms drafted by the government to tenants, in which tenants are invited to avail themselves of the eviction moratorium merely by checking a box asserting, *inter alia*, that the tenant is "experiencing financial hardship" and therefore "unable to pay" the rent owed due to COVID-19, or that vacating the premises would pose a "significant health risk." Landlords must also provide tenants with a government-curated list of legal service providers who are available to assist the tenants in seeking to avoid eviction. Landlords are required to pay for the printing and mailing of these lists and forms, and to arrange and pay for the translation of the forms into certain languages spoken by their tenants. In essence, the State is forcing property owners to speak in support of a government eviction moratorium program with which they disagree and to recommend specific legal organizations whose aim and advice are squarely adverse to landlords' interests. This is unconstitutional compelled speech.

*Second*, CEEFPA is void for vagueness under the federal and state Due Process clauses, as it enables tenants to avoid eviction and forsake their rental obligations by declaring hardship based on undefined "[s]ignificant loss of household income," "[i]ncrease in necessary out-of-pocket expenses," and "other circumstances" purportedly related to the COVID-19 pandemic, among other vague and undefined categories, inviting abuse and arbitrary enforcement.

*Third*, CEEFPA violates property owners' procedural due process rights under the federal and state Due Process clauses by providing them with *no way* to challenge or verify tenants' declarations of hardship.

*Fourth*, because CEEFPA prohibits landlords from exercising their rights to file eviction petitions against tenants who have submitted these declarations until at least May 1, 2021 (after barring them from doing so through February 26, 2021 even without a declaration of hardship), it

violates Plaintiffs' rights under the petition clauses of the First Amendment and New York State Constitution.

*Fifth*, in granting the chief administrative judge the unchecked power to unilaterally extend the eviction moratorium statewide, CEEFPA violates the New York State Constitution's delegation of powers.

If CEEFPA Part A is not enjoined, Plaintiffs will face irreparable harm through the continued violation of their constitutional rights.  As the Supreme Court has made clear, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."  *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also, e.g.*, *Roman Catholic Diocese of Brooklyn, N.Y. v. Cuomo*, 141 S.Ct. 63 (Nov. 25, 2020) (per curiam) (on application for injunctive relief) (same); *Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 637 (2d Cir. 2020) (granting preliminary injunction in light of "alleged deprivation of a constitutional right").  And those are not the only irreparable harms Plaintiffs face.  The CEEFPA regime is "literally forcing [Plaintiff LaCasse] to risk [her] life in order to make ends meet."  LaCasse Decl. ¶ 10.  Plaintiff LaCasse, who is immunocompromised, has been forced to take another job to cover her costs because she cannot remove her nonpaying tenants from one of her properties, and may have to take another.  LaCasse Decl. ¶¶ 1, 10.  Plaintiffs Shi and Zhou "can no longer pay the rent on the house [they] are currently living in," but cannot evict their non-paying tenants so they can move into the property they own.  Shi Decl. ¶¶ 9–10.  Plaintiff Cohen fears she will lose the rental unit she has owned since 1987 if she cannot evict her non-paying tenant.  Cohen Decl. ¶¶ 1, 8.  And Plaintiff Chrysafis, who has already had to borrow money from his elderly parents to cover the mortgage and taxes on his property because of his tenants' nonpayment of rent, and may be forced

to do so again.  Vekiarellis Decl. ¶ 11.  His inability to collect rental income has also caused unending strife within his own family.  *Id*.

Plaintiffs are, moreover, likely to succeed on the merits of their claims, and at a minimum, raise sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in their favor.  *See Jolly v. Coughlin*, 76 F.3d 468, 473 (2d Cir. 1996).  Plaintiffs are likely to prevail on their First Amendment compelled speech claim because CEEFPA compels property owners to produce with every written demand for rent a form—the text of which is mandated by the government—inviting tenants to declare that they are "experiencing financial hardship" and therefore "unable to pay" the rent owed, or that vacating the premises would pose a "significant health risk," even though property owners may disagree with these statements made by their tenants and certainly do not support or approve of the resulting moratorium on eviction proceedings against them.  CEEFPA Part A § 1(4).  *See, e.g.*, *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 61 (2006) (recognizing that "freedom of speech prohibits the government from telling people what they must say").  Property owners are also required to provide tenants with "a list of all not-for-profit legal service providers actively handling housing matters in the county where the subject premises are located," which is prepared by the government.  *Id*. § 3.  The message is plain:  tenants should seek legal advice from these owner-recommended organizations on how to avoid paying rent.  Plaintiffs are thus forced to support speech and organizations directly adverse to their own interest.  *See Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2371 (2018) (requiring petitioners to provide a "government-drafted script about the availability of state-sponsored services" "plainly 'alters the content' of petitioners' speech" and likely violates the First Amendment).  If landlords do not furnish the Hardship Declaration form and legal service provider list to tenants—and attest in a

signed affirmation that they have done so—landlords cannot initiate or advance eviction proceedings.

