UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

PANTELIS CHRYSAFIS, BETTY COHEN,
BRANDIE LACASSE, MUDAN SHI, AND
FENG ZHOU,

                          *Plaintiffs*,

       -against-

LETITTIA JAMES, in her official capacity as Attorney
General of the State of New York,

                          *Defendant*.

2:21-cv-00998
(SJF/ARL)


# MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION


LETITTIA JAMES
Attorney General of the State of New York
*Attorney for Defendant*
200 Old Country Road, Suite 240
Mineola, New York 11501

Helena Lynch
Assistant Attorney General, *of Counsel*
(516) 248-3312 | Helena.lynch@ag.ny.gov

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...........................................................................................................1

STATEMENT OF FACTS ..................................................................................................................3

    A.  Overview of Remedies Available to Landlords in New York State Against Tenants,
        Including Summary Eviction Proceedings .........................................................................3

    B.  Overview of Impact of COVID-19 and Housing-Related Containment Measures Prior to
        COVID-19 Emergency Eviction and Foreclosure Protection Act of 2020.............................4

    C.  Overview of COVID-19 Emergency Eviction and Foreclosure Protection Act of 2020.........6

STANDARDS FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY
INJUNCTION .................................................................................................................................10

ARGUMENT ...................................................................................................................................11

POINT I:
PLAINTIFFS FAIL TO SHOW A LIKELIHOOD OF SUCCESS ON THE MERITS OF THEIR
CLAIMS .........................................................................................................................................11

    A.  Plaintiffs Fail to Show a Likelihood of Success on Any of Their Claims Because the New
        York State Attorney General is Not a Proper Party .........................................................11

    B.  Plaintiffs Fail to Show a Likelihood of Success on Their Claims of Violations of the First or
        Fourteenth Amendment, or Any Provision of the New York Constitution.............................13

          i.    Plaintiffs Cannot Succeed on Their Claim that Any Part of CEEFPA Part A is
              Unconstitutionally Vague in Violation of the Fourteenth Amendment Due Process
              Clause or Article I, § 6 of the New York Constitution.................................................14

          ii.   Plaintiffs Cannot Succeed on Their Claim that CEEFPA Part A Violates Procedural
              Due Process Under the Fourteenth Amendment or Article I, § 6 of the New York
              Constitution............................................................................................................16

          iii.  Plaintiffs Cannot Succeed on Their Claim that CEEFPA Part A Denies Them
              Access to the Courts in Violation of the First Amendment or Article I, § 9 of the
              New York Constitution ............................................................................................19

          iv.  Plaintiffs Cannot Succeed on Their Claim of Compelled Speech in Violation of the
              First Amendment or Article I, § 8 of the New York Constitution ...............................21

    C.  Plaintiffs Fail to Show a Likelihood of Success on Their Claim that CEEFPA Contains an
        Unconstitutional Judicial Delegation in Violation of Article VI, § 30 of the New York
        Constitution.....................................................................................................................26

i

POINT II:
PLAINTIFFS FAIL TO SHOW IRREPARABLE HARM OR THAT THE EQUITIES AND
PUBLIC INTEREST WEIGH IN THEIR FAVOR, BOTH OF WHICH ARE NECESSARY
FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION...........28

    A.   Plaintiffs Fail to Show Irreparable Harm.......................................................................28

    B.   The Equities and Public Interest Strongly Favor Continued Enforcement of CEEFPA Part
       A for the Protection of Public Health...........................................................................29

CONCLUSION............................................................................................................................30

## TABLE OF AUTHORITIES

**Case**                                                        **Page**

*177 Richard St., LLC v. Weeks,*
178 A.D.3d 644 (2d Dep't 2019)................................................................3, 18

*1000 Northern of N.Y. Co. v. Great Neck Med. Assocs.,*
7 A.D.3d 592 (2d Dep't 2004)........................................................................3

*Alliance for Open Soc'y Int'l, Inc. v. U.S. Agency for Int'l Dev.,*
651 F.3d 218 (2d Cir. 2011)..........................................................................24

*Ass'n of Jewish Camp Operators v. Cuomo,*
470 F. Supp. 3d 197 (N.D.N.Y. 2020)..........................................................30

*Auracle Homes, LLC v. Lamont,*
No. 20-cv-0829, 2020 WL 4558682 (D. Conn. Aug. 7, 2020).......................6

*Baptiste v. Kennealy,*
No. 20-cv-11335, 2020 WL 5751572 (D. Mass. Sept. 25, 2020)...................6

*Borough of Duryea, Pa. v. Guarnieri,*
564 U.S. 379 (2011)......................................................................................19

*Brache v. Westchester County,*
658 F.2d 47 (2d Cir. 1981)............................................................................15

*Burke v. Verizon Commc'ns, Inc.,*
No. 18-cv-4496, 2020 WL 4741043 (S.D.N.Y. Aug. 17, 2020)....................13

*Burnette v. Carothers,*
192 F.3d 52 (2d Cir. 1999)............................................................................12

*Catholic Charities of Diocese of Albany v. Serio,*
7 N.Y.3d 510 (2006).....................................................................................13

*City of New York v. Beretta U.S.A. Corp.,*
524 F.3d 384 (2d Cir. 2008).........................................................................20

*Colondres v. Scoppetta,*
290 F. Supp. 2d 376 (E.D.N.Y. 2003)..........................................................20

*Davis v. Goord,*
320 F.3d 346 (2d Cir. 2003).........................................................................20

*DeMartino v. New York State Dep't of Labor,*
167 F. Supp. 3d 342 (E.D.N.Y. 2016)....................................................16, 19

iii

*Donohue v. Mangano,*
    886 F. Supp. 2d 126 (E.D.N.Y. 2012) ...................................................................28

*El Papel LLC v. Inslee,*
    No. 20-cv-1323, 2020 WL 8024348 (W.D. Wash. Dec. 2, 2020) ..................................6

*Elmsford Apartment Assocs., LLC v. Cuomo,*
    469 F. Supp. 3d 148 (S.D.N.Y. 2020) ............................................................*passim*

*Ex parte Young,*
    209 U.S. 123 (1908) ...................................................................................12

*Fed. Deposit Ins. Corp. v. Mallen,*
    486 U.S. 230 (1988) ...................................................................................18

*Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton,*
    841 F.3d 133 (2d Cir. 2016). .......................................................................11

*HAPCO v. Philadelphia,*
    No. 20-cv-3300, 2020 WL 5095496 (E.D. Pa. Aug. 27, 2020) ......................................6

*HealthNow New York, Inc. v. New York,*
    739 F. Supp. 2d 286 (W.D.N.Y. 2010) ....................................................... 12, 13

*Heights Apartments, LLC v. Walz,*
    No. 20-cv-2051, 2020 WL 7828818 (D. Minn. Dec. 31, 2020) ......................................6

*Hopkins Hawley LLC v. Cuomo,*
    No. 20-cv-10932, 2021 WL 465437 (S.D.N.Y. Feb. 9, 2021) .....................................22

*Hurley v. Irish-American Gay, Lesbian & Bisexual Grp. of Boston,*
    515 U.S. 557 (1995) ...................................................................................25

*Jacobson v. Commonwealth of Massachusetts,*
    197 U.S. 11, 25 (1905) ............................................................................*passim*

*Johnson v. Rockefeller,*
    58 F.R.D. 42 (S.D.N.Y. 1972) ......................................................................13

*Jones v. Schneiderman,*
    974 F. Supp. 2d 322 (S.D.N.Y. 2013) ..............................................................12

*JSG Trading Corp. v. Tray–Wrap, Inc.,*
    917 F.2d 75 (2d Cir.1990) ..........................................................................29

*Kramer v. Union Free Sch. Dist. No. 15,*
    395 U.S. 621 (1969) ...................................................................................13

iv

*LaValle v. Hayden,*
   98 N.Y.2d 155 (2002).........................................................................................................13

*Lebanon Valley Auto Racing Corp. v. Cuomo,*
   478 F. Supp. 3d 389 (N.D.N.Y. 2020) ..............................................................................21

*Local 1814, Int'l Longshoremen's Ass'n v. New York Shipping Ass'n, Inc.,*
   965 F.2d 1224 (2d Cir. 1992) .............................................................................................10

*Lore v. City of Syracuse,*
   No. 00-cv-1833, 2001 WL 263051 (N.D.N.Y. Mar. 9, 2001) .........................................28

*Luke's Catering Serv., LLC v. Cuomo,*
   No. 20-cv-1086S, 2020 WL 5425008 (W.D.N.Y. Sept. 10, 2020)...................................30

*Mathews v. Eldredge,*
   424 U.S. 319 (1976) ...........................................................................................................17

*Mendez v. Heller,*
   530 F.2d 457 (2d Cir. 1976) ........................................................................................ 11, 12

*McCarthy v. Cuomo,*
   No. 20-cv-2124, 2020 WL 3286530 (E.D.N.Y. June 18, 2020).................................*passim*

*Monsky v. Moraghan,*
   127 F.3d 243 (2d Cir. 1997) ...............................................................................................20

*Moore v. Consol. Edison Co.,*
   409 F.3d 506 (2d Cir. 2005) ...............................................................................................10

*Murray v. Cuomo,*
   460 F. Supp. 3d 430 (S.D.N.Y. 2020)................................................................................25

*Nat'l Inst. of Family & Life Advocates v. Becerra,*
   138 S. Ct. 2361 (2018).................................................................................................. 24, 25

*New All. Party v. Dinkins,*
   743 F. Supp. 1055 (S.D.N.Y. 1990) ...................................................................................28

*New York City Coal. to End Lead Poisoning, Inc. v. Vallone,*
   293 A.D.2d 85 (1st Dep't 2002) .........................................................................................23

