UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

PANTELIS CHRYSAFIS, BETTY COHEN,    :
BRANDIE LACASSE, MUDAN SHI, and    :
FENG ZHOU,    :
    :
    *Plaintiffs*,    :
    :    No. 21-cv-00998-SJF-ARL
    -against-    :
    :
LETITIA JAMES, in her official capacity as    :
Attorney General of the State of New York,    :
    :
    *Defendant*.    :

-----------------------------------------------------------x

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

GIBSON, DUNN & CRUTCHER LLP

200 Park Avenue
New York, NY  10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

*Attorneys for Plaintiffs*
March 12, 2021

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ........................................................................................................................ 2

    I.    Plaintiffs Will Be Irreparably Harmed Absent Injunctive Relief. ................................. 2

    II.   Plaintiffs Have Shown A Likelihood Of Success On The Merits................................. 2

      A.  CEEFPA Violates Plaintiffs' First Amendment Rights By Compelling Speech............ 2

      B.  CEEFPA Violates Plaintiffs' Due Process Rights. ........................................................ 5

      C.  CEEFPA Violates Plaintiffs' Right to Petition. ............................................................ 7

      D.  Defendant Attorney General James Is A Proper Defendant In This Action. .................. 9

    III.  The Balance Of Hardships And Public Interest Strongly Favor Injunctive
        Relief. .................................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**

*Agudath Israel of Am. v. Cuomo*,
  983 F.3d 620 (2d Cir. 2020)................................................................2, 4, 10

*All. for Open Soc'y Int'l, Inc. v. U.S. Agency for Int'l Dev.*,
  651 F.3d 218 (2d Cir. 2011), *aff'd sub nom. Agency for Int'l Dev. v. All. for
  Open Soc'y Int'l, Inc.*, 570 U.S. 205 (2013) ........................................................3

*Christopher v. Harbury*,
  536 U.S. 403 (2002)................................................................................8

*Cunney v. Bd. of Trustees of Vill. of Grand View*,
  660 F.3d 612 (2d Cir. 2011).......................................................................6

*In re Dairy Mart Convenience Stores, Inc.*,
  411 F.3d 367 (2d Cir. 2005)....................................................................9, 10

*Elmsford Apartment Assocs., LLC v. Cuomo*,
  469 F. Supp. 3d 148 (S.D.N.Y. 2020)...............................................................8

*F.C.C. v. Fox Television Stations, Inc.*,
  567 U.S. 239 (2012)................................................................................6

*Fed. Deposit Ins. Corp. v. Mallen*,
  486 U.S. 230 (1988)................................................................................7

*Fuentes v. Shevin*,
  407 U.S. 67 (1972).................................................................................6

*Gay Men's Health Crisis v. Sullivan*,
  792 F. Supp. 278 (S.D.N.Y. 1992)..................................................................6

*Hagans v. Lavine*,
  415 U.S. 528 (1974)................................................................................8

*Hopkins Hawley LLC v. Cuomo*,
  2021 WL 465437 (S.D.N.Y. Feb. 9, 2021)...........................................................3

*Horne v. Dep't of Agriculture*,
  576 U.S. 350 (2015)................................................................................7

*Jacobson v. Commonwealth of Massachusetts*,
  197 U.S. 11 (1905).................................................................................1

*Kraebel v. N.Y.C. Dep't of Hous. Pres. & Dev.*,
  959 F.2d 395 (2d Cir. 1992).......................................................................7

*Lebanon Valley Auto Racing Corp. v. Cuomo*,
478 F. Supp. 3d 389 (N.D.N.Y. 2020)...........................................................................3

*Mathews v. Eldridge*,
424 U.S. 319 (1976)........................................................................................................6

*Milavetz, Gallop & Milavetz, P.A. v. U.S.*,
559 U.S. 229 (2010)........................................................................................................5

*Nassau & Suffolk Cty. Taxi Owners Ass'n, Inc. v. State*,
336 F. Supp. 3d 50 (E.D.N.Y. 2018) .............................................................................9

