UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
PANTELIS CHRYSAFIS, BETTY COHEN, :
BRANDIE LACASSE, MUDAN SHI, and :
FENG ZHOU, :
:
    *Plaintiffs*, :
: No. 21-cv-00998 (SJF/ARL)
    -against- :
:
LETITIA JAMES, in her official capacity as :
Attorney General of the State of New York, :
:
    *Defendant*. :
-------------------------------------------------------x

**PLAINTIFFS' MEMORANDUM OF LAW IN RESPONSE TO AMICI CURIAE BRIEF
ON BEHALF OF HOUSING COURT ANSWERS AND MAKE THE ROAD NEW YORK**

GIBSON, DUNN & CRUTCHER LLP

200 Park Avenue
New York, NY  10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

*Attorneys for Plaintiffs*

March 23, 2021

# CONTENTS

Page(s)

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ........................................................................................................................... 1

    I.    Plaintiffs Will Suffer Irreparable Harm Absent Injunctive Relief. ................................ 1

    II.    Plaintiffs Are Likely To Succeed On Their Claims ...................................................... 2

        A. CEEFPA Violates Plaintiffs' First Amendment Rights ................................................. 2

        B. CEEFPA Violates Plaintiffs' Substantive And Procedural Due Process Rights. ........... 4

        C. CEEFPA Violates Plaintiffs' Right To Petition. ............................................................ 7

    III.    The Balance Of Hardships And Public Interest Strongly Favor Injunctive Relief. ................................................................................................................................... 8

# TABLE OF AUTHORITIES

**Cases**                                                                           **Page(s)**

*ACA Int'l v. Healey*,
    457 F. Supp. 3d 17 (D. Mass. 2020) ................................................................. 7, 8

*Agudath Israel of Am. v. Cuomo*,
    983 F.3d 620 (2d Cir. 2020) ............................................................................. 2, 8

*Baptise v. Kennealy*,
    2020 WL 5751572 (D. Mass. Sept. 25, 2020) ..................................................... 3

*Brown v. Azar*,
    2020 WL 6364310 (N.D. Ga. Oct. 29, 2020) ..................................................... 8

*Chambless Enters., LLC v. Redfield*,
    2020 WL 7588849 (W.D. La. Dec. 22, 2020) .................................................... 8

*Christopher v. Harbury*,
    536 U.S. 403 (2002) ........................................................................................... 7

*City of New York v. Beretta USA Corp.*,
    524 F.3d 384 (2d Cir. 2008) ............................................................................... 7

*Cunney v. Bd. of Trustees of Vill. of Grand View*,
    660 F.3d 612 (2d Cir. 2011) ............................................................................... 5

*Elmsford Apartment Assocs., LLC v. Cuomo*,
    469 F. Supp. 3d 148 (S.D.N.Y. 2020) ................................................................ 6

*FCC v. Fox Television Stations, Inc.*,
    567 U.S. 239 (2012) ....................................................................................... 5, 6

*Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*,
    515 U.S. 557 (1995) ........................................................................................... 3

*Nat'l Ins. of Family and Life Advocates v. Becerra*,
    138 S. Ct. 2361 (2018) ................................................................................... 3, 4

*Pennhurst State School & Hospital v. Halderman*,
    451 U.S. 1 (1981) ............................................................................................... 2

*PSEG Long Island LLC v. Town of N. Hempstead*,
    158 F. Supp. 3d 149 (E.D.N.Y. 2016) ................................................................ 4

*Roman Catholic Diocese of Brooklyn N.Y. v. Cuomo*,
    141 S. Ct. 63 (2020) ........................................................................................... 2

*Rumsfeld v. Forum for Acad. and Inst. Rights, Inc.*,
 547 U.S. 47 (2008) .............................................................................................................. 2, 3

*Skyworks Ltd. v. Centers for Disease Control and Prevention*,
 2021 WL 911720 (N.D. Oh. Mar. 10, 2021) ............................................................................ 8

*Sorrell v. IMS Health Inc.*,
 564 U.S. 552 (2011) .................................................................................................................. 3

*Terkel v. Centers for Disease Control and Prevention*,
 2021 WL 742877 (E.D. Tex. Feb. 25, 2021) ............................................................................ 8

*Tiger Lily LLC v. U.S. Dep't of Hous. and Urban Dev.*,
 2020 WL 7658126 (W.D. Tenn. Nov. 6, 2020) ........................................................................ 2

*VIP of Berlin v. Town of Berlin*,
 593 F.3d 179 (2d Cir. 2010) ...................................................................................................... 6