Plaintiffs are also likely to succeed on their claim that CEEFPA's Hardship Declaration violates their due process rights.  CEEFPA Part A § 1(4) prohibits eviction of tenants who declare hardship based on any of various "hardships," including "[s]ignificant loss of household income," "[i]ncrease in necessary out-of-pocket expenses," and "other circumstances related to the COVID-19 pandemic," among other ambiguous terms, but fails to provide any definition or guidance for any of these phrases, rendering the provision so vague that landlords have no notice of the circumstances under which tenants will be exempted from state-law eviction remedies and no realistic means of predictable implementation.  *See, e.g.*, *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) (due process requires that "regulated parties should know what is required of them so they may act accordingly").  Furthermore, the statute does not even require that tenants identify the category of "financial hardship" that they assert applies to them.  And it fails to provide property owners with an avenue to verify or challenge tenants' Hardship Declarations based on these self-reported circumstances—and automatically bars or stays eviction proceedings when such declarations are submitted.  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.") (citation and internal quotation marks omitted).  As such, the Hardship Declaration is a recipe and opportunity for abuse and arbitrary enforcement.

In addition, Plaintiffs are likely to prevail on their claim that CEEFPA violates their right to petition under the First Amendment (and its State analogue), which has long been interpreted to protect access to the courts.  *See, e.g.*, *Bill Johnson's Rests., Inc. v. N.L.R.B.*, 461 U.S. 731, 741 (1983).  CEEFPA tramples on property owners' rights to file summary eviction proceedings—a

judicial remedy provided by state law—by categorically barring the filing of such proceedings in most cases where tenants submit a Hardship Declaration, and from prosecuting existing cases.

Finally, Plaintiffs are likely to succeed on their claim that CEEFPA violates the New York State Constitution by purporting to delegate to the chief administrative judge unfettered discretion to indefinitely extend the eviction moratorium.  Article VI § 30 of the New York State Constitution, N.Y. Judiciary Law § 212, and the governing caselaw establish that the chief administrative judge can only exercise powers regulating practice and procedure in the courts with the advice and consent of the administrative board of the courts.  CEEFPA, however, allows the chief administrative judge alone to extent the eviction moratorium, and the associated stay of court proceedings, on a statewide basis, and in a blanket fashion.

The COVID-19 pandemic has now been raging in this country for almost a year.  Plaintiffs take the pandemic—and the threat it poses—extremely seriously.  But it cannot be that the pandemic alone justifies restrictions that, in another time, would plainly contravene the Constitution.  This Court should therefore issue a TRO and preliminary injunction enjoining the State of New York from enforcing CEEFPA Part A, until such time as the Court resolves Plaintiffs' application for ultimate relief in this case.

## FACTUAL BACKGROUND

I.    **Eviction Proceedings Prior To The COVID-19 Pandemic.**

Prior to the COVID-19 pandemic, tenants could be evicted, upon appropriate showings, in three principal instances: (1) when a tenant failed to pay the agreed-upon rent; (2) when a tenant severely violated a lease provision (including creating a nuisance); or (3) when a tenant stayed in the premises beyond the term of the lease (i.e. overstays).  RPAPL § 711.  Stays of up to six months could be granted when hold-over tenants of "dwelling" units made an application in good faith

that they could not secure a suitable alternative premises despite reasonable efforts, and that the tenant or the tenant's family would face extreme hardship if the stay were not granted.  *Id*. § 753. But even in these instances, landlords had the opportunity to dispute a stay.  *See id*. § 753(3).

## II.   Governor Cuomo Issues A Temporary Eviction Moratorium.

On March 20, 2020, Governor Cuomo issued Executive Order No. 202.8, which imposed a 90-day blanket eviction moratorium applicable to residential and commercial tenants.  *See* Ex. 2.  On May 7, 2020, via Executive Order No. 202.28, Governor Cuomo extended the eviction moratorium until August 19, 2020; under this Executive Order, landlords were prohibited from moving to evict any tenants whose default was caused by financial hardship "due to COVID-19." *See* Ex. 3.  Executive Order No. 202.28 clarified that the moratorium barred property owners from initiating an eviction proceeding or enforcing an eviction warrant during the effective period.

On June 30, 2020, the State enacted the Tenant Safe Harbor Act ("TSHA"), which further extended the eviction moratorium for residential properties.  *See* Ex. 4 (2020 Sess. Law News of N.Y. Ch. 127 (S. 8192-B)).  TSHA prohibits eviction of a non-paying residential tenant who raises a "financial hardship" defense during a summary proceeding.  TSHA gave landlords recourse in court to challenge a tenant's claim of financial hardship.  Courts were instructed to consider a number of factors, such as the tenant's income before and after COVID-19, liquid assets, and public welfare benefits.  TSHA's eviction prohibition is set to expire once no part of the county in which a tenant resides is shut down due to COVID-19 restrictions, but the inquiry it directs courts to undertake has now been limited by CEEFPA, as discussed below.

### III.    CEEFPA Extends And Expands The Eviction Moratorium.

Signed into law on December 28, 2020, CEEFPA immediately stayed for sixty days all pending residential eviction proceedings,[2] even those that began on or before March 7, 2020—tying the hands of residential landlords until at least February 26, 2021.  The automatic sixty-day stay applies to any new proceedings commenced through January 27, 2021.  CEEFPA also mandates that property owners provide their tenants with a Hardship Declaration prior to commencing or continuing any eviction proceedings.  CEEFPA Part A § 3.  If a tenant submits a Hardship Declaration, eviction proceedings—both pending and new—must be stayed until at least May 1, 2021.   Proceedings will also be stayed until at least that same date if a tenant submits a Hardship Declaration before the February 26, 2021 conclusion of the automatic sixty-day stay.  Meanwhile, tenants seeking money judgments against landlords in summary proceedings may continue to do so; no stay applies.