*Page v. Cuomo,*
   478 F. Supp. 3d 355 (N.D.N.Y. 2020) ..............................................................................30

*Pharm. Care Mgmt. Ass'n v. Rowe,*
   429 F.3d 294 (1st Cir. 2005) ..............................................................................................24

v

*Pico v. Bd. of Educ., Island Trees Union Free Sch. Dist. No 26*,
    638 F.2d 404 (2d Cir.1980) ................................................................................26

*Progressive Credit Union v. City of New York*,
    889 F.3d 40 (2d Cir. 2018) ...............................................................................17

*PSEG Long Island LLC v. Town of North Hempstead*,
    158 F. Supp. 3d 149 (E.D.N.Y. 2016)..............................................................24

*Qing You Li v. City of New York*,
    No. 16-cv-174, 2018 WL 6251339 (E.D.N.Y. Nov. 28, 2018)..........................21

*Richmond Boro Gun Club, Inc. v. City of New York*,
    97 F.3d 681 (2d Cir. 1996) ...............................................................................14

*Ritz v. Mike Rory Corp.*,
    959 F. Supp. 2d 276 (E.D.N.Y. 2013) ..............................................................27

*Rossito-Canty v. Cuomo*,
    86 F. Supp. 3d 175 (E.D.N.Y. 2015) ................................................................29

*Sabin v. Nelson*,
    No. 7:12-cv-1373, 2014 WL 2945770 (N.D.N.Y. June 30, 2014) ....................13

*Sosna v. Iowa*,
    419 U.S. 393 (1975)..........................................................................................17

*State Employees Bargaining Agent Coalition v. Rowland*,
    494 F.3d 71 (2d Cir. 2007) ...............................................................................12

*Steinberg v. Elkman*,
    No. 15-cv-278, 2016 WL 796870 (S.D.N.Y. Feb. 22, 2016) ...........................11

*Thomas v. New York City Bd. Of Elections*,
    898 F. Supp. 2d 594 (S.D.N.Y. 2012).............................................................11

*Thomas v. Roach*,
    165 F.3d 137 (2d Cir. 1999) .............................................................................16

*Triebwasser & Katz v. Am. Tel. & Tel. Co.*,
    535 F.2d 1356 (2d Cir. 1976) ...........................................................................29

*Ulrich v. Mane*,
    383 F. Supp. 2d 405 (E.D.N.Y. 2005)..............................................................13

*United States v. Farhane*,
    634 F.3d 127 (2d Cir. 2011). ............................................................................14

*United States v. Konstantakakos*
    Fed. App'x 902 (2d Cir. 2005) ................................................................28

*United States v. Rosen,*
    716 F.3d 691 (2d Cir. 2013) ...................................................... 14, 16

*United States v. Williams,*
    553 U.S. 285 (2008) ...............................................................................14

*Vermont Right to Life Committee, Inc. v. Sorrell,*
    758 F.3d 118 (2014) ...............................................................................14

*VIP of Berlin, LLC v. Town of Berlin,*
    593 F.3d 179 (2d Cir. 2010) ................................................................15

*Warden v. Pataki,*
    35 F. Supp. 2d 354 (S.D.N.Y.) .............................................................12

*Whalen v. County of Fulton,*
    126 F.3d 400 (2d Cir. 1997) ................................................................19

*Zauderer v. Office of Disciplinary Counsel,*
    471 U.S. 626 (1985) ...................................................................... 22, 26

**United States Constitution**

First Amendment ...............................................................................*passim*

Fourteenth Amendment .....................................................................*passim*

Eleventh Amendment .........................................................................*passim*

**New York Constitution**

Article I, § 6 ............................................................................ 14, 16, 19

Article I, § 8 ..................................................................................... 21, 26

Article I, § 9 ..................................................................................... 19, 21

Article VI, § 30 ........................................................................................28

**Statutes**                                                                                      **Page**

*Federal*

    85 Fed. Reg. 55,292, 55,294 (Sept. 4, 2020)...............................................7, 22

*State*

Laws of 2020

    Chapter 127 ............................................................................................................*passim*
    Chapter 381 ............................................................................................................*passim*

Executive Law

    § 29-a(1) .......................................................................................................................5

Labor Law

    § 198-d .......................................................................................................................23

Penal Law

    § 210.05 .......................................................................................................................8

Real Property Law

    § 226-c .........................................................................................................................4
    § 232 ............................................................................................................................4
    § 462 ..........................................................................................................................23

Real Property Actions and Proceedings Law

    § 701 ............................................................................................................................3
    § 711 ......................................................................................................................4, 25
    § 721 ............................................................................................................................4
    § 732 ......................................................................................................................4, 23
    § 741 ............................................................................................................................4
    § 753 ............................................................................................................................4

New York Codes, Rules and Regulations

    § 142-2.8 ....................................................................................................................23
    § 208.42 .....................................................................................................................24
    § 466.1(a) ...................................................................................................................23

**State Executive Orders**         **Page**

Executive Orders

    No. 202.8, 9 NYCRR § 8.202 (2020) ..........................................................................5
    No. 202.8, 9 NYCRR § 8.202.8 (2020) .......................................................................5
    No. 202.8, 9 NYCRR § 8.202.28 (2020) .....................................................................5
    No. 202.8, 9 NYCRR § 8.202.64 (2020) .....................................................................5

## PRELIMINARY STATEMENT

The COVID-19 pandemic has triggered the most devastating public health crisis in a century, leading to the deaths of nearly 50,000 New Yorkers and more than 500,000 individuals nationwide. The New York State Legislature concluded that this public-health crisis and the resulting economic hardships threatened to destabilize housing for tenants, landlords, and homeowners and trigger an impending homelessness crisis that would exacerbate the spread of COVID-19 and its severe public-health harms. In response, the Legislature enacted the COVID-19 Emergency Eviction and Foreclosure Prevention Act ("CEEFPA"), which became effective on December 28, 2020.

Plaintiffs, five owners of residential properties rented to tenants, ask this Court to strike down selected provisions of CEEFPA that afford certain tenants a temporary stay of eviction proceedings in order to prevent a homelessness crisis that would deepen the public-health harms caused by the pandemic. Plaintiffs do not challenge—and thus apparently seek to preserve—similar provisions in CEEFPA that afford property owners like themselves protections against foreclosure in service of similar protective policies. Plaintiffs thus seek the drastic remedy of a temporary restraining order and preliminary injunction against the continued enforcement of CEEFPA's crucial public health measures insofar as they temporarily protect a category of tenants—but not insofar as they protect property owners.

The Court should deny Plaintiffs' motion for a temporary restraining order and preliminary injunction because Plaintiffs cannot demonstrate a likelihood of success on the merits of their claims. As an initial matter, Plaintiffs have sued the wrong party. Courts have consistently held that the New York State Attorney General, the only named Defendant herein, is not a proper party to actions challenging the constitutionality of state statutes for which she has no specific enforcement obligation. Because this warrants dismissal of this entire matter, Plaintiffs cannot show any likelihood of success.

In any event, Plaintiffs are also unlikely to succeed on the five causes of action they assert in their facial challenge to Part A of CEEFPA. *First*, Plaintiffs do not show any likelihood of success on their claims that certain provisions of CEEFPA are so vague as to violate due process because the statute's terms are perfectly amenable to reasoned interpretation in light of the purposes and language of the statute as well as common sense. *Second*, Plaintiffs do not show any likelihood of success on their procedural due process claims because, under settled law, the alleged delay in being able to proceed with certain remedies against certain tenants does not amount to a constitutional deprivation. *Third*, Plaintiffs do not show a likelihood of success on their right-to-petition claims because a temporary delay in being able to pursue certain legal claims does not block plaintiffs from meaningfully accessing the courts. *Fourth*, Plaintiffs do not show a likelihood of success on their claims of unconstitutionally compelled speech, which challenge certain discrete provisions of CEEFPA requiring landlords who wish to avail themselves of housing court to provide notice of certain factual information. Pursuant to long-settled Supreme Court precedent, the notice provisions are entitled to significant deference because they are public-health measures issued in a time of public-health crisis. And the required disclosures are no different from many other long-standing notice requirements and factual disclosures that have always been understood to comport with the First Amendment. *Finally*, Plaintiffs cannot show a likelihood of success on their claim that certain authority granted to the chief administrative judge violates the judicial delegation provision of the New York Constitution because that claim is moot, and because the delegation is lawful.

In addition, the Court lacks jurisdiction over all claims brought pursuant to the New York Constitution pursuant to the Eleventh Amendment to the United States Constitution.

Although Plaintiffs' failure to demonstrate a likelihood of success on the merits by itself warrants the denial of their motion for a temporary restraining order and preliminary injunction, their motion also fails for two additional reasons. Because the harms claimed by Plaintiffs are temporary

and addressable by other means, and because they do not make the required convincing showing of a constitutional injury, Plaintiffs cannot show irreparable harm. Moreover, the balance of the equities tips decisively against the extraordinary relief of a temporary restraining order and preliminary injunction. Enjoining CEEFPA would drastically upend the status quo that the Legislature has determined should prevail during the public-health crisis and would allow landlords to immediately move forward with eviction proceedings against tenants who cannot pay their rent because of the current health and economic emergency. Such a result would not only harm the tenants who will be forced to leave their homes during a pandemic, but would gravely harm the public interest by interfering with the State's ongoing efforts to prevent a homelessness crisis that would likely exacerbate the spread of COVID-19 and its attendant economic harms. Such harms to the State and its residents overwhelmingly outweigh any temporary burden Plaintiffs may experience.