*Prairie Band Potawatomi Nation v. Wagnon*,
476 F.3d 818 (10th Cir. 2007) ......................................................................................10

*PSEG Long Island LLC v. Town of North Hempstead*,
158 F. Supp. 3d 149 (E.D.N.Y. 2016) .......................................................................3, 4

*Pugh v. Goord*,
571 F. Supp. 2d 477 (S.D.N.Y. 2008)...........................................................................9

*Qing You Li v. City of New York*,
2018 WL 6251339 (E.D.N.Y. Nov. 28, 2018)...............................................................9

*Roman Catholic Diocese of Brooklyn v. Cuomo*,
141 S. Ct. 63 (2020) (per curiam) .......................................................................1, 2, 10

*Sousa v. Marquez*,
702 F.3d 124 (2d Cir. 2012)...........................................................................................8

*Spinelli v. City of New York*,
579 F.3d 160 (2d Cir. 2009)...........................................................................................7

*Terkel v. Centers for Disease Control and Prevention*,
2021 WL 742877 (E.D. Tex. Feb. 25, 2021) .................................................................1

*Ex Parte Young*,
209 U.S. 123 (1908).......................................................................................................9

*Zauderer v. Off. of Disciplinary Counsel of Sup. Ct. of Ohio*,
471 U.S. 626 (1985).....................................................................................................4, 5

**Statutes**

COVID-19 Emergency Eviction and Foreclosure Prevention Act of 2020...............................6, 7

N.Y. Real Property Actions and Proceedings Law § 732..............................................................5

**Constitutional Provisions**

U.S. Const. amend I .................................................................................................... *passim*

**PRELIMINARY STATEMENT**

The AG's opposition essentially reduces to this: This Court should simply rubberstamp CEEFPA because, "in the context of a public health emergency, unquestionably the context here, different standards apply." Opp. 21. But the U.S. Supreme Court recently rejected that very proposition—that different constitutional standards should apply during the ongoing pandemic— instructing that, "even in a pandemic, the Constitution cannot be put away and forgotten." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 68 (2020) (per curiam) (applying First Amendment strict scrutiny to and then enjoining Governor Cuomo's fixed capacity restrictions on houses of worship). And the AG is surely aware of that landmark decision, because her office represented Governor Cuomo in losing the case. Yet instead of acknowledging this salient and timely precedent—which is nowhere to be found in the AG's 30-page brief—the AG repeatedly invokes *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11 (1905), decided over a century ago. But as Justice Gorsuch explained in the *Roman Catholic Diocese* case: "Nothing in *Jacobson* purported to address, let alone approve, such serious and long-lasting intrusions into settled constitutional rights." 141 S. Ct. at 71 (Gorsuch, J., concurring); *see also, e.g.*, *Terkel v. Centers for Disease Control and Prevention*, 2021 WL 742877, at *10 (E.D. Tex. Feb. 25, 2021) (striking down the CDC's limited eviction moratorium because, "[a]lthough the COVID-19 pandemic persists, so does the Constitution"). And the AG largely relies on pre-*Diocese* district court cases that simply—and it turns out, erroneously—deferred to similar government arguments advocating for "different" legal standards to be applied in emergency challenges to COVID restrictions such as this one. But the Supreme Court's decision in the *Roman Catholic Diocese* case changed the legal landscape and wholly undermines the AG's argument here.

The AG is either in denial or showing a surprising lack of candor with this Court. Constitutional injury is *per se* irreparable harm, strict scrutiny applies to Plaintiffs' free speech and

petition claims, Plaintiffs' claims are likely to succeed, and there is no public interest in a law that violates citizens' constitutional rights, whatever the State's motivations or goals may be. This Court should therefore enjoin any further enforcement of Part A of CEEFPA.