**Statutes**

COVID-19 Emergency Eviction and Foreclosure Prevention Act of 2020 ........................... *passim*

**Constitutional Provisions**

U.S. Const. amend. I ............................................................................................................ *passim*

**PRELIMINARY STATEMENT**

Two non-profit organizations represented by Legal Services NYC and The Legal Aid Society submitted a 23-page amicus curiae brief that does not make any new arguments to assist the Court in its decision on Plaintiffs' pending preliminary injunction motion. It is not surprising that these groups and their counsel align so closely with the Defendant Attorney General ("AG"), as Legal Services NYC and The Legal Aid Society are on the government-prepared lists of legal organizations that landlords are compelled to send to tenants under the COVID-19 Emergency Eviction and Foreclosure Prevention Act of 2020 ("CEEFPA"). *See* Dkts. 21-1, 21-2. Plaintiffs accordingly refer the Court to their prior briefing and submit only this brief response to amici's brief. Plaintiffs further respectfully request that the Court grant immediate injunctive relief.

**ARGUMENT**

**I.  Plaintiffs Will Suffer Irreparable Harm Absent Injunctive Relief.**

Amici ignore the irreparable harms that small landlords like Plaintiffs have endured and will continue to suffer if CEEFPA Part A is not enjoined. The law infringes Plaintiffs' First Amendment freedoms and other constitutional rights by conscripting them into delivering a government-created message with which they disagree and by blocking their access to the courts, all through the use of vague and unchallengeable assertions of tenants' hardship. *See* Dkt. 6 at 16–17, Dkt. 19 at 2, 7–8. On top of that, Plaintiffs have suffered and will continue to suffer numerous other immediate, irreparable injuries—including the inability to move into or sell their own single-family homes or properties, potential loss of those homes, risks to their health, and strife within their families—if forced to keep tenants who refuse to vacate the premises or pay their rent. *See* Dkt. 6 at 17.

Amici's only response is to downplay these harms as "monetary damages, not irreparable harm." *See* Dkt. 18-1 at 23. But like the AG, amici are wrong on the law: the loss of constitutional

freedoms, such as Plaintiffs' "First Amendment freedoms" here, for "even minimal periods of time, *unquestionably* constitutes irreparable injury." *Roman Catholic Diocese of Brooklyn N.Y. v. Cuomo*, 141 S. Ct. 63, 67 (2020) (emphasis added and citation omitted); *accord Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 637 (2d Cir. 2020) ("[T]he deprivation of First Amendment rights is an irreparable harm."). Rather than engage with this recent and binding authority, amici point to a single out-of-circuit decision decided before the *Diocese* case, *Tiger Lily LLC v. U.S. Dep't of Hous. and Urban Dev.*, 2020 WL 7658126 (W.D. Tenn. Nov. 6, 2020), which, even if it were still good law, addressed a different eviction moratorium and claims not implicating "First Amendment freedoms." *Id.* at *8–9. Here, of course, such freedoms are front and center. And neither amici nor the AG disputes the evidence regarding the other irreparable harms Plaintiffs are suffering, which plainly satisfy the "irreparable harm" requirement for injunctive relief.

**II.     Plaintiffs Are Likely To Succeed On Their Claims**

    **A.     CEEFPA Violates Plaintiffs' First Amendment Rights**

Part A of CEEFPA violates the First Amendment by forcing landlords to speak in support of a government eviction moratorium with which they disagree and to recommend specific legal organizations—including amici's counsel here—whose objectives are adverse to their interests. *See* Dkt. 6 at 17–21; Dkt. 19 at 2–5. Like the AG, amici provide no basis for concluding otherwise.

Amici's response rests largely on *Rumsfeld v. Forum for Acad. and Institutional Rights, Inc.*, 547 U.S. 47, 48 (2008), a decision that has nothing to do with the issues at stake here. *See* Dkt. 18-1 at 11–12, 15. *Rumsfeld* assessed a law requiring universities to allow equal access to military recruiters in order to receive federal funds. *See* 547 U.S. at 51.[1] But unlike CEEFPA, the

---

[1] As a general matter, such conditions-on-funding laws are entitled to greater deference than other laws. *See generally Pennhurst State School & Hospital v. Halderman*, 451 U.S. 1, 16–17 (1981).