The Hardship Declaration consists of (1) a declaration form ("Declaration Form") explaining that a completed, signed declaration will bar any eviction proceedings until May 1, 2021; (2) a "pre-eviction notice"—which consists of "a list of all not-for-profit legal service providers actively handling housing matters in the county where the subject premises are located," prepared by the Office of Court Administration; and (3) a return address for the Declaration Form. *Id.* § 3; Ex. 5 (Hardship Declaration).  CEEFPA compels landlords to provide tenants with a Hardship Declaration "with every written rent demand for rent."  *Id.*  While the New York Office of Court Administration is obligated to produce translated Declaration Forms in "Spanish and the

---

[2]   The statute defines an "eviction proceeding" as a either a summary proceeding to recover possession of real property under § 7 of the New York Real Property Law, a judicial proceeding, or administrative proceeding to recover possession of real property.  Landlords, as well as individuals who are entitled to possession of property, are among a short list of individuals who may pursue a summary proceeding.  RPAPL § 721.  No fees or penalties beyond lost rent may be recovered in summary proceedings.  *Id.* § 702.

six most common languages in the City of New York, after Spanish," *id.* § 10, it is "the landlord's responsibility to obtain a suitable translation of the hardship declaration in the tenant's primary language," *id.* § 3, if the tenant's "primary language" is not one of the seven.  CEEFPA contains no mechanism by which property owners can seek reimbursement for following this mandate.  Nor does it free them from anti-discrimination laws that otherwise forbid landlords from asking their tenants information about their national origin.  Yet they must somehow determine their tenants' "primary language," engage a reliable translation service to translate the Declaration Form if that language is anything other than the languages translated by the State, and cover the cost of translation.

The Declaration Form, the text of which is set out in CEEFPA itself, asks tenants to "select[]" one or both "option[s]" via checking a box—either that they are "experiencing financial hardship . . . during the COVID-19 pandemic" or that "moving . . . would pose a significant health risk"—to qualify for a stay of existing eviction proceedings or a suspension of new proceedings. CEEFPA Part A § 1(4).  A tenant need only "select[]" one of the options, without explaining more, to submit a valid Declaration Form.  While the Declaration Form contains a "notice" clause informing the tenant that he or she is "signing and submitting the form under penalty of law," *id.*, there is no requirement to attach corroborating documents to support the category chosen, and no requirement that the form be submitted under penalty of perjury.  *Cf., e.g., id.* § 4 ("If there is no pending eviction proceeding and a tenant provides a hardship declaration to the landlord, there shall be no initiation of an eviction proceeding against the tenant until at least May 1, 2021. . . .").

The Declaration Form lays out five possible grounds for meeting the financial hardship option—that is, grounds on which the tenant can assert that he or she is "unable to pay [his or her] rent or other financial obligation under the lease in full": (1) a "significant loss of household

income," (2) increasing "necessary out-of-pocket expenses related to performing essential work or related to health impacts," (3) "childcare [or other familial care] responsibilities . . . negatively affect[ing]" the ability "to obtain meaningful employment" or "increas[ing] necessary out-of-pocket expenses," (4) "moving expenses and difficulty [the tenant has] securing alternative housing," or (5) a catch-all category of "[o]ther circumstances related to [ ] COVID-19" that have "negatively affected" the tenant's ability "to obtain meaningful employment or earn income or have significantly reduced [the tenant's] household income or significantly increased [] expenses." *Id.* § 1(4). Per the language of the statute, embodied in the Declaration Form issued by the Office of Court Administration, tenants are not required to identify the particular subcategory the tenant claims applies. *See* Compl., Ex. A. Therefore, property owners receiving completed Declaration Forms are not even informed of the specific asserted justification for the tenant's non-payment.

Tenants are instructed to return the Declaration Form to the landlord or, if an eviction proceeding has already commenced, to the court. Unless landlords like Plaintiffs file an affidavit with the court signed under penalty of perjury demonstrating that they have delivered a copy of the Hardship Declaration to a tenant—including the "manner in which the petitioner[-landlord] or the petitioner[-landlord]'s agent served a copy of the hardship declaration" and whether it was served both "in English and the tenant's primary language"—and attest that they have not "received" a completed Declaration Form in response, no landlord may commence an eviction proceeding. CEEFPA Part A § 5.

Though the law does not require confirmation or corroboration of the tenant's affirmations in a Declaration Form, property owners are unable to commence an eviction without a two-step inquiry regarding their delivery of the Hardship Declaration. Once the court receives the landlord's affidavit in satisfaction of Part A § 5, it must first separately "determine whether a copy

10

of the hardship declaration" in the appropriate language(s) "is annexed to the served notice of the petitioner," and second "seek confirmation on the record . . . that the [tenant] has received" the Hardship Declaration and has not returned a Declaration Form back to the landlord, the landlord's agent, or the court. *Id.* § 5(2). Upon receipt of a tenant's Declaration Form, courts are directed to further toll the commencement of any new proceedings until May 1, 2021. *Id.* § 4. Receipt of a completed Declaration Form effectively freezes ongoing eviction proceedings and certain already-issued eviction warrants until that date.

Under CEEFPA, the submission of a Declaration Form with the financial hardship option selected will create a "rebuttable presumption that the tenant is experiencing financial hardship" under the TSHA, an executive order, or other state or local laws—even after May 1. CEEFPA Part A § 11. This provision, together with the stay of proceedings, effectively eliminates what little opportunity landlords had to check claims of financial hardship under the TSHA. *See supra* at 8–9. The new law is silent on what type of evidence, if any, would rebut the presumption, or in what manner or forum such evidence may be submitted.