<h2 style="text-align:center">STATEMENT OF FACTS</h2>

### A. Overview of Remedies Available to Landlords in New York State Against Tenants, Including Summary Eviction Proceedings

Landlords have common law rights in New York courts against tenants, including actions for past due rent. *See, e.g., 1000 Northern of N.Y. Co. v. Great Neck Med. Assocs.*, 7 A.D.3d 592 (2d Dep't 2004) (breach of contract suit for past-due rent); *177 Richard St., LLC v. Weeks*, 178 A.D.3d 644, 646 (2d Dep't 2019) (breach of lease suit for unpaid rent and holdover charges). In addition, the New York Legislature has enacted Section 7 of the Real Property Actions and Proceedings Law ("RPAPL") to grant landlords a streamlined statutory scheme for summary eviction proceedings.

The RPAPL allows a landlord to avail itself of a summary proceeding only in instances where it is seeking a tenant's eviction. RPAPL § 701. Under long-standing RPAPL provisions, landlords must provide tenants a predicate notice containing factual information, including information about the tenant's legal rights. When a landlord-tenant relationship exists, a landlord may commence a summary proceeding either for non-payment of rent or where a tenant continues in possession of the premises

3

after the expiration of their term (commonly referred to as "holdover" proceedings). RPAPL § 711. For example, in non-payment proceedings a landlord must serve a predicate fourteen-day written demand for rent before it may bring suit. RPAPL § 711(2). In a holdover proceeding, a landlord is also required to serve a predicate notice in most circumstances prior to commencing a summary proceeding. *See, e.g.*, RPL §§ 226-c; 232. The RPAPL limits who is eligible to commence a summary proceeding and dictates the required contents of the notice of petition. *See* RPAPL §§ 721, 732(4); 741. The notice of petition must advise the tenant of certain legal rights and obligations, including the tenant's right to trial. *See id.* §§ 732(2), (4); *see also* Form Notice of Nonpayment Petition (Ex. 1 to Lynch Decl.); Form Notice of Holdover Petition (Ex. 2 to Lynch Decl.). The notice must advise the tenant of the legal consequences of failing to respond within the required ten-day period, *i.e.*, that the court may issue an eviction warrant immediately. *Id.* §§ 732(3), 4. The notice must also advise the tenant that if he or she responds, a trial will be scheduled for three to eight days hence. *Id.* § 732(2). The form notice of petition includes a list of available resources for tenants, including contact information for free legal help. Ex. 1 at 3; Ex. 2 at 3.

If the landlord prevails at trial, the tenant may obtain a stay of the issuance of an eviction warrant for up to one year by making a showing of extreme hardship. RPAPL § 753(1). Such stays are "not uncommon." *Elmsford Apartment Assocs., LLC v. Cuomo*, 469 F. Supp. 3d 148, 161 (S.D.N.Y. 2020).

## B. Overview of Impact of COVID-19 and Housing-Related Containment Measures Prior to CEEFPA

It is difficult to overstate the scope of the destruction inflicted by the COVID-19 pandemic. As of this date, 1.6 million New Yorkers have been infected with the virus and 47,857 New Yorkers have been killed by it. https://www.nytimes.com/interactive/2020/us/new-york-coronavirus-cases.html (last visited Mar. 8, 2021). Nationwide, 28,771,749 people have been infected with the virus and more than 522,973 individuals have died. https://covid.cdc.gov/covid-data-tracker/#cases_casesper100klast7days (last visited Mar. 8, 2021). The economic toll is nearly

impossible to fathom. Unemployment rates, however, are measurable. The statewide unemployment rate in New York was 8.2% in December 2020, compared with 3.9% in December 2019. *See* https://labor.ny.gov/stats/pressreleases/pruistat.shtm. Widespread unemployment and loss of income have caused many tenants to be unable to pay rent and caused property owners to be unable to make mortgage payments. It is against this background that this matter comes before the Court.

Pursuant to authority granted to him by the Legislature, N.Y. Exec. Law § 29-a(1),[1] in March 7, 2020, the Governor declared a State disaster emergency for the entire State of New York. *See* Executive Order ("EO") 202; 9 NYCRR § 8.202. Thereafter, the Governor issued a series of Executive Orders, including Executive Order 202.8, which, among other things, ordered non-essential businesses to close or direct their employees to work from home, and imposed a ninety-day moratorium on enforcement of evictions and foreclosures, both residential and commercial. EO 202.8, 9 NYCRR § 8.202.8. On May 7, 2020, the Governor issued Executive Order 202.28, which, among other things, imposed a sixty-day moratorium on enforcement of evictions and foreclosures and on the initiation of eviction and foreclosure proceedings based on nonpayment of rent where the nonpayment was due to financial hardship caused by the pandemic. EO 202.28; 9 NYCRR § 8.202.28.

Recognizing that many tenants would remain in financial hardship due to the pandemic once the protections of Executive Order 202.28 expired, effective June 30, 2020,[2] the Legislature enacted the Tenant Safe Harbor Act ("TSHA"), which permits certain tenants to assert a defense to an eviction in non-payment proceedings. *See* Ch. 127 L. 2020 (Ex. 3 to Lynch Decl.). The TSHA allows landlords to commence and prosecute eviction proceedings, but tenants may assert a defense of financial hardship as of March 7, 2020 due to COVID-19. *Id.* This defense is available until the COVID-19-

---

[1] Bill S5357/A5967 repealing certain provisions, was delivered on March 5, 2021 to the Governor. *See* Legislative Information (Ex. 8 to Lynch Decl.).

[2] Protections for commercial tenants were extended through October 30, 2020. *See* EO 202.64; 9 NYCRR § 8.202.64.

based economic restrictions are lifted in their county of residence. *Id.* The law sets forth factors for a court to examine when a tenant raises such a defense and, if the defense is proven, the court may not issue a judgment of possession based on arrears from March 7, 2020 until expiration of the TSHA. *Id.* Even if a tenant successfully raised this defense, a landlord would still be entitled to a monetary judgment and would be entitled to a judgment of all past-due rent under the RPAPL.[3]

## C.  Overview of COVID-19 Emergency Eviction and Foreclosure Protection Act of 2020

CEEFPA creates new protections for both tenants and property owners to prevent the threat of increased spread of COVID-19 resulting from widespread evictions and foreclosures. CEEFPA temporarily delays evictions and foreclosures for those unable to make their payments due to COVID-19. The Senate Sponsor's Memorandum explains why:

> On March 7, 2020, Governor Andrew Cuomo proclaimed a state of emergency in response to the Coronavirus disease (COVID-19) pandemic. Measures necessary to contain the spread of COVID-19 have brought about widespread economic and societal disruption, placing the state of New York in unprecedented circumstances.

> COVID-19 presents a historic threat to public health. Hundreds of thousands of residents are facing eviction or foreclosure due to necessary disease control measures that closed businesses and schools, and triggered mass-unemployment across the state. The pandemic has further interrupted court operations, the availability of counsel, the ability for parties to pay for counsel, and the ability to safely commute and enter a courtroom, settlement conference and the like. Stabilizing the housing situation for tenants, landlords, and homeowners is to the mutual benefit of all New Yorkers and will help the state address the pandemic, protect public health, and set the stage for recovery. It is, therefore, the intent of this legislation to avoid as many evictions and foreclosures as possible for people experiencing a financial hardship during COVID-19 or who cannot move due to an increased risk of severe illness or death from COVID-19.

> The legislature will continue to monitor this issue for future action, and revisit this by May, 2021.

---

[3] New York was not alone undertaking such measures. Many states and localities also temporarily barred evictions of tenants facing financial hardships due to COVID-19. *See, e.g., Heights Apartments, LLC v. Walz,* No. 20-cv-2051, 2020 WL 7828818, at *1-2 (D. Minn. Dec. 31, 2020) (Minnesota eviction moratorium); *El Papel LLC v. Inslee,* No. 20-cv-1323, 2020 WL 8024348, at *1-4 (W.D. Wash. Dec. 2, 2020) (Seattle and Washington); *Baptiste v. Kennealy,* No. 20-cv-11335, 2020 WL 5751572, at *2 (D. Mass. Sept. 25, 2020) (Massachusetts); *HAPCO v. Philadelphia,* No. 20-cv-3300, 2020 WL 5095496, at *1-2 (E.D. Pa. Aug. 27, 2020) (Philadelphia); *Auracle Homes, LLC v. Lamont,* No. 20-cv-0829, 2020 WL 4558682, at *3 (D. Conn. Aug. 7, 2020) (Connecticut).

Ch. 381, L. 2020 (CEEFPA) (Senate Sponsor's Memorandum (with text of statute)) (Ex. 4 to Lynch Decl.). The concerns expressed in the Senate Sponsor's Memo are shared by the CDC and are well grounded in the data and research. According to the CDC, "[i]n the context of a pandemic, eviction moratoria—like quarantine, isolation, and social distancing—can be an effective public health measure utilized to prevent the spread of communicable disease" because they reduce the likelihood that people will be forced into crowded shelters where they would face a substantially increased risk of contracting COVID-19 or transmitting it to others. *See* Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19, 85 Fed. Reg. 55,292, 55,294 (Sept. 4, 2020).

Data further show that eviction moratoriums reduce the spread of COVID-19 and save lives. For example, a recent study by public-health scholars shows that in New York, as of Fall 2020, moratoriums on evictions prevented 135,000 COVID-19 cases and more than 10,000 deaths. https://drive.google.com/file/d/1x8qezy_mXiaw7eKsU_D9zQnQYY0YMfgP/view?usp=sharing (graph); *see also* Leifheit KM, *et al. Expiring Eviction Moratoriums and COVID-19 Incidence and Mortality* (2020) (Ex. 5 to Lynch Decl.) (preprint of accompanying article). The inverse is also true. Where states prematurely lifted moratoriums, COVID-19 rates shot up. *See id.* Throughout the pandemic, COVID-19 cases and deaths have been continually higher in states without eviction moratoriums. *See* Jowers, Kay *et al., Housing Precarity and the COVID-19 Pandemic* (2021) (Ex. 6 to Lynch Decl.).