## ARGUMENT

### I.   Plaintiffs Will Be Irreparably Harmed Absent Injunctive Relief.

Plaintiffs will be irreparably harmed if Part A of CEEFPA is not enjoined because "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," *Roman Catholic Diocese*, 141 S. Ct. 63, 67 (2020), with "a presumption of irreparable injury . . . flow[ing] from a violation of constitutional rights," *Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 636 (2d Cir. 2020). The AG fails to acknowledge these binding authorities cited in Plaintiffs' Opening Brief ("Op. Br.") 16–17. In any event, Plaintiffs meet even the AG's "actual constitutional injury" standard, Opp. 28, as they have demonstrated actual constitutional injury on the face of the law and by sworn declaration. The AG does not even address the evidence of the ways CEEFPA will irreparably harm Plaintiffs, brushing the harms off as "monetary" and "speculative." Opp. 29. These inaccurate assurances are cold comfort to Plaintiff LaCasse, who is immunocompromised and working out of the house after losing rent income at great risk to her health, Dkt. 7 ¶ 10; Plaintiff Cohen, who is at immediate risk of losing her property, Dkt. 12 ¶ 8; Plaintiffs Zhou and Shi, who cannot pay their own rent yet cannot reclaim their property to live in, Dkt. 8 ¶¶ 9–10; and Plaintiff Chrysafis, who secured a warrant of eviction against his tenant prior to COVID and is suffering severe financial and emotional harm, Dkt. 9 ¶ 11.

### II.   Plaintiffs Have Shown A Likelihood Of Success On The Merits.

#### A.   CEEFPA Violates Plaintiffs' First Amendment Rights By Compelling Speech.

CEEFPA unconstitutionally compels Plaintiffs to distribute Hardship Declaration forms drafted by the government to tenants and to include a government-curated list of legal service

providers.   These requirements force landlords to speak in support of a government eviction

moratorium program with which they disagree and to recommend specific legal organizations

whose aim and advice are squarely adverse to their interests.  *See, e.g.*, *All. for Open Soc'y Int'l,*

*Inc. v. U.S. Agency for Int'l Dev.*, 651 F.3d 218, 234 (2d Cir. 2011) (challenged policy compelled

plaintiffs to "espouse the government's position"), *aff'd sub nom. Agency for Int'l Dev. v. All. for*

*Open Soc'y Int'l, Inc.*, 570 U.S. 205 (2013); *PSEG Long Island LLC v. Town of North Hempstead*,

158 F. Supp. 3d 149, 166 (E.D.N.Y. 2016).  They are evaluated, and fail, under strict scrutiny.[1]

The AG's primary response is to point to the century-old *Jacobson* decision to argue that

the mere fact that the law was enacted in connection with a pandemic frees it from meaningful

constitutional review.  She also argues that CEEFPA is a mere "notice" or "routine disclosure

requirement" that doesn't raise constitutional issues.  Opp. 21–23.  She is wrong on all counts.

First, *Roman Catholic Diocese* and *Agudath Israel* impose strict scrutiny when First

Amendment rights are at play, even in a pandemic.  Instead of acknowledging these binding

decisions, the AG cites a *pre-Diocese* case from last summer for the proposition that "Courts have

recently affirmed that *Jacobson* is 'the controlling Supreme Court precedent that squarely governs

judicial review of rights-challenges to emergency public health measures,'" Opp. 21–22 (quoting

*Lebanon Valley Auto Racing Corp. v. Cuomo*, 478 F. Supp. 3d 389, 396 (N.D.N.Y. 2020)).  And

when the AG purports to rely on a post-*Diocese* case, *Hopkins Hawley LLC v. Cuomo*—which did

not involve rights that "come within the ambit of First Amendment protection"—she does so

without informing the Court that *Hawley* itself acknowledges that the Second Circuit on remand

from *Diocese* indicated that *Jacobson* is "no longer the correct legal framework for examining

---

[1]   The AG does not substantively contest that the Hardship Declaration is interwoven inextricably throughout Part
A of CEEFPA. The entire Part A is thus unconstitutional.  *See* Op. Br. 17 n.3.  The remaining Parts do not
contain a Hardship Declaration and for that reason are not impacted by this suit, *contra* Opp. 21 n.9.