2

law in *Rumsfeld* only regulated *conduct*—"what law schools must *do*—afford equal access to military recruiters—not what they may or may not *say*." *Id.* at 60 (emphases in original).[2] In stressing this distinction, the Court made clear that "[t]he compelled-speech violation in each of [its] prior cases [] resulted from the fact that the complaining speaker's own message was affected by the speech it was forced to accommodate." *Id.* at 63. Here, by contrast, CEEFPA directly regulates *speech* by "forc[ing]" landlords to "accommodate" a government-scripted message with which they disagree. *Id.* Under *Rumsfeld*, CEEFPA thus impermissibly "alter[s] the message [landlords] wish[] to express," *id*. at 64—namely, opposition to the government's eviction moratorium.[3]

With their focus on *Rumsfeld*, amici ignore more recent and instructive Supreme Court precedent, particularly *Nat'l Inst. of Family and Life Advocates v. Becerra*, 138 S. Ct. 2361 (2018). In *Becerra*, the Court held that petitioners were likely to succeed on the merits of their First Amendment challenge to a law requiring clinics offering pregnancy-related services to disseminate a notice about "family planning" services, including abortions. *Id.* at 2377–78. *Beccera* held that

---

[2] Amici mischaracterize the statute in *Rumsfeld*, suggesting that a "notice" requirement analogous to CEEFPA's Hardship Declaration was at issue. Dkt. 18-1 at 12–13. To the contrary, the law at issue in *Rumsfeld* did not require distribution of any materials; rather, *only if* law schools offered such notices to other recruiters, they had to also include military recruitment events. *See* 547 U.S. at 61–62.

[3] Amici's remaining cases in support of its "incidental" burden claim support *Plaintiffs*. Dkt. 18-1 at 11–12. In *Sorrell v. IMS Health Inc.*, the Supreme Court held that a prescription confidentiality statute "impose[d] more than an incidental burden on protected expression" because it was "directed at certain content and [] aimed at particular speakers." 564 U.S. 552, 567 (2011). Here, the Hardship Declaration is directed at certain content—eviction proceedings—and aimed at particular speakers—landlords, who bear the responsibility of distribution. And, in *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, the Court found that the statute "essentially requir[ed] petitioners to alter [their] expressive content," 515 U.S. 557, 572 (1995), just as CEEFPA requires Plaintiffs to "alter" their stance on the eviction moratorium. Finally, amici's attempt at distinguishing *Baptise*, *see* Dkt. 18-1 at 15, is unpersuasive: like CEEFPA, the statute at issue in *Baptiste* unconstitutionally compelled speech by, among other things, "requiring [landlords] to refer tenants to organizations which advocate positions with which plaintiffs disagree, and which oppose the landlords' interests." *Baptise v. Kennealy*, 2020 WL 5751572, at *38 (D. Mass. Sept. 25, 2020).

3

this notice requirement was subject to strict scrutiny, and violated the First Amendment as compelled speech, because it required a private party to provide information about "state-sponsored" services relating to a "[]controversial" topic—the "very practice that petitioners are devoted to opposing." *Id.* at 2371–72. The same is true here: Plaintiffs are opposed to a controversial topic (the eviction moratorium), and they should not be coerced into delivering information about state-sponsored services relating to it. *Id.* And as in *Becerra*, the government has many less-restrictive alternatives—it could, for example, provide the Hardship Declaration to tenants directly, conduct a public awareness campaign, or direct tenants to the Hardship Declaration already posted on the government's own website.

Amici further seek to defend the law on the ground that low-income tenants face various challenges in accessing the courts. But amici fail to explain why small landlords—rather than the government itself—should bear the burden of delivering the government's message. Given the State's concerns, one answer would be for the State to mail declarations to tenants directly, but the State "chose to forego these alternatives in favor of a law that not only compels the Plaintiffs to carry the [State's] specific message as if it were their own, but also to bear the associated costs of doing so." *PSEG Long Island LLC v. Town of N. Hempstead,* 158 F. Supp. 3d 149, 162, 168 (E.D.N.Y. 2016) (ordinance requiring utility companies to post warning signs on utility poles constituted compelled speech because it required the utilities "to carry a particular government-sponsored message" and the government made "no effort to explain why any one of numerous less restrictive means of transmitting its public safety message was not selected").

### B. CEEFPA Violates Plaintiffs' Substantive And Procedural Due Process Rights.

CEEFPA's "financial hardship" categories are unconstitutionally vague, failing to inform Plaintiffs of the law's requirements or the tenant's asserted basis for claiming hardship, foreclosing

4

any viable way of contesting the hardship assertion, and inviting arbitrary enforcement. *See* Dkt. 6 at 21–22. In attempting to defend the declaration form, amici make three unpersuasive points.