The new law also vacates any default judgments authorizing an eviction in a residential eviction matter prior to December 28, 2020. CEEFPA Part A § 7. The matters underlying the vacated judgments can be restored to the court calendar for a new hearing solely upon the tenant's request, or else the judgments will remain vacated. No new default judgments or authorizations to enforce already issued eviction warrants can be issued before May 1, 2021. Even if property owners wish to proceed, they must make a motion with the court and participate in an initial hearing. *Id.* §§ 7, 8. But the reality remains that only two exceptions can change the outcome for landlords. The matter may only continue on from an initial hearing to a summary proceeding if the landlord can either "establish" that the tenant is exhibiting behavior equivalent to a nuisance

or if the tenant fails to return a Declaration Form after being provided with one by the landlord. *Id.* § 9. In all other instances, the matter is stayed until May 1, 2021. Even if a judgment *based on* nuisance was awarded to a landlord prior to December 28, 2020, courts must hold another hearing to essentially redetermine whether the tenant's unreasonable behavior has persisted further. *Id.* § 9(2).

CEEFPA's sole legal carve-out permits eviction proceedings for tenant behavior constituting a nuisance. The nuisance standard requires establishing that the tenant "substantially infringes on the use and enjoyment of other tenants or occupants or causes a substantial safety hazard to others." CEEFPA Part A § 9(2).

## IV. CEEFPA Permits Hardship Declarations Based On Undefined Hardship Categories And Gives Landlords No Ability To Review Such Claims.

As described above, CEEFPA sets out a number of categories of hardship that a tenant can claim, based on loss of household income, increases in out-of-pocket expenses related to essential work or "health impacts," loss of income or increased expenses related to family care responsibilities, moving difficulties and expenses, or "significant health risk[s]." CEEFPA Part A § 1(4). These categories are vague and undefined. Exacerbating the problematic vagueness of these categories, CEEFPA permits a tenant to declare hardship based on an assertion that "other circumstances related to the COVID-19 pandemic" affect tenants' "ability to obtain meaningful employment or earn income," "significantly reduce[ their] household income," or "significantly increase" their expenses. *Id.* The law provides no definitions for any of these terms.

Compounding the issue, and in keeping with CEEFPA's wholesale stripping of owners' rights and structural bar on court access, the law provides no mechanism for landlords to determine in eviction proceedings—let alone contest—the reasons for a declaration of hardship. Where a tenant submits a Declaration Form to the property owner, "there shall be no initiation of an eviction

proceeding against the tenant" until at least May 1, 2021.  CEEFPA Part A § 4.  To effectuate this prohibition, CEEFPA provides that "no court shall accept for filing" any eviction petition or other filing unless a landlord files an affidavit under penalty of perjury attesting that it (and its agents) have not received a Hardship Declaration or that the CEEFPA's narrow nuisance exception applies.  *Id.* § 5(1).  Similarly, an in-progress eviction proceeding is automatically stayed upon filing of a Hardship Declaration until at least May 1, 2021, and where an eviction warrant has been issued it may not be executed until at least the same date.  *Id.* §§ 6, 8.  Thus, property owners are for all practical purposes powerless to challenge, in an eviction proceeding, a tenant's representation of hardship.

Each of the vague provision's infirmities are aggravated by the fact that a tenant's submission of a Declaration Form in which the tenant claims a financial hardship will create a rebuttable presumption of financial hardship in proceedings involving a defense under the TSHA, an executive order, or "any other local or state law, order or regulation restricting the eviction of a tenant suffering from a financial hardship during or due to COVID-19."  CEEFPA Part A § 11. CEEFPA provides no explanation for the process or substantive standards by which the financial hardship presumption could be rebutted, rendering the already ill-defined categories hopelessly vague as to the covered proceedings.  Unlike many of CEEFPA's provisions, the rebuttable presumption provision does not contain a May 1, 2021 end date.

## V.   CEEFPA Has Severely Impacted Plaintiffs.

Plaintiffs are small-scale property owners in New York who have suffered financially and emotionally since the pandemic began.  Each of them relies on rental income to cover their mortgage payments, home insurance costs, and property taxes on their properties, along with other financial commitments.  All will suffer irreparable harm if CEEFPA is not enjoined.

Plaintiff Pantelis Chrysafis owns a single family home in Garden City, New York. Vekiarellis Decl. ¶ 1.  After his tenants stopped paying rent in early 2019, Chrysafis was forced to file suit, and he received a judgment and warrant of eviction in February 2020 requiring the tenants to vacate the property by April 1, 2020.  Vekiarellis Decl. ¶¶ 8, 18.  But Chrysafis's tenants remain in the home because of the eviction moratoria, and they have not paid rent in more than a year, totaling over $70,000 in back rent.  Vekiarellis Decl. ¶ 13.  Chrysafis's inability to evict the tenants or collect back rent has caused strife in his family, and he has been forced to borrow money from his elderly parents to stay afloat.  Vekiarellis Decl. ¶ 11.