CEEFPA protects both tenants and mortgagors who declare financial hardship due to COVID-19. No part of CEEFPA protects tenants who create a nuisance or safety hazard. The statute initially provided for an overall stay of both commencement and continuation of eviction proceedings, with the exception of proceedings against tenants engaging in ongoing nuisance behavior (as defined by CEEFPA),[4] until February 26, 2021. CEEFPA Part A § 2. This was to ensure that courts were

---

[4] Ongoing Nuisance Behavior is where a tenant is "persistently and unreasonably engaging in behavior that substantially infringes on the use and enjoyment of other tenants or occupants or causes a substantial safety hazard to others." *See, e.g.*, CEEFPA Part A § 5(b).

prepared to conduct proceedings in compliance with CEEFPA and to give tenants an opportunity to submit a Hardship Declaration. *Id.* The chief administrative judge was granted limited authority to extend that date. *Id.* The February 26, 2021 date passed without being extended.

CEEFPA requires landlords to include certain additional documents with the predicate notice and notice of petition that have long been mandated by law or lease to be served on a tenant before a landlord may avail themselves of housing court. Landlords seeking to commence eviction proceedings are required to provide tenants with: (i) a blank copy of a Hardship Declaration, the contents of which are set forth in the statute, *see id.* § 1(4), in the tenant's language; and (ii) a list of all not-for-profit legal services providers currently handling housing matters in the county of the tenant's residence. *Id.* § 3. Any tenant signing a Hardship Declaration does so "under penalty of law," which the form explains means that "it is against the law to make a statement on this form that you know is false." *Id.* § 1.[5] The form has the image of the seal of the Unified Court System on its face. *See* Hardship Declaration (Ex. 7 to Lynch Decl.). The Hardship Declaration is available in approximately twenty languages on the Office of Court Administration website. *See* http://www.nycourts.gov/courts/nyc/civil/CORONA/covid-eefpa.shtml.

CEEFPA Part A temporarily prohibits, until May 1, 2021, initiation of new eviction proceedings against tenants who have provided a completed Hardship Declaration to the landlord. CEEFPA Part A § 4. A landlord who attests that he or she has not received a completed Declaration of Hardship after having served a tenant the blank form in accordance with the statute may initiate an eviction proceeding. *Id.* § 5(a). In addition, a landlord may at any time initiate eviction proceedings against any tenant who the landlord attests is engaging in ongoing nuisance activity. *Id.* § 5(b).

---

[5] New York's Penal Law provides "A person is guilty of perjury in the third degree when he swears falsely." N.Y. Penal Law § 210.05.

Tenants may submit Hardship Declarations in pending proceedings. Where no warrant of eviction has been issued, submission of the completed form will result in the matter being stayed until May 1, 2021. CEEFPA Part A § 6. Where a warrant has been issued, submission of the completed form will require the court to stay execution of the warrant until at least May 1, 2021. *Id.* § 8(a)(ii). In addition, in pending eviction proceedings, courts may not issue default judgments or authorize enforcement of an already issued default judgment without a hearing. *Id.* § 7. Warrants may be executed if they state, in accordance with the statute, that the tenant has been served with a Hardship Declaration but did not return it, or that the tenant has engaged in ongoing nuisance activity. *Id.* § 8(b). After May 1, in a non-payment eviction proceeding the signed Hardship Declaration establishes a rebuttable presumption that the tenant has proven their affirmative defense that the tenant is experiencing financial hardship due to COVID-19. CEEFPA Part A § 11; Ex. 3. Contrary to Plaintiffs; assertions, landlords do not challenge the Hardship Declaration but instead challenge the affirmative defense of financial hardship established under the TSHA by presenting evidence attacking the four factors found in the TSHA. *See supra* section B.

CEEFPA Part A makes clear that none of the stay provisions applies where a tenant creates a nuisance or safety hazard. *Id.* § 9. The statute also makes clear that it does not provide for rent forgiveness. *See id.* § 1(4) (Hardship Declaration). Tenants submitting Hardship Declarations must declare their understanding that they must comply with all other obligations under their lease, they remain responsible for all rent owed and may be obligated to pay interest, and their non-payment may result in a money judgment. *Id.* Nothing in CEEFPA inhibits landlords from seeking other legal relief against non-paying tenants, such as a lawsuit for breach of contract. *See supra*, section A.

CEEFPA Part B, subpart A, through similar provisions, also prevents mortgage and tax foreclosures. As to mortgage foreclosures, it allows a mortgagor to submit a Hardship Declaration for mortgagors ("Mortgager Hardship Declaration"), which creates a rebuttable presumption in any

foreclosure action or proceeding that the mortgagor is suffering financial hardship. CEEFPA Part B(A) §§ 2, 10. One basis for creating a rebuttable presumption of hardship is, "One or more of my tenants has defaulted on a significant amount of their rent payments since March 1, 2020." *Id.*

Similar to those provisions regarding evictions in Part A, Part B requires a foreclosing party to provide, with notice of a foreclosure action, a form Mortgagor Hardship Declaration in the mortgagor's primary language. CEEFPA Part B § 4. All foreclosure actions in which a mortgagor provides a Mortgagor Hardship Declaration are stayed until May 1, 2021. § 5. A foreclosing party may commence a foreclosure action only if he or she attests to having provided the mortgagor with a Mortgagor Hardship Declaration as required by the statute and having not received the completed form in return. CEEFPA Part B § 5. Pending foreclosure actions in which a judgment of sale has not been issued are stayed until May 1, 2021 where the mortgagor submits a Mortgagor Hardship Declaration. *Id.* § 7. All stays of execution of judgment of sale are stayed until May 1, 2021, where the mortgagor submits a Mortgagor Hardship Declaration. *Id.* § 8.

Part B, Subpart B of CEEFPA contains corresponding provisions in the context of tax foreclosure. CEEFPA Part B(B). Part B, subpart C contains similar provisions for owners of residential properties, including residential cooperatives, with ten or fewer units, to provide for protections against discrimination in lending. *Id.* Part B(C).

## STANDARDS FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

The "standards which govern consideration of an application for a temporary restraining order . . . are the same standards as those which govern a preliminary injunction." *Local 1814, Int'l Longshoremen's Ass'n v. New York Shipping Ass'n, Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992). Either form of relief is an "extraordinary and drastic remedy" that is "unavailable except in extraordinary circumstances." *Moore v. Consol. Edison Co.*, 409 F.3d 506, 511 (2d Cir. 2005).

Where, as here, injunctive relief would "affect government action taken in the public interest pursuant to a statute or regulatory scheme, the moving party must demonstrate (1) irreparable harm absent injunctive relief, (2) a likelihood of success on the merits, and (3) public interest weighing in favor of granting the injunction." *Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton*, 841 F.3d 133, 143 (2d Cir. 2016). And, because Plaintiffs seek to change the status quo by striking down a duly enacted statute, their motion is subject to a heightened standard. Plaintiffs must show "a 'clear' or 'substantial' likelihood of success on the merits." *Thomas v. New York City Bd. Of Elections*, 898 F. Supp. 2d 594, 597 (S.D.N.Y. 2012) (citing *Mastrovincenzo v. City of New York*, 435 F.3d 78, 89 (2d Cir. 2006)).

## ARGUMENT

Plaintiffs do not make the necessary showing on any aspect of the drastic relief they seek.

## POINT I:   PLAINTIFFS FAIL TO SHOW A LIKELIHOOD OF SUCCESS ON THE MERITS OF THEIR CLAIMS

### A. Plaintiffs Fail to Show a Likelihood of Success on Any of Their Claims Because the New York State Attorney General is Not a Proper Party

Plaintiffs name only the New York State Attorney General, in her official capacity, as a Defendant. However, under well-established law, the Attorney General is not a proper party in an action challenging a state statute under which she has no specific enforcement powers. *Mendez v. Heller*, 530 F.2d 457, 460 (2d Cir. 1976) ("The Attorney General has no connection with the enforcement of [the state statute in question], and therefore cannot be a party to this suit.").

This principle is grounded in the Eleventh Amendment to the United States Constitution. "[S]uits in federal court which name states as defendants are proscribed by the Eleventh Amendment, unless Congress has abrogated that state's Eleventh Amendment immunity, or the state has waived such immunity by unambiguously consenting to the suit. *Steinberg v. Elkman*, No. 15-cv-278, 2016 WL 796870, at *3 (S.D.N.Y. Feb. 22, 2016) (2d Cir. 2016) (citing *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984)). A state official sued in his or her official capacity, as the Attorney

11

General is here sued, is the state for purposes of Eleventh Amendment immunity. *See Burnette v. Carothers*, 192 F.3d 52, 57 (2d Cir. 1999).

There is one notable exception to Eleventh Amendment immunity, but it is not applicable here. Under *Ex parte Young*, federal courts may entertain suits against state officials in their official capacity to enforce federal law where the suit seeks prospective injunctive and declaratory relief only. 209 U.S. 123 (1908); *see also State Employees Bargaining Agent Coalition v. Rowland*, 494 F.3d 71, 95 (2d Cir. 2007). The *Ex parte Young* exception is inapplicable in this action involving a state statute. In any event, to fall within the *Ex parte Young* exception, a named state official "must have some connection with the enforcement of the act, or else [the plaintiff] is merely making him a party as a representative of the state, and thereby attempting to make the state a party." *HealthNow New York, Inc. v. New York*, 739 F. Supp. 2d 286, 294 (W.D.N.Y. 2010) (internal quotation marks omitted).