First Amendment free exercise challenges against COVID-19 restrictions." 2021 WL 465437, at *4, *8 (S.D.N.Y. Feb. 9, 2021).  There is no valid basis on which to treat First Amendment speech challenges differently.  Indeed, Judge Park of the Second Circuit could not have been clearer in instructing that any "reliance on *Jacobson*" as support for a deferential review standard "in the face of the COVID-19 pandemic" "was misplaced." *Agudath Israel*, 983 F.3d at 635.

Strict scrutiny applies.  The Hardship Declaration requirement fails that standard because it is not narrowly tailored to the government's interests.  There are multiple less restrictive, non-speech-compelling alternatives: The State could provide the Hardship Declaration to tenants directly; conduct a public awareness campaign; or direct tenants to the Hardship Declaration already posted on the government's website.  There is no reason that property owners should bear the burdens of securing the forms, translating, printing, and mailing them as opposed to the State.  And the AG offers none.  If timing was so "crucial," the State should have relied on its own resources, rather than private parties.  Indeed, the Office of Court Administration already has mailed thousands of hardship declarations to tenants.  Op. Br. 20.  The State, however, "chose to forgo [] alternatives in favor of a law that not only compels the Plaintiffs to carry [its] specific message as if it were their own, but also to bear the associated costs of doing so." *PSEG Long Island*, 158 F. Supp. 3d at 168.

Second, the AG appears to argue that rational basis applies under *Zauderer v. Off. of Disciplinary Counsel of Sup. Ct. of Ohio*, 471 U.S. 626 (1985), because the "blank" Hardship Declaration is a "routine disclosure" form with "purely factual and uncontroversial information." Opp. 22.  This is false.  The Hardship Declaration includes a government created list of possible "financial obligations" that tenants are invited to select to block eviction.  *See* Dkt. 10-5 (Hardship Declaration).  It has no "blank" field for the tenant to describe their particular circumstances and

4

requires no supporting proof whatsoever.  There is nothing "purely factual and uncontroversial," Opp. 22, about tenants' checking off a box from a set of state-written, yet subjective and personal "financial obligations" with which landlords will likely disagree or of providing a list of recommended legal services organizations. *See* Dkt. 10-5.[2]

Finally, the AG urges the Court to uphold CEEFPA because there are "other long-standing notice [] requirements applicable to landlords in housing court proceedings."  Opp. 23.  But in compelling speech adverse to landlords' interests, CEEFPA goes far beyond every law that the AG cites.  For example, RPAPL § 732 merely informs tenants of their legal rights and responsibilities, and the other notices that the AG cites, including for sprinklers and lead paint, provide factual disclosures meant to protect tenants' health and safety.  Opp. 23.  CEEFPA goes multiple steps further in providing information diametrically opposed to Plaintiffs' interests by telling tenants that they need not pay their rent and by providing them with information that they can use to further delay eviction proceedings.

###    B.    CEEFPA Violates Plaintiffs' Due Process Rights.

Plaintiffs are likely to succeed on their substantive due process claim because CEEFPA's hardship categories—which tenants need not even choose from—are hopelessly vague and provide no standards for enforcement and on their procedural due process claim because CEEFPA prevents landlords from contesting hardship declarations until at least May 1, 2021.

In response, the AG first argues that the terms used in CEEFPA's hardship categories, as well as the term "financial hardship" itself, "are common in life and the law" and can be readily

---

2    The compelled speech here is not akin to the disclosure requirements in *Zauderer* and *Milavetz*. Opp. 22.  In both cases, attorneys were required to disclose specific information in advertisements to combat the pervasive problem of inherently misleading commercial advertisements. *Zauderer*, 471 U.S. at 626; *Milavetz, Gallop & Milavetz, P.A. v. U.S.*, 559 U.S. 229, 249–50 (2010).  Here, there is no allegation that landlords are engaged in deceptive advertising practices nor disseminating advertisements with misleading or omitted information to tenants.