*First*, amici argue that Part A of CEEFPA does not "require either the landlord or the court to interpret any of the terms used in the body of the declaration itself." Dkt. 18-1 at 16. Incorrect. The only way to proceed with eviction actions or warrants after May, 1, 2021 is for landlords to assess and challenge, and courts to interpret, a tenant's vague assertion of "financial hardship." And under CEEFPA, that assertion is entitled to an indefinite "presumption" of accuracy, with the burden on landlords to *disprove* the declaration of hardship in court. *See* CEEFPA Part A § 11. In any event, a law is unconstitutionally vague whenever a party lacks notice of the meaning of the law, with consequences adverse to her interests, as CEEFPA is to landlords. *See Cunney v. Bd. of Trustees of Vill. of Grand View*, 660 F.3d 612, 620 (2d Cir. 2011) ("[N]o one may be required at peril of life, liberty or property to speculate as to the meaning of . . . statutes." (internal quotation marks and citation omitted)). The broad, open-ended categories of "financial hardship" lack any concrete meaning, metrics, or examples that would allow Plaintiffs to understand them without unmoored speculation or courts or enforcement authorities to interpret or apply them in a consistent manner.

*Second*, amici claim that Part A of CEEFPA is subject to a relaxed standard of review for vagueness because it is merely "regulating economic activity." Dkt. 18-1 at 17. Amici ignore the numerous cases Plaintiffs have cited striking down similarly laws regulating economic activity on vagueness grounds. *See FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253–54 (2012) (FCC penalty for TV broadcast); *Cunney*, 660 F.3d at 620 (zoning law height requirement). Not only that, Part A of CEEFPA also regulates speech—and "[w]hen speech is involved, rigorous adherence to [vagueness] requirements is necessary to ensure that ambiguity does not chill

5

protected speech." *Fox Television Stations*, 567 U.S. at 253–54. The Supreme Court has not hesitated to block speech-implicating laws, like CEEFPA here, that because of their vagueness provide an opportunity for "arbitrary and discriminatory" application and enforcement. *Id*.

*Third*, amici point to various statutes that include the word "substantial" in arguing that the term is not unconstitutionally vague. *See* Dkt. 18-1 at 17. But CEEFPA's Hardship Declaration does not use that term. Rather, CEEFPA uses numerous other vague and undefined terms, including the catch-all "[o]ther circumstances" related to the pandemic that have "negatively affected" the tenant's ability to obtain "meaningful employment or earn income" or have "significantly reduced [] household income or significantly increased [] expenses." *See* Dkt. 1-2 at 2–3.[4] And it is not the use of any one term, but the combination of ambiguous terms—particularly where tenants are not required to identify which of five broad and unchallengeable categories they claim applies—that renders the Hardship Declaration unconstitutionally vague.

Amici's arguments in opposition to Plaintiffs' procedural due process claim again overlap almost entirely with the AG's. Amici largely rely on *Elmsford Apartment Assocs., LLC v. Cuomo*, 469 F. Supp. 3d 148 (S.D.N.Y. 2020), *see* Dkt. 18-1 at 18, but that case—involving a different eviction moratorium that did not involve a Hardship Form at all and raising largely different claims—is distinguishable on several grounds. Most importantly, *Elmsford* dismissed a procedural due process claim as duplicative of a Takings Clause claim, *see* 469 F.Supp. 3d at 173, but Plaintiffs have not asserted any Takings Clause or otherwise duplicative claims here. *Second*, whereas *Elmsford* involved a mere delay in "pursu[ing] remedies otherwise available," *id.*,

---

[4] In *VIP of Berlin v. Town of Berlin*, 593 F.3d 179 (2d Cir. 2010), the court found that the term "substantial or significant portion" was not unconstitutionally vague in reference to a store's stock of adult-themed merchandise, as a store's inventory is easily measurable. *See id*. at 187. Here, by contrast, whether household income or expenses have been "significantly reduced" or "significantly increased" is subjective, household-specific, and not easily measurable, and the statute provides no guidance.

6

CEEFPA denies property owners the *only* remedy that would make them whole: immediately reclaiming their homes, including for personal use or sale. *See* Dkt. 19 at 8 n.3. *Finally*, unlike the *Elmsford* court's reliance on the expiration of a "temporary" executive order, CEEFPA's rebuttable presumption of financial hardship extends indefinitely.