Plaintiff Brandie LaCasse owns a single-family home in Rhinebeck, New York that she currently rents out to tenants.  LaCasse Decl. ¶ 2.  The tenants—who have caused an estimated $15,000 of damage to the property—stopped paying rent after LaCasse served them with a notice of nonrenewal in November 2020, when she decided to sell the property.  LaCasse Decl. ¶¶ 2, 3.  LaCasse filed a proceeding to remove the tenants in December, before CEEFPA took effect, but her case was dismissed because of CEEFPA's Hardship Declaration requirements.  LaCasse Decl. ¶¶ 4–5.  Despite the fact that their financial situation seems to be unaffected by COVID-19, the tenants subsequently submitted a Hardship Declaration.  LaCasse Decl. ¶¶ 6–7.  LaCasse wanted to sell the property to pay for her daughter's tuition, and has now been forced to take an additional job to cover her expenses—despite being immunocompromised from a disability related to her military service—increasing her risk of being infected by COVID-19.  LaCasse Decl. ¶¶ 1, 13.  To date, she is owed approximately $6,700 in unpaid rent.  LaCasse Decl. ¶ 9.

Plaintiff Betty S. Cohen is owed over $18,000 in back rent from a tenant living in her Brooklyn, New York co-op unit, who stopped paying rent in March 2020.  Cohen Decl. ¶¶ 1–2. In September 2020, Cohen commenced a nonpayment suit, but her suit will be unable to go forward

because her tenant filed a Hardship Declaration on February 4, 2021.  Cohen Decl. ¶¶ 6, 7.
Because of the financial losses she has suffered, Cohen—who is retired—has had to take out a
$10,900 loan and rely on donations from friends.  Cohen Decl. ¶¶ 2, 7.  She cannot afford the costs
of her unit and fears that she will lose it altogether.  Cohen Decl. ¶ 8.

Plaintiffs Feng Zhou and Mudan Shi, a married couple, are owed more than $52,000 in
back rent from a tenant living in their single family home who stopped paying rent in April 2019.
Shi Decl. ¶¶ 4, 9.  Despite filing an eviction proceeding in October 2019 and struggling to pay
their own rent for the separate rental unit in which they live with their young children and elderly
parents, Zhou and Shi have been unable to remove the tenant.  Shi Decl. ¶¶ 3, 6, 10.

## LEGAL STANDARD

Preliminary or emergency injunctive relief is warranted where the plaintiff demonstrates
irreparable harm and shows either (a) a likelihood of success on the merits, or (b) sufficiently
serious questions going to the merits and a balance of hardships tipping decidedly in the plaintiff's
favor.  *Jolly*, 76 F.3d at 473.  Courts also consider whether the public interest favors an injunction.
*Id.*  When the government is the defendant, the "balance of hardships" and "public interest" factors
"merge."  *725 Eatery Corp. v. City of New York*, 408 F. Supp. 3d 424, 469 (S.D.N.Y. 2019).  A
likelihood of success requires a greater than fifty percent probability of success, whereas the
"serious questions" standard applies where the court "cannot determine with certainty that the
moving party is more likely than not to prevail . . . , but where the costs outweigh the benefits of
not granting the injunction."  *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master
Fund Ltd.*, 598 F.3d 30, 34–35 (2d Cir. 2010).  In the Second Circuit, the same legal standard
governs the issuance of preliminary injunctions and temporary restraining orders.  *3M Co. v.
Performance Supply, LLC*, 458 F. Supp. 3d 181, 191 (S.D.N.Y. 2020).

## ARGUMENT

**I.      Plaintiffs Will Be Irreparably Harmed Absent Injunctive Relief.**

If enforcement of CEEFPA is not enjoined, Plaintiffs will face irreparable harm through the continued violation of their constitutional rights.  As the Supreme Court has long made clear, "[t]he loss of First Amendment freedoms, for even minimal periods of time, *unquestionably constitutes irreparable injury*."  *Elrod*, 427 U.S. at 373 (emphasis added).  This is because "[p]recious first amendment liberties would be rendered all but meaningless if those rights could be restricted even for short periods of time."  *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1026 (2d Cir. 1985).  The same is true of the deprivation of other constitutional rights.  *See Jolly v. Soughlin*, 76 F.3d 468, 482 (2d Cir. 1996) (noting presumption of irreparable injury from constitutional violation and granting injunctive relief); *see also, e.g.*, *Agudath Israel of Am.*, 983 F.3d at 637 ("When an alleged deprivation of a constitutional right is involved, . . . most courts hold that no further showing of irreparable injury is necessary." (quoting 11A Charles Allen Wright & Arthur R. Miller, Federal Practice & Procedure § 2948.1 (3d ed. 2020)));

With each passing day, CEEFPA is causing Plaintiffs and so many other landlords to be deprived of rights guaranteed to them by the New York and U.S. Constitutions, including: forcing Plaintiffs Chrysafis, Shi, and Zhou to deliver the government's message by providing the Hardship Declaration and list of government-approved legal service organizations to their tenants, in violation of their First Amendment right against compelled speech, *see* Vekiarellis Decl. ¶ 14; Shi Decl. ¶ 8; depriving Plaintiffs Cohen and LaCasse of any opportunity to contest or rebut the vague assertions in the Declaration Forms submitted by their tenants, or even receive clarification as to which category of financial hardship their tenants claim applies, in violation of their Due Process rights, *see* Cohen Decl. ¶ 7; LaCasse Decl. ¶ 7; and barring Plaintiff LaCasse from re-filing suit to

evict her non-paying and held-over tenants until May 2021, in violation of the Petition clause, *see* LaCasse Decl. ¶ 8.

In addition to these constitutional infringements, which constitute *per se* irreparable harm, CEEFPA Part A will cause Plaintiffs other irreparable harms arising out of the dire circumstances in which Plaintiffs now find themselves.  Specifically:

- Plaintiff LaCasse, who is immunocompromised and at greater risk of severe complications from COVID, will be forced to continue "risk[ing] [her] life to make ends meet" by taking additional work.  LaCasse Decl. ¶ 10.