Courts have made clear that the Attorney General's general responsibility for the enforcement of New York laws is not a sufficient connection to permit suits against her. That is, the Attorney General may not be sued in a challenge to a statute merely because she may enforce that statute under her general enforcement powers. Indeed, "the vast majority of courts to consider the issue have held . . . that a state official's duty to execute the laws is not enough by itself to make that official a proper party in a suit challenging a state statute." *Warden v. Pataki*, 35 F. Supp. 2d 354, 359 (S.D.N.Y.), aff'd sub nom. *Chan v. Pataki*, 201 F.3d 430 (2d Cir. 1999); *see also Jones v. Schneiderman*, 974 F. Supp. 2d 322, 352-53 (S.D.N.Y. 2013). And, as *Mendez* made clear, the Attorney General's duty to defend the constitutionality of statutes does not create an *Ex parte Young* exception. 530 F.2d at 460.

Failure to the name the proper party is fatal to all of Plaintiff's claims. *See HealthNow New York*, 739 F. Supp. 2d at 295. Indeed, courts throughout the State have regularly dismissed claims against

the Attorney General challenging the constitutionality of statutes that she is not obligated to enforce.[6] Courts in the Eastern District have agreed. *See Ulrich v. Mane*, 383 F. Supp. 2d 405, 410 (E.D.N.Y. 2005) ("[T]he Attorney General has no connection with the enforcement of [the statute at issue], and therefore cannot be a party to this suit." (citing *Ex parte Young*, 209 U.S. 123)).

Accordingly, because the Attorney General has no obligation to enforce CEEFPA, she cannot be a party to this suit. Plaintiffs, therefore, cannot succeed on any of the claims in this litigation.

**B. Plaintiffs Fail to a Show Likelihood of Success on Their Claims of Violations of the First or Fourteenth Amendment, or any Provision of the New York Constitution**

As an initial matter, New York courts have held that statutes enacted by the State Legislature "enjoy a strong presumption of constitutionality," and "parties challenging a duly enacted statute face the initial burden of demonstrating the statute's invalidity beyond a reasonable doubt." *LaValle v. Hayden*, 98 N.Y.2d 155, 161 (2002). In addition, "substantial deference is due the Legislature." *Catholic Charities of Diocese of Albany v. Serio*, 7 N.Y.3d 510, 525 (2006). This court should apply the same presumption. *See Kramer v. Union Free Sch. Dist. No. 15*, 395 U.S. 621, 627 (1969) (referring to "general presumption of constitutionality afforded state statutes"). Moreover, Plaintiffs assert a facial challenge, which "'is . . . the most difficult challenge to mount successfully, since the challenger must establish no set of circumstances under which the Act would be valid.'" *Elmsford*, 469 F. Supp. 3d at 161 (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)).

---

[6] *See, e.g., Burke v. Verizon Commc'ns, Inc.*, No. 18-cv-4496, 2020 WL 4741043, at *4 (S.D.N.Y. Aug. 17, 2020), report and recommendation adopted, No. 18-cv-4496, 2020 WL 6538748 (S.D.N.Y. Nov. 6, 2020) (recommending dismissal of action against Attorney General involving constitutional challenge to labor statute); *Sabin v. Nelson*, No. 7:12-cv-1373, 2014 WL 2945770, at *2 (N.D.N.Y. June 30, 2014) (dismissing constitutional challenge to N.Y. Human Rights Law); *HealthNow New York*, 739 F. Supp. 2d at 295 (dismissing claims because "the Attorney General lacks the required enforcement 'connection'"); *Johnson v. Rockefeller*, 58 F.R.D. 42, 46 (S.D.N.Y. 1972) (dismissing claims against Attorney General, who was not "obligated to enforce the statute here attacked.").

Plaintiffs cannot demonstrate the facial invalidity of CEEFPA Part A under any of their constitutional theories. They therefore cannot establish a likelihood of success on the merits, and are not entitled to the temporary restraining order or the preliminary injunction they seek.

      i.    Plaintiffs Cannot Succeed on Their Claim that Any Part of CEEFPA Part A is Unconstitutionally Vague in Violation of the Fourteenth Amendment Due Process Clause or Article I, § 6 of the New York Constitution

Plaintiffs assert that CEEFPA Part A must be struck down in its entirety pursuant to the Fourteenth Amendment Due Process Clause and Article I, § 6 of the New York Constitution because certain phrases in the Hardship Declaration are not specifically defined. Because these terms are commonly used and are capable of reasoned interpretation by a court, Plaintiffs cannot succeed on their void-for-vagueness claims.

A statute is impermissibly vague as a matter of due process only if it either fails to provide a person of ordinary intelligence fair notice as to the prohibited conduct, or is so standardless that it authorizes or encourages discriminatory enforcement. *United States v. Williams*, 553 U.S. 285, 304 (2008). Due process requires only that a statute provide "minimal guidelines" as to the conduct it proscribes when understood through common sense and ordinary practice; the Constitution does not demand "meticulous specificity . . . at the cost of flexibility and reasonable breadth." *United States v. Rosen*, 716 F.3d 691, 699 (2d Cir. 2013). In reviewing vagueness claims, whose purpose is primarily to challenge criminal statutes, courts must look at the statutory language in the context of the statute's purpose and legislative history. *United States v. Farhane*, 634 F.3d 127, 139 (2d Cir. 2011).

Because plaintiffs bring a facial vagueness challenge, they face a particularly high burden. To succeed, they must establish that CEEFPA is so vague that it "can never be validly applied," *Vermont Right to Life Committee, Inc. v. Sorrell*, 758 F.3d 118, 128 (2014)—*i.e.*, that it "is impermissibly vague in all of its applications," *Richmond Boro Gun Club, Inc. v. City of New York*, 97 F.3d 681, 684 (2d Cir. 1996) (internal quotation marks omitted). Plaintiffs do not come close to satisfying this high bar.

14

Plaintiffs limit their vagueness claim to paragraph A(5) of the Hardship Declaration. *See* Pls.'
Mem. (ECF No. 6). But the Hardship Declaration is filled out by tenants, not by property owners like
Plaintiffs, and CEEFPA is sufficiently clear about property owners' obligations once such a
Declaration is filed. (Indeed, Plaintiffs' admit as much by contending that the consequences of the
filing of a Hardship Declaration deprive them of property without due process, Pls.' Mem. 22-23—a
claim that fails for other reasons, as explained below.) Plaintiffs also assert that CEEFPA provides no
guidelines for how property owners can rebut the presumption of financial hardship created by the
filing of a Hardship Declaration, *id.*, but in enacting TSHA, the Legislature identified factors that
courts must consider in determining whether a financial hardship exists, *see* TSHA § 2(b). Those
factors provide constitutionally adequate guidance to landlords seeking to contest such a showing.

In any event, under the aforementioned standards, none of the challenged terms in the
Hardship Declaration is impermissibly vague. Instead, they are common in life and the law, and can
be understood and applied by "a person of ordinary intelligence." *Id.*; *see, e.g.*, *VIP of Berlin, LLC v.
Town of Berlin*, 593 F.3d 179, 187 (2d Cir. 2010) (rejecting void-for-vagueness claim to term "substantial
or significant portion," and relying on dictionary definition for "significant"). Moreover, the overall
purpose of the statute is clear: "to avoid as many evictions and foreclosures as possible for people
experiencing a financial hardship during the COVID-19 pandemic or who cannot move due to an
increased risk of severe illness or death from COVID-19." CEEFPA § 3 (Legislative Intent). The
Hardship Declaration, consistent with this purpose, thus makes clear that it only encompasses
circumstances attributable to COVID-19.

Thus, Section A(5) of the Hardship Declaration plainly has "a core meaning that can
reasonably be understood" and applied and is thus not vague. *See Brache v. Westchester County*, 658 F.2d
47, 51 (2d Cir. 1981). For example, it is reasonably ascertainable that "negatively affected by ability to
obtain meaningful employment" will apply when, because of COVID-19, the declarant was unable to

find a job earning enough money to pay his or her rent. It is reasonably ascertainable that "significantly reduced my household income" means the declarant's income was reduced such that he or she is unable to pay rent. Moreover, providing an exhaustive list of "[o]ther circumstances related to the COVID-19 pandemic" is not necessary or even reasonable. *Rosen*, 716 F.3d at 699. An exhaustive list would also risk narrowing eligibility to claim hardship in ways that are inconsistent with the purposes of the statute.

The Court lacks jurisdiction over Plaintiff's state void-for-vagueness claim under Article I, § 6 of the New York Constitution based on "the doctrine of state sovereign immunity and principles of federalism embodied in the Eleventh Amendment." *Elmsford*, 469 F. Supp. 3d at 161–62; *McCarthy v. Cuomo*, No. 20-cv-2124, 2020 WL 3286530, at *6 (E.D.N.Y. June 18, 2020) (dismissing state constitutional claim as barred by the Eleventh Amendment).[7] In any event, Plaintiffs show no likelihood of success for the same reasons their federal void-for-vagueness claim fails. *See DeMartino v. New York State Dep't of Labor*, 167 F. Supp. 3d 342, 373-74 (E.D.N.Y. 2016).[8]

Plaintiffs fail to show a likelihood of success on their void-for-vagueness claims.

  ii. Plaintiffs Cannot Succeed on Their Claim that CEEFPA Part A Violates Procedural Due Process Under the Fourteenth Amendment or Article I § 6 of the New York Constitution

Plaintiffs' second due process claim is based on their temporary inability to evict certain tenants. Plaintiffs fail to show a likelihood of success on this claim.

These claims cannot be the basis for a facial challenge to CEEFPA Part A, because CEEFPA Part A permits the commencement and continuation of proceedings against nuisance tenants and, as

---

[7] This argument is discussed in more detail below. *See infra*, Point I(C).