understood.  Opp. 15.  But take, for example, a claim of hardship based on an "increase in necessary out-of-pocket expenses related to performing essential work or related to health impacts during the COVID-19 pandemic."  Dkt. 10-1, CEEFPA Part A § 1(4).  What is a "necessary" expense?  How must it "relate" to essential work or health impacts?  CEEFPA provides no answers to these questions, and all of CEEFPA's other hardship categories contain numerous similarly undefined terms.  *See* Op. Br. 5, 12.  Particularly egregious is the "other circumstances" category.  CEEFPA Part A § 1(4).  While the AG argues that the State need not provide an "exhaustive list" of "other circumstances," Opp. 16, that is not the point.  The "other circumstances" category fails to provide *any example* of what might qualify, which could at least "add definiteness" to an otherwise formless standard.  *Gay Men's Health Crisis v. Sullivan*, 792 F. Supp. 278, 294 (S.D.N.Y. 1992).  And because tenants need not specify which financial hardship category applies to them, property owners are left to "speculate as to" vague hardship category tenants are claiming.  *Cunney v. Bd. of Trustees of Vill. of Grand View*, 660 F.3d 612, 620 (2d Cir. 2011) (citation omitted); *see also Fuentes v. Shevin*, 407 U.S. 67, 80 (1972).  Because the law provides landlords with no notice about what circumstances prohibit them from evicting tenants, it essentially delegates the authority to determine the scope of CEEFPA to tenants themselves.  That flies in the face of due process principles, which require "that regulated parties . . . know what is required of them so they may act accordingly."  *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012).  And the AG does not even address the as-applied impacts on Plaintiffs.

There is also no doubt that CEEFPA deprives Plaintiffs of their due process right to challenge tenants' Hardship Declarations "at a meaningful time and in a meaningful manner," *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976), since they cannot challenge Hardship Declarations *at all* while CEEFPA's eviction prohibition is in effect.  The AG's reply is that CEEFPA does not

6

infringe Plaintiffs' due process rights because it only delays their ability to exercise their eviction rights until after May 1.  Opp. 17–19.  But "[e]ven a brief and provisional deprivation of property pending judgment is of constitutional importance." *Spinelli v. City of New York*, 579 F.3d 160, 174 (2d Cir. 2009) (citation omitted) (58-day delay in restoring gun license and returning firearms violated due process).  And even assuming CEEFPA's eviction moratorium will not be further extended, the prior eviction moratoria have already impeded property owners from evicting nonpaying tenants for roughly a year.  Op. Br. 4–6.  CEEFPA will be the last straw for landlords who are facing financial ruin and may lose their properties.  *See, e.g.*, Dkt. 8 ¶ 10; Dkt. 12 ¶ 8; Dkt. 9 ¶ 11; Supp. Shapiro Decl. (Mar. 12, 2021, submitted herewith), Exs. 12, 13, 14 (articles profiling small landlords who are "in danger of losing everything" and are even facing their own eviction).  As the AG acknowledges, "a delay [in access to the courts] cannot be evaluated in a vacuum." *See* Opp. 18 (citing *Fed. Deposit Ins. Corp. v. Mallen*, 486 U.S. 230, 242 (1988)).

As a fallback, the AG contends that CEEFPA does not deprive Plaintiffs of any property interest because they may still seek back rent.  Opp. 17.  But—in addition to disregarding the practical need to remove a tenant unlikely to ever pay the full amount owed in back rent—that argument ignores that CEEFPA's eviction bar wholly deprives property owners of their right to "possess, use, and dispose of" their properties as they see fit.  *Horne v. Dep't of Agriculture*, 576 U.S. 350, 361–62 (2015).  Finally, the rebuttable (and contrary to the AG's assertion, standardless) presumption in favor of assertions of financial hardship blocks evictions and extends for an indefinite period.  CEEFPA Part A § 11.  This is in and of itself "so unreasonable as to deny due process." *Kraebel v. N.Y.C. Dep't of Hous. Pres. & Dev.*, 959 F.2d 395, 405 (2d Cir. 1992).