### C. CEEFPA Violates Plaintiffs' Right To Petition.

Amici assert that "the constitutional basis for the right to petition is unsettled." Dkt. 18-1 at 19. But here is nothing "unsettled" about the First Amendment's clear language: "Congress shall make no law . . . abridging the freedom of speech, or of the press; or the right of the people . . . to petition the Government for a redress of grievances." U.S. Const. amend. I. Because CEEFPA entirely bars a class of property owners from filing eviction petitions with New York courts until at least May 1, 2021, as well as from prosecuting existing cases, it "abridge[es] . . . the right of the people . . . to petition the Government." *Id.*; *see Christopher v. Harbury*, 536 U.S. 403, 413 (2002) (holding that right-to-petition claims may proceed where "official action is presently denying an opportunity to litigate for a class of potential plaintiffs," even if "[t]he opportunity has not been lost for all time"). Amici are likewise wrong to rely on *City of New York v. Beretta USA Corp.*, 524 F.3d 384, 398 (2d Cir. 2008), which involved a law that did not "impede" the plaintiffs' "general use of the courts" because it merely "immunize[d]" particular defendants. CEEFPA, in contrast, plainly *does* "impede" Plaintiffs' use of the courts. *Beretta USA Corp.*, 524 F.3d at 398.

Far more instructive is the recent decision in *ACA Int'l v. Healey*, 457 F. Supp. 3d 17 (D. Mass. 2020). In *Healey*, the court granted a preliminary injunction after finding that plaintiffs were likely to succeed on the merits of their right-to-petition claim against a bar on debt collection suits during the pandemic. That bar "usurp[ed] the power of the courts to decide who may and may not file petitions and who may carry out valid judicial orders for relief" during the pandemic,

7

violating debt collectors' right to petition. 457 F. Supp. 3d at 30. CEEFPA similarly impedes Plaintiffs' and other landlords' access to seek or enforce judicial relief.[5]

### III. The Balance Of Hardships And Public Interest Strongly Favor Injunctive Relief.

Amici's brief largely focuses on the COVID-19 pandemic and some of its resulting socioeconomic issues. Of course, the pandemic has caused tremendous upheaval and, of course the State can, and should, help citizens in a public health crisis. But the realities of the COVID-19 pandemic do not justify *this* particular law, which requires Plaintiffs—private citizens with limited resources of their own, who are themselves suffering—to bear the burdens of their tenants' hardship entirely. And it certainly does not justify infringing on their constitutional rights while doing so. Amici's concerns could be addressed if the State were to provide direct financial assistance to tenants to pay their rent, as amici acknowledge is possible. Dkt. 18-1 at 10–11. CEEFPA's Hardship Declaration scheme is not necessary to address the issues here, and "[n]o public interest is served by maintaining [this] unconstitutional policy," as "constitutional alternatives are available to achieve the same goal." *Agudath Israel of Am.*, 983 F.3d at 637.[6]

---

[5] To the extent the court system cannot immediately adjudicate all possible eviction cases, as amici claim, Dkt. 18-1 at 7–10, the answer is for the court system to prioritize the most exigent cases, as it is doing with every other case in the system right now. That would at least allow *some* cases to proceed.

[6] Amici also rely on out-of-circuit cases challenging the eviction moratorium issued by the Centers for Disease Control. Dkt. 18-1 at 22–23. But more recent decisions have struck down the CDC's eviction moratorium because "[a]lthough the COVID-19 pandemic persists, so does the Constitution," *Terkel v. Centers for Disease Control and Prevention,* 2021 WL 742877, at *10 (E.D. Tex. Feb. 25, 2021); *see also Skyworks Ltd. v. Centers for Disease Control and Prevention*, 2021 WL 911720, at *10 (N.D. Oh. Mar. 10, 2021) (holding that the CDC lacks authority delegated to it by Congress to enact its eviction moratorium). Even if the CDC moratorium could withstand constitutional scrutiny, unlike CEEFPA, it does not require landlords to distribute a hardship form or have it translated into tenant's language, or provide a list of legal service providers to assist tenants in avoiding eviction. Instead—as the State could have done here—the CDC moratorium puts that burden on the government, requiring tenants to download the form from the CDC website and provide a completed copy to their landlord. *Cf. Brown v. Azar*, 2020 WL 6364310, at *17–18 (N.D. Ga. Oct. 29, 2020) (case "involves neither free speech nor invasion of privacy"); *Chambless Enters., LLC v. Redfield*, 2020 WL 7588849, at *13 (W.D. La. Dec. 22, 2020) (similar). And the cases amici cite raised neither a First Amendment compelled speech claims nor void for vagueness due process claims.

Dated: New York, New York  GIBSON, DUNN & CRUTCHER LLP
       March 23, 2021

By: */s/ Randy M. Mastro*

    GIBSON, DUNN & CRUTCHER LLP
    Randy M. Mastro
    Akiva Shapiro

    200 Park Avenue
    New York, NY 10166
    Tel.: (212) 351-4000
    rmastro@gibsondunn.com
    ashapiro@gibsondunn.com

    *Attorneys for Plaintiffs*