- Plaintiff Chrysafis's inability to remove his tenants has caused a "tremendous amount of strife" in his family, and will continue to because it may require him to borrow money from his elderly parents for a second time to cover the mortgage and taxes on his property.  Vekiarellis Decl. ¶ 11.

- Plaintiffs Shi and Zhou "can no longer pay the rent on the house [they] are currently living in," and need to evict their tenants—who owe over $52,000 in back rent— so they can move into the property they own.  Shi Decl. ¶¶ 9–10.

- Plaintiff Cohen fears she will lose her property altogether.  Cohen Decl. ¶ 8.

For all of these reasons, Plaintiffs will continue to suffer irreparable harm if Part A of CEEFPA is not enjoined.

## II.    Plaintiffs Are Likely To Succeed On The Merits Of Each Of Their Claims.

Plaintiffs are likely to succeed in demonstrating that CEEFPA Part A is unconstitutional on its face and as applied to Plaintiffs under both the U.S. and New York State Constitutions for multiple reasons, as described below.[3]

---

[3] Since the unconstitutional Hardship Declaration is at the "core" of Part A of CEEFPA and "interwoven inextricably through the entire regulatory scheme," *N.Y. State Superfund Coal. v. N.Y. State Dept. of Env't Conservation*, 75 N.Y.2d 88, 94 (1989), CEEFPA Part A is invalid in its entirety.  The Hardship Declaration is referenced at least 60 times throughout Part A, including in virtually every operative provision.  It would be "pragmatically impossible, as well as jurisprudentially unsound," for the court to "attempt to identify and excise" the Hardship Declaration while "leaving the remainder of" CEEFPA Part A intact.  *Boreali v. Axelrod*, 71 N.Y.2d 1, 14 (1987); *see also Nat'l Advert. Co. v. Town of Babylon*, 900 F.2d 551, 557 (2d Cir. 1990) (finding constitutional and unconstitutional provisions of town ordinance restricting commercial speech could not be severed from one another because were inextricably interwoven).

### A.      CEEFPA Violates Plaintiffs' Freedom Of Speech Rights.

The First Amendment's Free Speech Clause provides that "Congress shall make no law . . . abridging the freedom of speech."  U.S. Const. amend. I.  Similarly, the New York State Constitution mandates that "no law shall be passed to restrain or abridge the liberty of speech." N.Y. Const. art. I § 8.  The Supreme Court has recognized that "freedom of speech prohibits the government from telling people what they must say." *Rumsfeld*, 547 U.S. at 61.  Where, as here, a law compels speech that is noncommercial in nature, that law is assessed under the strict scrutiny rubric. *See Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.*, 487 U.S. 781, 795 (1988).  "Strict scrutiny is a searching examination, and it is the government that bears the burden [of] pro[of]." *Fisher v. Univ. of Tex. at Austin*, 570 U.S. 297, 310 (2013).  To survive strict scrutiny, the government bears the burden of proving that a law is "narrowly tailored to promote a compelling Government interest." *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 804 (2000).  "[I]f a less restrictive alternative would serve the Government's purpose, the legislature must use that alternative." *Id*.

With its mandate that landlords must provide notices to their tenants—using language mandated by the government—with every demand for rent, commencement of eviction proceeding, or petition, CEEFPA forces Plaintiffs to convey messages with which they disagree. These notices are subject to strict scrutiny, because they constitute noncommercial speech under the Supreme Court's definitions of such speech.  First, they do not "propose a commercial transaction." *Zauderer v. Off. of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 637 (1985).  Instead, the notices are prepared by the Office of Court Administration and include a list of legal service providers to inform tenants of potential legal options that are potentially adverse to the property owners, and make contestable assertions about tenants' alleged financial

hardship and health risks.   The list of legal service providers, moreover, "in no way relates to the services that [Plaintiffs] provide," *Becerra*, 138 S. Ct. at 2372, and worse, is *adverse* to the economic interests of Plaintiffs.  Mandating that property owners provide a Hardship Declaration through which tenants are invited to bar landlords from commencing or prosecuting eviction proceedings is plainly adverse to their own interests, as is requiring that they provide a list of legal services to assist their tenants to continue avoid rent payments.   Furthermore, the Hardship Declaration and list of legal service providers is not "related solely to the economic interests of the speaker and its audience."  *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 561 (1980).  Instead, as noted, the Declaration Form makes contestable assertions about tenants' alleged financial hardship and health risks and about the reputability of various legal service organizations.

The Hardship Declaration clearly infringes on Plaintiffs' First Amendment rights.  The Declaration invites tenants to assert either that the tenant is "experiencing financial hardship" and therefore "unable to pay" the rent owed, or that vacating the premises would pose a "significant health risk."  If a tenant's "primary language" is one other than English, "Spanish [or] the six most common languages in the City of New York," property owners must obtain an appropriate translations of the Declaration Form at their own expense. CEEFPA Part A §§ 3, 10.  By requiring that Plaintiffs supply this form to tenants—and arrange for the translation of the form—CEEFPA compels Plaintiffs to endorse and adopt these government statements, and supports its moratorium policy, even though they may disagree with the Form's characterization of tenants' financial hardship, ability to pay, or health risks, and even though they disagree with the resulting eviction moratorium.  In other words, by compelling landlords to supply (and in some cases, translate) the Declaration Forms, the law unfairly gives them the landlords' imprimatur.   Plaintiffs are thus

compelled to "represent as their own an opinion . . . that [they] might not categorically hold." *All. for Open Soc'y Int'l, Inc. v. U.S. Agency for Int'l Dev.*, 651 F.3d 218, 237 (2d Cir. 2011), *aff'd sub nom. Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205 (2013); *accord Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557 (1995). The same is true of the requirement to provide a government-prepared list of legal service organizations, which coopts landlords and forces them to effectively endorse organizations whose mission they may not support, and whose activities are directly adverse to their own interests. *See Becerra*, 138 S. Ct. at 2361; *Wooley v. Maynard*, 430 U.S. 705 (1977) (requiring that individuals use their private property to broadcast the State's ideological message with which they disagree violates the First Amendment).