[8] In addition, Plaintiffs appear to assert some of their state constitutional claims pursuant to 42 U.S.C. § 1983. *See* Compl. 25, 28, 31, 32. This is an additional reason why these claims cannot succeed. Section 1983 is a vehicle to vindicate federal rights only. *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999).

of February 26, 2021, tenants who have not suffered hardship as a result of COVID-19. *Id.* §§ 2, 4, 5. In any event, Plaintiffs federal procedural due process claim is likely to fail. "To succeed on a procedural due-process claim, a plaintiff must first identify a property right, second show that the state has deprived him [or her] of that right, and third show that the deprivation was effected without due process.'" *Progressive Credit Union v. City of New York*, 889 F.3d 40, 51 (2d Cir. 2018). Here, Plaintiffs have not established any deprivation of a property interest. *See Elmsford*, 469 F. Supp. 3d at 173. Plaintiffs have not been deprived of their property interest in rent because they have not lost any legal claim to rent for any period of occupancy. *See Elmsford*, 469 F. Supp. 3d at 173. Nothing in CEEFPA Part A provides for rent forgiveness. To the contrary, those who sign a Hardship Declaration must declare that they "understand that lawful fees, penalties or interest for not having paid rent in full or met other financial obligations as required by my tenancy, lease agreement or similar contract may still be charged or collected and may result in a monetary judgment against me." CEEFPA Part A § 1(4), Hardship Declaration ¶ 5(B).

Plaintiffs also have not been deprived of any property interest in rent or the ability to obtain possession of their property because "the gravamen of [their] claim is not total deprivation, . . . but only delay" in being able to use certain legal remedies. *Sosna v. Iowa* 419 U.S. 393, 410 (1975). The short delay of some evictions does not create any "viable procedural due process claim." *Id.*

Moreover, the temporary delay "in pursuing remedies otherwise available to them," *Elmsford*, 469 F. Supp. 3d at 159, does not deny plaintiffs due process, *i.e.*, "the opportunity to be heard at a meaningful time and in a meaningful manner," *Mathews v. Eldredge*, 424 U.S. 319, 334 (1976). Plaintiffs will receive a meaningful opportunity to be heard in any proceeding, including those in which a Hardship Declaration was submitted, as of May 1, 2021. CEEFPA Part A §§ 2, 5. Any delay is also only partial: Plaintiffs currently may initiate or proceed with pending eviction proceedings against certain tenants. *Id.* §§ 2, 5. In addition, nothing prohibits Plaintiffs from pursuing other legal avenues

17

for a money judgment to collect arrears. *See 177 Richard St.,* 178 A.D.3d at 646. Plaintiffs thus have recourse against non-paying tenants, and the temporary inability to file an eviction proceeding against a category of tenants does not run afoul of due process. Plaintiffs do not have a constitutional due process right to pursue eviction proceedings on their preferred timetable.

For much the same reason, there is no merit to Plaintiffs assertion, *see* Pls.' Mem. 11, 22-23, that they are deprived of due process because they purportedly can never challenge a tenant's assertion of financial hardship due to COVID-19. Although a submitted Hardship Declaration automatically triggers a short stay of proceedings until May 1, Plaintiffs can challenge the tenant's claims of COVID-19-related financial hardship after that date if the tenant relies on the Declaration to assert the affirmative defense to eviction under the TSHA. CEEFPA Part A § 11. At that point, the Declaration merely creates a routine evidentiary burden framework: the Declaration creates a rebuttable presumption that the tenant is suffering financial hardship as of March 7, 2020 because of COVID-19, and the landlord may rebut that presumption using the same types of evidence and factors that are already used under the TSHA—a separate statute that Plaintiffs do not challenge here.

Nothing about the short delay imposed by CEEFPA Part A is uniquely burdensome in light of the fact that delays of greater magnitude may occur in eviction proceedings. *Cf. id.* (noting that stays of evictions of up to a year are "far from uncommon"). Where a delay in obtaining a judicial determination is alleged to infringe on due process, "the significance of such a delay cannot be evaluated in a vacuum." *Fed. Deposit Ins. Corp. v. Mallen*, 486 U.S. 230, 242 (1988). Instead, such factors as "the justification offered by the Government for delay and its relation to the underlying governmental interest" must be considered. *Id.* Here, the State has an extraordinary interest in preventing a homelessness crisis which would compound the health and economic crisis. The delay is limited, and Plaintiffs retain at all times their right to recover all unpaid rent. In light of these factors,

requiring Plaintiffs to wait until May 2, 2021, to initiate eviction proceedings (while they are currently able to initiate such proceedings against certain tenants) is not a violation of procedural due process.

The Court lacks jurisdiction over Plaintiff's state procedural due process claim under Article I, § 6 of the New York Constitution. *Elmsford*, 469 F. Supp. 3d at 161-62; *McCarthy*, 2020 WL 3286530, at *6. In any event, Plaintiffs show no likelihood of success for the same reasons their federal procedural due process claim fails. *See DeMartino*, 167 F. Supp. 3d at 373-74.

Plaintiffs fail to show they are likely to succeed on their procedural due process claims.

    iii.    Plaintiffs Cannot Succeed on Their Claim that CEEFPA Part A Denies Them Access to the Courts in Violation of the First Amendment or Article, I § 9 of the New York Constitution

Plaintiffs assert that the temporary stay of eviction proceedings against certain tenants violates their right of access to the courts in violation of First Amendment and Article I, § 9 of the New York Constitution. Plaintiffs fail to show a likelihood of success on these claims.

The First Amendment provides, in relevant part, that "Congress shall make no law . . . abridging . . . the right of the people . . . to petition the Government for a redress of grievances." U.S. Const. amend. I. The Petition Clause as a general matter "protects the right of individuals to appeal to courts and other forums established by the government for resolution of legal disputes." *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 387 (2011). The Petition Clause is violated "where government officials obstruct legitimate efforts to seek judicial redress." *Whalen v. County of Fulton*, 126 F.3d 400, 406–07 (2d Cir. 1997). However, like all First Amendment rights, the right to petition the courts is not absolute and remains subject to reasonable government regulation. *See Jacobson,* 197 U.S. at 25, 27.

As an initial matter, the Petition clause cannot be the basis for a facial challenge because CEEFPA does not bar or stay summary proceedings against nuisance tenants and those who do not claim financial hardship. CEEFPA Part A § 2, 5(a). Moreover, CEEFPA "does not impede, let alone entirely foreclose, general use of the courts by would-be plaintiffs" such as Plaintiffs herein. *City of*

*New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 397-98 (2d Cir. 2008). And no precedent could be found suggesting that a modest delay in the ability to commence a proceeding, resulting from the pursuit of a compelling government interest, violates the Petition Clause. This is unsurprising. Legally mandated delays in prosecution of legal proceedings are unremarkable even without the exigent circumstances of a public health and economic crisis. And, "[d]e minimus interference with access to the courts is not constitutionally significant." *Colondres v. Scoppetta*, 290 F. Supp. 2d 376, 382 (E.D.N.Y. 2003) (citing *Ingraham v. Wright*, 430 U.S. 651, 674 (1977)). In the context of prisoner access to courts, for instance, courts have specifically held that a mere delay in the ability to vindicate one's rights does not violate the Petition Clause. *See Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003).

Here, there is no dispute that Plaintiffs will be able to seek judicial relief on all of the same grounds they could assert if they were to file a proceeding immediately. *Cf.* CEEFPA Part A § 4 (extending statutes of limitation until May 1, 2021). Plaintiffs therefore fail to show that CEEFPA will cause them any "actual injury" by ultimately "hinder[ing] [their] efforts to pursue a legal claim"—as required under the Petition Clause. *See Monsky v. Moraghan*, 127 F.3d 243, 247 (2d Cir. 1997). No court has held that a temporary delay that does not substantively harm the prospective party's legal positions constitutes a "hindrance" of the sort that violates the First Amendment.

Even if CEEFPA Part A were to constitute a burden on First Amendment rights despite imposing only a delay, it would still withstand even strict scrutiny. Preventing the current economic and public health crisis from metastasizing into a homelessness crisis and forestalling a resurgence of COVID-19 are compelling government interests of the highest order. Temporarily delaying the commencement of certain eviction proceedings, while preserving all of Plaintiffs' legal rights during this period, including entitlement to rent for all terms of occupancy and rights to pursue rent arrears in a plenary action, constitutes a necessary and narrowly tailored means to pursue this compelling interest. Plaintiffs will fail in their claim that CEEFPA Part A violates the Petition Clause.

The Court lacks jurisdiction over Plaintiffs' state right-to-petition claim under Article I, § 9 of the New York Constitution. *Elmsford*, 469 F. Supp. 3d at 161-62; *McCarthy*, 2020 WL 3286530, at *6. In any event, Plaintiffs fail to show any likelihood of success, for the same reasons that their federal Petition Clause claim fails. *See Qing You Li v. City of New York*, No. 16-cv-174, 2018 WL 6251339, at *4 (E.D.N.Y. Nov. 28, 2018) ("same analysis" applies to federal and state right-to-petition claims).