### C.      CEEFPA Violates Plaintiffs' Right to Petition.

CEEFPA forecloses Plaintiffs' access to the courts in violation of their First Amendment rights.  Here too, the AG's rejection of strict scrutiny—relying on *Jacobson* while ignoring *Roman*

7

*Catholic Diocese*—is inexplicable.  CEEFPA fails strict scrutiny because it hampers property owners' rights to pursue summary eviction proceedings without any meaningful mechanism (tailoring) to limit relief only to hardships due to the pandemic (the asserted government interest).

The AG frames CEEFPA as providing two exceptions to the "bar" on summary proceedings in claiming that Plaintiffs cannot bring a facial challenge to the law.  Opp.  19.  But the mere submission of a declaration, which is neither verified nor requires supporting documentation, categorically bars landlords from accessing the courts.  The injunctive relief landlords seek via eviction proceedings is thus "completely foreclosed" in violation of their federal and state petition clause rights.  *Cf. Sousa v. Marquez*, 702 F.3d 124, 125 (2d Cir. 2012).

Equally meritless is the notion that a Petition clause claim is not cognizable unless it permanently forecloses use of the courts for a category of plaintiffs.  Opp. 19–20.  The AG fails to address *Christopher v. Harbury*, 536 U.S. 403, 413 (2002), which instructs that the opportunity to access the courts need not have "been lost for all time" to violate the right to petition.  The AG's cited cases are in a different setting (*e.g.*, "prisoner access") and are distinguishable.  And Plaintiffs cannot be made whole by future nonpayment proceedings because they seek to regain *possession* of their properties where their tenants have refused to leave the properties upon the expiration of the lease for reasons unrelated to the pandemic.  Dkt. 7 ¶¶ 4–7; Dkt. 8 ¶¶ 1, 4, 10; Dkt. 9 ¶ 17; Dkt. 12 ¶¶ 2, 5, 8.[3]  And, CEEFPA's stays are anything but "modest."  *Contra* Opp. 20.  They last until "at least May 1, 2021," may be extended further, and the rebuttable presumption has no expiration.[4]

---

[3]  *Elmsford Apartment Assocs., LLC v. Cuomo*, 469 F. Supp. 3d 148 (S.D.N.Y. 2020) is inapposite.  There, the court denied certain claims attacking a "temporary" executive order staying "a subset of evictions."  *Id*. at 175.  Here, all evictions are stayed by submission of a Hardship Declaration by statute.  Moreover, Plaintiffs here have lost access not just to their temporary, "preferred remedy" but rather the only remedy that would make them whole, which is immediate equitable relief.  CEEFPA broadly eliminates the opportunity to pursue such relief.

[4]  This Court has subject-matter jurisdiction over Plaintiffs' federal constitutional claims and pendent jurisdiction over their corresponding state law claims.  *See Hagans v. Lavine*, 415 U.S. 528 (1974).  The cases the AG cites

*(Cont'd on next page)*

**D.**     **Defendant Attorney General James Is A Proper Defendant In This Action.**

The Attorney General is a proper defendant in this action under the *Ex Parte Young* exception to Eleventh Amendment sovereign immunity, and the AG provides no basis for concluding otherwise. By arguing the reverse, the AG would essentially have this Court hold that no government official can be sued to enjoin this unconstitutional law. That is wrong in and of itself, but what's worse is that the AG has made clear publicly that she is seeking compliance with CEEFPA and ready to enforce it. The AG should not be heard trying to dodge her role.