The Hardship Declaration requirement, moreover, fails strict scrutiny because it is not narrowly tailored to the government's interest of informing tenants about their legal rights. There are multiple less restrictive alternatives available that would not infringe on Plaintiffs' speech rights. Most obviously, the State could provide the Hardship Declaration to tenants directly. Indeed, the Office of Court Administration already has already mailed thousands of hardship declarations to tenants whose property owners have moved to evict them. *See* Ex. 6 (Emma Whitford, *Major Takeaways From NY's New Anti-Eviction Law*, LAW360 (Jan. 8, 2021)). Alternatively, the State could conduct a public awareness campaign to ensure that tenants are adequately informed about their options, and direct tenants to the Hardship Declaration already posted on government websites. *See* Shapiro Decl. ¶ 7; Ex. 5. The State, however, "chose to forego these alternatives in favor of a law that not only compels the Plaintiffs to carry [its] specific message as if it were their own, but also to bear the associated costs of doing so." *PSEG Long*

*Island LLC v. Town of N. Hempstead*, 158 F. Supp. 3d 149, 168 (E.D.N.Y. 2016).  Plaintiffs are likely to succeed on the merits of their compelled speech claim.

      **B.**      **CEEFPA Violates Plaintiffs' Due Process Rights.**

      The Fourteenth Amendment's Due Process Clause provides in part:  "[N]or shall any State deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. 14; *see also* N.Y. Const. art. I § 6 ("No person shall be deprived of life, liberty or property without due process of law.").  "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."  *Mathews*, 424 U.S. at 333  (citation and internal quotation marks omitted).  An independent but equally "fundamental" due process protection is that "no one may be required at peril of life, liberty or property to speculate as to the meaning of . . . statutes."  *Cunney v. Bd. of Trustees of Vill. of Grand View*, 660 F.3d 612, 620 (2d Cir. 2011) (citation omitted).  Pursuant to that principle, a law is unconstitutionally vague if people do not "know what is required of them." *Fox Television Stations, Inc.*, 567 U.S. at 253.

      CEEFPA's Hardship Declaration provision violates Plaintiffs' procedural due process rights (facially and as applied to them) because it fails to provide them with fair notice of CEEFPA's requirements, lacks sufficient standards to guide its application, and ensures that it will be arbitrarily and discriminatorily enforced.  *Kramer v. N.Y. City Bd. of Educ.*, 715 F. Supp. 2d 355, 356 (E.D.N.Y. May 20, 2010) ("The need for notice is at the heart of the vagueness doctrine.").  As described in the Complaint, CEEFPA's failure to define phrases including but not limited to "other circumstances," "meaningful employment," "significantly increase," and "significantly reduce" render the hardship categories essentially meaningless, robbing Plaintiffs of fair notice of when a tenant is eligible to avoid eviction.  That lack of notice is aggravated by the fact that the Declaration Form issued by the Office of Court Administration, as dictated by CEEFPA itself, does not even require tenants to specify which subcategory of hardship applies.

Likewise, the contentless nature of the hardship categories will result in arbitrary and discriminatory enforcement, as they provide no standards to guide their application. *See Fox Television Stations, Inc.*, 567 U.S. at 253 (recognizing that "precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way"). Tenants will be free to individually determine whether the hardship categories apply. And if property owners make what law enforcement officials decide, in their unfettered discretion, are false statements about the tenant in their signed affidavit to the court seeking to rebut the vague assertions of the Hardship Declaration, property owners could face perjury charges with up to a $5,000 fine and three to five years of jail time. N.Y. Penal Law § 210, *et. seq.* The arbitrary nature of the hardship categories is compounded by the lack of any opportunity to contest tenants' Hardship Declarations. The same is true of the statute's creation of a rebuttable presumption of financial hardship in proceedings involving a defense under the TSHA, an executive order, or "any other local or state law, order or regulation restricting the eviction of a tenant suffering from a financial hardship during or due to COVID-19," as CEEFPA is silent on how the presumption may be rebutted.

CEEFPA also deprives property owners, including Plaintiffs, of their procedural due process right to "be heard at a meaningful time and in a meaningful manner" with respect to tenants' Declaration Forms, whether premised on claimed financial hardship or purported health risks associated with relocation. *Matthews*, 424 U.S. at 335. Once a tenant submits a Declaration Form, a pending eviction proceeding is automatically stayed until at least May 1—no questions asked. Where an eviction warrant has been issued but not yet executed, execution is automatically stayed until at least that date. And if a property owner has not yet initiated an eviction proceeding, she may not do so during the same period. This inability to contest or obtain review of tenants' Declaration Form facially and as applied to Plaintiffs deprives them of their procedural due process

rights—a violation made particularly severe in light of CEEFPA's vagueness and significant potential for abuse.  Because CEEFPA is both unconstitutionally vague and denies Plaintiffs their right to a meaningful hearing, it violates the Fourteenth Amendment and New York State Constitution.