Accordingly, Plaintiffs fail to show a likelihood of success on their right-to-petition claims.

iv.    Plaintiffs Cannot Succeed on Their Claim of Compelled Speech in Violation of the First Amendment or Article I, § 8 of the New York Constitution

Plaintiffs' compelled speech claims challenge a limited set of discrete provisions in CEEFPA Part A—the notice provisions that require landlords who wish to avail themselves of housing court to provide tenants with a blank Hardship Declaration, which the tenant may choose to fill out, and a list of not-for-profit legal service providers who handle housing matters in the county of tenant's residence. CEEFPA Part A, § 3(2). Contrary to Plaintiffs' assertions, *see* Pls.' Mem. (ECF No. 6) at 18, this notice requirement, of a purely factual blank form and service-provider list, during a severe public-health crisis comports with the First Amendment and Article I, § 8 of the New York Constitution.[9]

There is no merit to Plaintiffs' contention that strict scrutiny applies here. In the context of a public health emergency, unquestionably the context here, different standards apply. The Supreme Court held more than a century ago in *Jacobson v. Commonwealth of Massachusetts* that "a community has the right to protect itself against an epidemic of disease which threatens the safety of its members," including by enacting "quarantine laws and health laws of every description." 197 U.S. 11, 25, 27 (1905). Courts have recently affirmed that *Jacobson* is "the controlling Supreme Court precedent that squarely governs judicial review of rights-challenges to emergency public health measures." *Lebanon*

---

[9] Plaintiffs argue that the disclosure requirements cannot be severed from the statute. This is erroneous. *See* CEEFPA Part A § 12. This is also puzzling in light of the fact they expressly seek to sever Part A of the statute from the remainder, which would derail the statute's core purpose of providing protections against both evictions and foreclosures. *See* Ex. 1 (Senate Sponsor's Memo).

*Valley Auto Racing Corp. v. Cuomo*, 478 F. Supp. 3d 389, 396 (N.D.N.Y. 2020) (internal quotation marks omitted). One court conclude February 2021 that "*Jacobson*'s deferential standard of judicial review is still applicable." *see also Hopkins Hawley LLC v. Cuomo*, No. 20-cv-10932, 2021 WL 465437, at *5 (S.D.N.Y. Feb. 9, 2021).

*Jacobson* "requires courts to afford politically accountable officials significant discretion in striking the appropriate balance during pandemics." *Id.* Under *Jacobson*, CEEFPA Part A easily passes scrutiny. The Senate sponsor explained the purpose of CEEFPA: "Stabilizing the housing situation for tenants, landlords, and homeowners is to the mutual benefit of all New Yorkers and will help the state address the pandemic, protect public health, and set the stage for recovery." Ex. 1; *see also* 85 Fed. Reg. 55,292, 55,294 (referring to importance of eviction moratoriums as a prevention measure). The predicate notice requirements ensure that tenants are provided information to help them temporarily postpone an eviction and potential descent into homelessness.

Strict scrutiny is also not applicable here because the Legislature reasonably responded to this public-health emergency using a routine disclosure requirement of the sort that has never been understood to violate the First Amendment. A disclosure requirement comports with the First Amendment when it requires the provision of "purely factual and uncontroversial information" that is "reasonably related" to a state interest and that is not "unduly burdensome." *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 651 (1985); *see Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 249 (2010). This analytical framework exists because of the importance of ensuring that individuals are informed, and a more deferential approach is appropriate because factual disclosures are not viewpoints. The blank Hardship Declaration form and list of legal service providers fall squarely within of the type of mandatory disclosures of purely factual and uncontroversial information that comport with the First Amendment.

Critically, the CEEFPA disclosures at issue here are similar to many other long-standing notice and predicate notice requirements applicable to landlords in housing court proceedings. Most notably, before the pandemic or CEEFPA, New York law already required landlords who wanted to commence a summary eviction proceeding to provide the tenant with a notice of petition advising the tenant of legal rights and responsibilities, including the right to trial and the legal consequences of failing to respond to the petition. RPAPL § 732. The form notice also sets forth a list of available resources for tenants, including contact information for legal services providers. *See* Ex. 1 at 2; Ex. 2 at 2. Landlords may consider it adverse to their legal interests to comply with these procedural notice requirements, but they are nevertheless required to do so if they wish to commence an eviction proceeding. These routine procedural notice requirements have never been understood to violate the First Amendment.

Numerous other disclosure requirements apply to landlords. For example, landlords must set forth in leases, in "conspicuous notice in bold face type," whether there is a sprinkler system on the premises. RPL § 231-a(1). Where a sprinkler system is present, the lease must provide "further notice as to the last date of maintenance and inspection." *Id.* § 231-a(3). New York City landlords are required to provide "specific notices to tenants about lead paint risks when a lease is signed and annually thereafter." *New York City Coal. to End Lead Poisoning, Inc. v. Vallone*, 293 A.D.2d 85, 89 (1st Dep't 2002), rev'd on other grounds, 100 N.Y.2d 337 (2003). Again, these notices may contain information that disclosers consider adverse to their interests, but they are nevertheless required.

Numerous other notice and disclosure requirements of this type of factual information exist in New York law in various commercial settings. *See, e.g.,* RPL § 462 (sellers' disclosure regarding pipes, asbestos, and toxic substances); N.Y. Lab. Law § 198-d (employee rights regarding illegal wage deductions); 9 NYCRR § 466.1(a) (employee anti-discrimination rights); 12 NYCRR § 142-2.8 (employee information on minimum wage rights). By posting these notices, the disclosing party is not

required to endorse any views. These disclosures exist for the important policy goal of ensuring that individuals are informed, even though many of these required disclosures may be adverse to the disclosing party's interests.

In a case upholding required disclosures by pharmacy benefit managers to medical benefit providers—including conflicts of interest and certain financial arrangements with third parties—the First Circuit observed: "There are literally thousands of similar regulations on the books, such as product labeling laws, environmental spill reporting, accident reports by common carriers, [and] SEC reporting as to corporate losses." *Pharm. Care Mgmt. Ass'n v. Rowe*, 429 F.3d 294, 316 (1st Cir. 2005) (concurring opinion). These types of statutes and regulations are consistent with the First Amendment, and the required disclosures here should be treated no differently. These disclosures are purely factual, and they are needed to ensure that eligible tenants are informed and can temporarily forestall eviction, a core purpose of CEEFPA. And requiring these disclosures of landlords as part of the process of seeking eviction and payment of rent presents no burden to them. The forms are available on the office of court administration website, *see* CEEFPA Part A § 3, just as are all other forms required for housing court, *see* 22 NYCRR 208.42.

The cases cited by Plaintiffs do not support their claim because, unlike in the case at bar, they did not involve procedural notices or factual disclosures but rather expressions of policy views. *Alliance for Open Society Int'l, Inc. v. U.S. Agency for International Development* involved a regulation that "mandate[d] that [funding] recipients affirmatively say something—that they are 'opposed to the practice[ ] of prostitution.'" 651 F.3d 218, 234 (2d Cir. 2011), aff'd sub nom. *Agency for Int'l Dev. v. All. for Open Soc'y Int'l*, Inc., 570 U.S. 205 (2013). Here, nothing requires Plaintiffs to "affirmatively say something."

The plaintiffs in *PSEG Long Island LLC v. Town of North Hempstead* were effectively required to express a view that a chemical was dangerous. *See* 158 F. Supp. 3d 149, 156-57 (E.D.N.Y. 2016). In addition, *National Institute of Family & Life Advocates v. Becerra* ["*NIFLA*"] is distinct because the

24

required notice at issue was more than just "purely factual and uncontroversial information."[10] 138 S. Ct. 2361, 2374 (2018). *NIFLA* did "not question the legality" of myriad health and safety warning requirements or mandatory disclosures of factual and uncontroversial information. *Id.* at 2376.

Here, by contrast, the notice requirements merely involve a blank form and a correct statement of the existence of certain legal providers. Contrary to Plaintiffs' baseless assertion, *see* Pls.' Mem. at 18-19, nothing in CEEFPA suggests that Plaintiffs are endorsing whatever a tenant might put on the Declaration form. It is entirely up to the tenant to complete the Declaration if he or she wants, and it is solely the tenant who is subject to legal consequences for making a false statement on the Declaration. *See* CEEFPA Part A § 1.

Finally, even if the Court were to apply strict scrutiny, the notice requirements would pass. There can be no question that containment of COVID-19 "is a powerful compelling government interest." *See, e.g., Murray v. Cuomo*, 460 F. Supp. 3d 430, 446 (S.D.N.Y. 2020). And the notice requirements are necessary and narrowly tailored. Landlords are required to provide the disclosures only in the process of availing themselves of housing court. CEEFPA Part A § 3. These narrow requirements are necessary to effectuate the purposes of CEEFPA Part A. If the State were to be the exclusive distributor of these disclosures, as Plaintiffs argue should occur, *see* Pls.' Mem. (ECF No. 6) at 20, no matter how widespread its efforts, the State would not be able to ensure that tenants would be in possession of the information at the time it is needed—*i.e.*, at the time a landlord serves a demand for rent under RPL § 711(2) or a notice of petition. The timing is crucial. If the tenant does not return a completed Hardship Declaration to the landlord, the landlord may commence a proceeding. CEEFPA Part A § 5(a). Although the tenant may later file a Declaration of Hardship with the court

---

[10] The plaintiffs in *Hurley v. Irish-American Gay, Lesbian & Bisexual Grp. of Boston* were prevented from expressing views, of "pride in their Irish heritage as openly gay, lesbian, and bisexual individuals." 515 U.S. 557, 561 (1995). Unlike in *Hurley*, nothing here prevents Plaintiffs from expressing a view, and they make no claim of being prevent from doing so.

and have the proceeding stayed, *id.* § 6, the tenant will have unalterably forfeited his or her statutory right not to be named in a proceeding in housing court during that time period. *Id.* § 4.

Accordingly, the notice requirements are consistent with the First Amendment under the deferential standard of *Jacobson* (the applicable standard here) or *Zauderer*, or under strict scrutiny.

The Court lacks jurisdiction over Plaintiffs' state compelled speech claim pursuant to Article I, § 8 of the New York Constitution. *Elmsford*, 469 F. Supp. 3d at 161-62; *McCarthy*, 2020 WL 3286530, at *6. However, because their state constitutional claim is subject to the same standards as their First Amendment claim, *see Pico v. Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26*, 638 F.2d 404 (2d Cir. 1980), aff'd, 457 U.S. 853 (1982), Plaintiffs fail to show a likelihood of success on their state compelled speech claim for the same reasons that their First Amendment claim fails.