Under the well-established exception to *Ex Parte Young*, courts in the Second Circuit "require only that a defendant have a 'connection' with the act, and not more." *Pugh v. Goord*, 571 F. Supp. 2d 477, 517 (S.D.N.Y. 2008) (citing *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 372–73 (2d Cir. 2005)). The AG does not actually dispute that she has "some connection with the enforcement" of CEEFPA, which "is the important and material fact" in applying the *Ex Parte Young* doctrine. *Nassau & Suffolk Cty. Taxi Owners Ass'n, Inc. v. State*, 336 F. Supp. 3d 50, 68 (E.D.N.Y. 2018) (quoting 209 U.S. 123, 157 (1908)). Nor could she. One day after CEEFPA was signed, the AG's housing unit issued detailed guidance to local sheriffs to ensure compliance with the law. *See* Supp. Shapiro Decl., Ex. 7. One week later, the AG publicly affirmed that her "office remains willing and able to assist local sheriffs and law enforcement departments" with respect to implementing CEEFPA. *See id.*, Ex. 8 at 2. AG James has also

---

to argue that this Court "do[es] not have the power to address" claims under the New York State Constitution are inapplicable, Opp. 20–21, as plaintiffs do not seek to "enjoin the actions of state officials for purported violations of state law," but are instead challenging the constitutionality of CEEFPA itself. New York federal courts routinely review federal and state First Amendment claims together, as the AG implicitly recognizes with citation to *Qing You Li v. City of New York*, 2018 WL 6251339 (E.D.N.Y. Nov. 28, 2018) (Opp. 21). The AG also argues that Plaintiffs' challenge to CEEFPA's judicial delegation provision is moot because the deadline for the chief administrative judge to extend the statute's automatic eviction stay has passed. Opp. 27. For the purposes of this motion for preliminary relief, Plaintiffs do not contest the AG's position that the statutory deadline has passed, but reserve the right to challenge the judicial delegation provision should the AG attempt to disavow this position or the chief administrative judge seek to extend CEEFPA's automatic eviction stay.

9

repeatedly demonstrated her authority and intention to enforce the various COVID-19 eviction moratoria, including by investigating landlords' alleged noncompliance with the relevant Executive Orders (and issuing cease-and-desist letters to them) and investigating a law firm for allegedly taking steps to evict tenants for violations of the public health law, executive law, and general business law.  *See id.*, Exs. 9, 10, 11 ("If you or someone you know is being unlawfully subjected to eviction, my office wants to know[.]").  Contrary to the AG's suggestion, "[s]o long as there is such a connection, it is not necessary that the officer's enforcement duties be noted in the act."  *Dairy Mart*, 411 F.3d at 372–73; *accord, e.g.*, *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 828 (10th Cir. 2007).  And the AG tellingly fails to identify any other official she claims should be named instead of her.

**III.     The Balance Of Hardships And Public Interest Strongly Favor Injunctive Relief.**

The AG makes the categorical assertion that "[c]ourts examining motions for injunctive relief during the COVID-19 era have agreed that the equities and public interest favor continued enforcement of containment measures."  Opp. 30.  As throughout its brief, the AG ignores the Supreme Court's recent decision in *Roman Catholic Diocese* rejecting exactly this premise and granting injunctive relief because "even in a pandemic, the Constitution cannot be put away and forgotten."  141 S. Ct. at 68.  And the AG once again inexplicably cites only pre-*Diocese* cases. Opp. 30.  As the Second Circuit subsequently explained in granting a preliminary injunction barring enforcement of unconstitutional restrictions that the State claimed were necessary to combat the pandemic, "[n]o public interest is served by maintaining an unconstitutional policy when constitutional alternatives are available to achieve the same goal," *Agudath Israel*, 983 F.3d at 637.  Here, as there, the AG does not demonstrate "that public health would be imperiled if less restrictive measures were imposed," in light of which Part A of CEEFPA's should be preliminarily enjoined.  *Roman Catholic Diocese*, 141 S. Ct. at 68.

Dated:   New York, New York                    GIBSON, DUNN & CRUTCHER LLP
         March 12, 2021


                                                By:  */s/ Randy M. Mastro*  

                                                     GIBSON, DUNN & CRUTCHER LLP
                                                     Randy M. Mastro
                                                     Akiva Shapiro


                                                     200 Park Avenue
                                                     New York, NY 10166
                                                     Tel.:  (212) 351-4000
                                                     rmastro@gibsondunn.com
                                                     ashapiro@gibsondunn.com

                                                     *Attorneys for Plaintiffs*

11