### C.     CEEFPA Violates Plaintiffs' Right To Petition Under The First Amendment.

The Petition Clause of the First Amendment of the United State Constitution provides that "Congress shall make no law . . . abridging . . . the right of the people to petition the Government for a redress of grievances."  U.S. Const. amend 1; *see also* N.Y. Const. art. I § 9 ("No law shall be passed abridging the rights of the people . . . to petition the government, or any department thereof.").  "[T]he right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances," *Bill Johnson's Rests*, 461 U.S. at 741, which is "among the most precious of the liberties safeguarded by the Bill of Rights," *United Mine Workers of Am., Dist. 12 v. Ill. State Bar Ass'n*, 389 U.S. 217, 222 (1967).  Because CEEFPA completely bars a class of property owners, including Plaintiffs, from exercising their rights to file eviction petitions with New York courts until at least May 1, 2021, as well as to prosecute existing cases, it violates their rights under the Petition Clause.  *See Christopher v. Harbury,* 536 U.S. 403, 413 (2002) ("[T]he essence of the access claim is that official action is presently denying an opportunity to litigate for a class of potential plaintiffs.  The opportunity has not been lost for all time, however, but only in the short term; the object of the denial-of-access suit, and the justification for recognizing that claim, is to place the plaintiff in a position to pursue a [] claim for relief once the frustrating condition has been removed.").  The plain language of CEEFPA denies all landlords, including Plaintiffs, the opportunity to litigate their cases—making Plaintiffs likely to succeed on the merits of their Petition clause claim.  *See ACA Int'l v. Healey*, 457 F. Supp. 3d 17, 31 (D. Mass.

2020) (granting temporary restraining order against regulation barring plaintiffs from initiating debt-collection lawsuits during COVID-19 state of emergency).

### D.    CEEFPA Constitutes Unconstitutional Judicial Delegation.

The New York State Constitution provides that the chief administrative judge "shall exercise any such power delegated to him or her with the advice and consent of the administrative board of the courts."  N.Y. Const. art. VI § 30; *see also* N.Y. Judiciary Law § 212 ("The chief administrator shall also . . . [a]dopt rules and orders regulating practice in the courts as authorized by statute with the advice and consent of the administrative board of the courts, in accordance with the provisions of section thirty of article six of the constitution.").  Accordingly, "[t]he Chief Administrator can exercise legislatively delegated powers to regulate matters of jurisdiction, practice and procedure *only with advice and consent of the Administrative Board*."  *Bloom v. Crosson*, 590 N.Y.S.2d 328, 330 (3d Dep't 1992), *aff'd*, 82 N.Y.2d 768 (1993) (emphasis added).

CEEFPA purports to delegate to the chief administrative judge the power to determine when the automatic stay will expire beyond the initial sixty-day period.  Specifically, it allows the chief administrative judge to unilaterally extend the statewide, blanket stay—with no limit on the length of the extension or extension—if and to the degree it is "necessary," in his unilateral discretion, "to ensure that courts are prepared to conduct proceedings in compliance with this act and to give tenants an opportunity to submit the [Declaration Forms] pursuant to this act."  CEEFPA Part A § 2.  Because CEEFPA does not require the chief administrative judge to first obtain the advice and consent of the Administrative Board, the law contravenes the limitation on delegation of powers enshrined in the New York State Constitution.

### III.   The Balance Of Hardships And Public Interest Strongly Favor Injunctive Relief.

Where, as here, a plaintiff has demonstrated likelihood of success on the merits and irreparable harm, the injunction should be issued without the need to reach or evaluate the balance

of hardships and the public interest.  But even if the Court were to find that Plaintiffs demonstrated only "serious questions" going to the merits—such that the balancing of hardships and public interests were relevant—those factors would weigh in favor of granting the requested injunctive relief.  First, "no public interest is served by maintaining an unconstitutional policy when constitutional alternatives are available to achieve the same goal."  *Agudath Israel of Am.*, 983 F.3d at 637.  The government may have an interest in providing financial relief to tenants, but it cannot do so in an unconstitutional manner.  Second, the significant harm caused to Plaintiffs, *see supra* at 13–15, and other landlords by the implementation of the Hardship Declaration and the resulting extension of the eviction moratorium weighs in favor of injunctive relief.  CEEFPA ignores the struggles faced by Plaintiffs and so many other small landlords as they approach a full year of not being able to obtain rental income to offset their mortgage payments, property taxes, and income.  When compared with the constitutional and other harms imposed on Plaintiffs, the government's interest in enforcing Part A of CEEFPA is minimal.

## CONCLUSION

Plaintiffs respectfully request that the Court grant its application for a temporary restraining order and a preliminary injunction pending the resolution of its claims on the merits.

Dated: New York, New York
        February 25, 2021

                                        GIBSON, DUNN & CRUTCHER LLP

                                        By:      */s/ Randy M. Mastro*
                                                 Randy M. Mastro
                                                 Akiva Shapiro
                                                 200 Park Avenue
                                                 New York, NY 10166
                                                 Tel.:  (212) 351-4000
                                                 rmastro@gibsondunn.com
                                                 ashapiro@gibsondunn.com

                                                 *Attorneys for Plaintiffs*