Accordingly, Plaintiffs fail to show likelihood of success on their compelled speech claims.

### C. Plaintiffs Fail to Show a Likelihood of Success on Their Claim that CEEFPA Contains and Unconstitutional Judicial Delegation in Violation of Article IV § 30 of the New York Constitution

Plaintiffs assert that the provision in CEEFPA Part A § 2 authorizing the chief administrative judge in certain circumstances to extend stays of eviction proceedings past February 26, 2021 is an unconstitutional delegation. Plaintiffs cannot succeed on this claim. First, the Court lacks jurisdiction to hear this claim, which asks the Court to rule that a state statute violates a state constitutional provision. Second, this claim is moot. Even setting aside the jurisdictional bars, Plaintiffs' claim still fails because the authority granted to the administrative judge is consistent with the judicial delegation clause of the New York Constitution.

Federal courts do not have the power to address claims that a New York Statute violates the New York Constitution. "[C]uring those alleged harms would require this Court to ignore the doctrine of state sovereign immunity and principles of federalism embodied in the Eleventh Amendment." *Elmsford*, 469 F. Supp. 3d at 161–62. "[I]t is difficult to think of a greater intrusion on state sovereignty

26

than . . . a federal court instruct[ing] state officials on how to conform their conduct to state law.'" *Id.* (quoting *Pennhurst*, 465 U.S. at 106); *see also McCarthy*, 2020 WL 3286530, at \*6. Under *Pennhurst*, federal courts may not grant relief against state officials for purported violations of state law, because doing so would not implicate any aspect of federal law. *Id.* Such alleged violations do not "'aris[e] under the Constitution, the Laws of the United States, [or] Treaties." *Elmsford*, 469 F. Supp. 3d at 161-62 (quoting U.S. Const. Art. III § 2). Accordingly, Plaintiffs cannot succeed on this claim because the Court lacks jurisdiction over it.

In addition, this claim is moot. The delegation allowed the chief administrative judge to extend the close of the overall stay period past February 26, 2021, in the event (which did not occur), that the court was not prepared to conduct proceedings in accordance with CEEFPA and provide the Hardship Declarations. CEEFPA Part A § 2. February 26 has passed, and no extension occurred. Indeed, Plaintiffs do not allege that any such extension has occurred. *See* Pls.' Mem. (ECF No. 6) at 24; Compl. ¶¶ 94-97. Therefore, the time for any case or controversy based on the delegation provision has passed, and this claim is moot. *Ritz v. Mike Rory Corp.*, 959 F. Supp. 2d 276, 279 (E.D.N.Y. 2013). Accordingly, Plaintiffs cannot succeed on this claim.

In any event, the delegation herein does not violate Article IV, § 30 of the New York Constitution, which permits the legislature to delegate to the chief administrator "any power possessed by the legislature to regulate practice and procedure in the courts." N.Y. Const. art VI, § 30. This power must be exercised with "the advice and consent of the administrative board of the courts." *Id.*

CEEFPA Part A allowed the chief administrative judge to extend past February 26, 2021 the overall stay of eviction proceedings "to such later date that the chief administrative judge shall determine is necessary to ensure that courts are prepared to conduct proceedings in compliance with this act and to give mortgagors an opportunity to submit the hardship declaration pursuant to this act." CEEFPA Part A § 3. Plaintiffs argue that the delegation is defective because it does not contain

an express advice and consent requirement. Pls.' Mem. at 24. But nothing prohibits the chief administrative judge from exercising this authority with "the advice and consent of the administrative board of the courts" as set forth in Article VI, § 30. And, the statute must be construed as to allow that the chief administrative judge will act in accordance with the law and will seek such advice and consent when required. *United States v. Konstantakakos*, 121 Fed. App'x 902, 905 (2d Cir. 2005).

For all of the foregoing reasons, Plaintiffs cannot succeed on their claim that CEEFPA Part A contains an unconstitutional judicial delegation.

## POINT II: PLAINTIFFS FAIL TO SHOW IRREPARABLE HARM OR THAT THE EQUITIES AND PUBLIC INTEREST WEIGH IN THEIR FAVOR, BOTH OF WHICH ARE NECESSARY FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Although Plaintiffs' failure to name a proper party and their failure to demonstrate likelihood of success on the merits of their constitutional claims are each independent bases warranting denial of their motion, the Court can deny the motion for either of two additional reasons: Plaintiffs fail to demonstrate an injury that is irreparable and they further fail to demonstrate that the equities and public interest weigh in their favor.

## A.     Plaintiffs Fail to Show Irreparable Harm

Plaintiffs primarily allege harm based on constitutional injuries, *see* Pls.' Mem. at 16, but they fail to make the required convincing showing. While an actual constitutional injury may cause irreparable harm, "the mere allegation of a constitutional infringement itself does not constitute irreparable harm." *Lore v. City of Syracuse*, No. 00-cv-1833, 2001 WL 263051, at *6 (N.D.N.Y. Mar. 9, 2001); *see also Donohue v. Mangano*, 886 F. Supp. 2d 126, 150 (E.D.N.Y. 2012). Rather, only where a constitutional injury is "convincingly shown" may a finding of irreparable harm be warranted. *Id.* And, where a First Amendment violation is alleged, "[f]or equitable relief, a court must find direct and purposeful government interference with speech, not solely incidental interference." *New All. Party v. Dinkins*, 743 F. Supp. 1055, 1063 (S.D.N.Y. 1990) (citing *Hohe v. Casey*, 868 F.2d 69, 73 (3d Cir. 1989)).

Plaintiffs do not demonstrate a violation of the First Amendment, the Fourteenth Amendment, or any provision of the New York Constitution. *See supra* Point I(B). Because Plaintiffs merely allege a constitutional injury, they fall far short of the required convincing showing.

The additional harms alleged by Plaintiffs are either monetary or speculative. Neither is sufficient to show irreparable harm. *Rossito-Canty v. Cuomo*, 86 F. Supp. 3d 175, 199 (E.D.N.Y. 2015) ("Irreparable harm may not be premised only on a possibility." (internal quotation marks omitted)). Rather, irreparable harm is a harm that is "imminent." *Id.*

The monetary harms alleged do not establish irreparable harm. *See JSG Trading Corp. v. Tray–Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir.1990). In addition, the pre-CEEFPA remedies will be available to Plaintiffs as of May 2, 2021, and Plaintiffs have other avenues to immediately pursue rent arrears. Therefore, the harms alleged by Plaintiffs are temporary and not irreparable.

Plaintiffs fail to demonstrate irreparable harm, as required for the drastic remedies they seek.

**B.     The Equities and Public Interest Strongly Favor Continued Enforcement of CEEFPA Part A for the Protection of Public Health**

Even if Plaintiffs had demonstrated some likelihood of success on their claims and an irreparable injury, which they have not done, they are nevertheless not entitled to injunctive relief because the equities and public interest overwhelmingly favor maintaining the status quo and continuing to enforce CEEFPA Part A for the protection and health of the general public.

The foundational purpose of a "preliminary injunction is to maintain the status quo pending a full hearing on the merits." *Triebwasser & Katz v. Am. Tel. & Tel. Co.*, 535 F.2d 1356, 1360 (2d Cir. 1976). But plaintiffs' requested injunction would upend the status quo that the Legislature has instituted during a historic public-health emergency—to the severe detriment of not just the tenants who will be forced from their homes but also the general public. Preventing a homelessness crisis that would exacerbate the public health crisis is unquestionably in the public interest.

29

This public interest is not an abstract one. Moratoriums on evictions have proven to be effective in containing COVID-19. As of Fall 2020, moratoriums on evictions prevented 135,000 COVID-19 cases and more than 10,000 deaths in New York. *See supra,* Leifheit, KM. Premature lifting of moratoriums has been shown to led to increases in cases and deaths. *See supra,* Jowers.

Courts examining motions for injunctive relief in the COVID-19 era have agreed that the equities and public interest favor continued enforcement of containment measures. "Weakening the State's response to a public-health crisis by enjoining it from enforcing measures employed specifically to stop the spread of COVID-19 is not in the public interest." *Luke's Catering Serv., LLC v. Cuomo*, No. 20-cv-1086S, 2020 WL 5425008, at *13 (W.D.N.Y. Sept. 10, 2020); *see also Page v. Cuomo*, 478 F. Supp. 3d 355, 369 (N.D.N.Y. 2020) (in challenge to the self-quarantine requirement, "the injunctive relief sought by plaintiff would also upset a major component of the State's current public health response to COVID-19"); *Ass'n of Jewish Camp Operators v. Cuomo*, 470 F. Supp. 3d 197, 228 (N.D.N.Y. 2020) (in challenge to closing of overnight camps, "[a]lthough Plaintiffs have demonstrated that they will likely suffer irreparable harm in the absence of injunctive relief, a careful balancing of the equities nevertheless favors Defendant").

The COVID-19 crisis is not over. The equities and public interest weigh overwhelmingly in favor of continued enforcement of CEEFPA Part A until May 1, 2021.

## CONCLUSION

For all of the forgoing reasons, Defendant respectfully requests that the Court deny Plaintiffs' motions for a temporary restraining order and for a preliminary injunction.

Dated:  Mineola, New York  LETITIA JAMES
        March 8, 2021  Attorney General
        State of New York
        *Attorney for Defendant*
        By:  s/ *Helena Lynch*
        Helena Lynch
        Assistant Attorney General, *of Counsel*
        200 Old Country Road, Suite 240
        Mineola, New York 11501
        (516) 248-3312 | Helena.lynch@ag.ny.gov