UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

PANTELIS CHRYSAFIS, BETTY COHEN,
BRANDIE LACASSE, MUDAN SHI, AND
FENG ZHOU,

*Plaintiffs*,

-against-

LETITIA JAMES, in her official capacity as Attorney
General of the State of New York,

*Defendant*.

2:21-cv-00998
(SJF/ARL)

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO
DISMISS BASED ON ELEVENTH AMENDMENT IMMUNITY**

LETITIA JAMES
Attorney General
State of New York
*Attorney for Defendant*
200 Old Country Road, Suite 240
Mineola, New York 11501

Helena Lynch
Assistant Attorney General, *of Counsel*
(516) 248-3312 | Helena.lynch@ag.ny.gov

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT...........................................................................................1

OVERVIEW OF THE COVID-19 EMERGENCY EVICTION AND FORECLOSURE
PROTECTION ACT ......................................................................................................2

THE COMPLAINT..........................................................................................................6

PROCEDURAL HISTORY................................................................................................8

ARGUMENT..................................................................................................................8

ALL CLAIMS SHOULD BE DISMISSED BECAUSE THEY ARE BARRED BY THE
ELEVENTH AMENDMENT, AND THE *EX PARTE YOUNG* EXCEPTION DOES NOT
APPLY ..........................................................................................................................8

    A. The Eleventh Amendment and the *Ex parte Young* Exception.....................................10

    B. Plaintiffs Fail to Demonstrate the Requisite Connection Between the Attorney General and
        Enforcement of CEEFPA Part A ...........................................................................13

        i. CEEFPA Part A does not give the Attorney General any particular duty to enforce
           the statute.......................................................................................................14

        ii. No other state law gives the Attorney General any particular duty to enforce
           CEEFPA Part A .............................................................................................16

CONCLUSION.............................................................................................................21

# TABLE OF AUTHORITIES

**Case**                                             **Page**

*Alden v. Maine,*
    527 U.S. 706 (1999) ................................................................................................10

*Ass'n of Am. Med. Colleges v. Carey,*
    482 F. Supp. 1358 (N.D.N.Y. 1980) .......................................................................18

*Bd. of Trs. of the Univ. of Ala. v. Garrett,*
    531 U.S. 356 (2001) ................................................................................................10

*Burke v. Verizon Comm'ns, Inc.,*
    No. 18-cv-4496, 2020 WL 4741043 (S.D.N.Y. Aug. 17, 2020) ...............................20

*Burnette v. Carothers,*
    192 F.3d 52 (2d Cir. 1999) .....................................................................................10

*Connecticut Ass'n of Health Care Facilities, Inc. v. Rell,*
    No. 10-cv-136, 2010 WL 2232693 (D. Conn. June 3, 2010) ..................11, 12, 17, 20

*Dairy Mart Convenience Stores, Inc. v. Nickel,*
    411 F.3d 367 (2d Cir. 2005) ...........................................................................12, 13, 20

*In re Deposit Ins. Agency,*
    482 F.3d 612 (2d Cir. 2007) ...................................................................................10

*Ex parte Young,*
    209 U.S. 123 (1908) .........................................................................................*passim*

*Federal Nat'l Mortgage Ass'n v. Lefkowitz,*
    383 F. Supp. 1294 (S.D.N.Y. 1974) ........................................................................18

*Filler v. Port Washington Union Free Sch. Dist.,*
    436 F. Supp. 1231 (E.D.N.Y. 1977) ........................................................................16

*Goodspeed Airport, LLC v. E. Haddam Inland Wetlands & Watercourses Comm'n,*
    632 F. Supp. 2d 185 (D. Conn. 2009) .....................................................................18

*Harris v. Mills,*
    572 F.3d 66 (2d Cir. 2009) .......................................................................................9

*HealthNow New York, Inc. v. New York,*
    739 F. Supp. 2d 286 (W.D.N.Y. 2010).................................................................*passim*

*Johnson v. Rockefeller,*
    58 F.R.D. 42 (S.D.N.Y. 1972) .................................................................................20

*Jones v. Schneiderman*,
   974 F. Supp. 2d 322 (S.D.N.Y. 2013) ........................................................................ 13, 17, 20

*JTE Enterprises, Inc. v. Cuomo*,
   2 F. Supp. 3d 333 (E.D.N.Y. 2014) ............................................................................................ 9

*Makarova v. United States*,
   201 F.3d 110 (2d Cir. 2000). ...................................................................................................... 9

*Mendez v. Heller*,
   530 F.2d 457 (2d Cir. 1976) ...................................................................................... 12, 16, 21

*Nassau & Suffolk Cty. Taxi Owners Ass'n, Inc. v. State*,
   336 F. Supp. 3d 50 (E.D.N.Y. 2018) ..................................................................................... 11

*Oneida Indian Nation v. Phillips*,
   981 F.3d 157 (2d Cir. 2020) ....................................................................................................... 8

*Piscitello v. Giannetti*,
   No. 15-cv-398, 2016 WL 1559156 (E.D.N.Y. Apr. 18, 2016) .......................................... 9

*Riley v. Cuomo*,
   No. 17-cv-01631, 2018 WL 1832929 (E.D.N.Y. Apr. 16, 2018) ............................... 11, 18

*Rose v. New York City Dep't of Hum. Res.*,
   No. 12-cv-1764, 2013 WL 68993 (S.D.N.Y. Jan. 4, 2013) ................................................ 9

*Sabin v. Nelson*,
   No. 12-cv-1373, 2014 WL 2945770 (N.D.N.Y. June 30, 2014) .................................... 20

*Tenn. Student Assistance Corp. v. Hood*,
   541 U.S. 440 (2004) .................................................................................................................. 10

*Ulrich v. Mane*,
   383 F. Supp. 2d 405 (E.D.N.Y. 2005) ............................................................................ 16, 21

*Williams v. Marinelli*,
   987 F.3d 188 (2d Cir. 2021) ....................................................................................................... 9

*Woods v. Rondout Valley Cent. Sch. Dist. Bd of Educ.*,
   466 F.3d 232 (2d Cir. 2006) ....................................................................................................... 8

**United States Constitution**

Eleventh Amendment ......................................................................................................*passim*

**Federal Rules of Civil Procedure**

Rule 12(b)(1) ................................................................................................................1, 9

Rule 12(b)(6) ............................................................................................................ 1, 8, 9

**State Statutes**

Chapter 127, Laws of 2020 ................................................................................................4

Chapter 381, Laws of 2020 ....................................................................................*passim*

Executive Law § 63(1) .................................................................................................8, 16

Executive Law § 63(12) ..........................................................................................*passim*

Penal Law § 210.05 ...........................................................................................................3

Real Property Actions and Proceedings Law § 768 ................................................20

## PRELIMINARY STATEMENT

Defendant, Letitia James, the Attorney General of the State of New York, respectfully submits this memorandum of law in support of her motion, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss all claims and requests for relief asserted against her in the Complaint dated February 24, 2021 (the "Complaint") because all claims as asserted against her are barred by the Eleventh Amendment to the United States Constitution.

In response to the most devastating public health crisis in a century, the COVID-19 pandemic, and its resulting economic hardships, the Legislature enacted the COVID-19 Emergency Eviction and Foreclosure Prevention Act (Chapter 381 of the Laws of 2020, "CEEFPA"), which became effective on December 28, 2020. The Legislature determined that the health crisis threatened to destabilize housing for tenants, landlords, and homeowners and trigger an impending homelessness crisis that would exacerbate the spread of COVID-19, and place New Yorkers at even higher levels of risk of serious illness and death.

Plaintiffs, five owners of residential properties rented to tenants, ask this Court to strike down selected provisions of CEEFPA—specifically, Part A of the statute—that afford certain tenants a temporary stay of eviction proceedings, until May 1, 2021, to prevent a homelessness crisis that would deepen the public-health harms caused by the pandemic. Plaintiffs do not challenge—and thus apparently seek to preserve—similar provisions in CEEFPA Part B that afford property owners like themselves protections against foreclosure in service of similar public health and economic welfare policies.

Plaintiffs challenge Part A of CEEFPA, or alternatively provisions thereof, as allegedly unconstitutional pursuant to the First and Fourteenth Amendments to the United States Constitution, and corresponding provisions of the New York Constitution.

In addition to their lack of merit, all of these claims should be dismissed because Plaintiffs have sued the wrong party. The claims in the Complaint are barred as against the Attorney General pursuant to the Eleventh Amendment to the United States Constitution, and the *Ex parte Young* exception to Eleventh Amendment immunity does not apply because the Attorney General is not charged with enforcing CEEFPA Part A. Accordingly, because the Attorney General is the only named Defendant, the Complaint should be dismissed in its entirety.

**OVERVIEW OF THE COVID-19 EMERGENCY
EVICTION AND FORECLOSURE PROTECTION ACT**

CEEFPA, the text of which is attached as Exhibit A to the Complaint, *see* ECF No. 1-1, protects both tenants and mortgagors who declare financial hardship due to COVID-19. The statute initially provided for an overall stay of both commencement and continuation of eviction proceedings, whether brought pursuant to Article 7 of the Real Property Actions and Proceedings Act ("RPAPL") or otherwise, with the exception of proceedings against tenants engaging in ongoing nuisance behavior (as defined by the statute),[1] until February 26, 2021. CEEFPA Part A § 2. This initial stay was to ensure that courts were prepared to conduct proceedings in compliance with CEEFPA and to give tenants an opportunity to submit a Hardship Declaration. *Id.* The chief administrative judge was granted limited authority to extend that date, *id.*, but did not do so.

Separate from the initial overall stay of eviction proceedings that has now expired, CEEFPA provides that a landlord who wishes to use the courts to commence an eviction proceeding must provide certain additional documents to the tenant prior to commencing the proceeding, together with the predicate notice and other related documents that have long been required. In particular, CEEFPA requires a landlord to also provide the tenant with: (i) a blank copy of a Hardship

---

[1] Ongoing Nuisance Behavior is where a tenant is "persistently and unreasonably engaging in behavior that substantially infringes on the use and enjoyment of other tenants or occupants or causes a substantial safety hazard to others." *See, e.g.*, CEEFPA Part A § 5(b).

Declaration (the contents of which are set forth in the statute, *see* CEEFPA Part A § 1(4)) in the tenant's language, along with a mailing address, telephone number and active email address for the landlord so that the tenant may return the completed form; and (ii) a list of not-for-profit legal services providers currently handling housing matters in the county of the tenant's residence. *Id.* § 3. The Hardship Declaration is available on the Office of Court Administration website in approximately twenty languages. *See* http://www.nycourts.gov/courts/nyc/civil/CORONA/covid-eefpa.shtml. The list of legal service providers is also available on the Office of Court Administration website. *See* CEEFPA Part A § 3(2). These notices are referred to as the "Pre-eviction notices." *Id.* Any tenant signing a Hardship Declaration does so "under penalty of law," which the form explains means that "it is against the law to make a statement on this form that you know is false." *Id.* § 1(4).[2] The form has the image of the seal of the Unified Court System on its face. *See* Hardship Declaration, ECF No. 1-2 (Exhibit 2 to the Complaint).

CEEFPA Part A temporarily prohibits, until May 1, 2021, initiation of new eviction proceedings against tenants who have provided a completed Hardship Declaration to the landlord. CEEFPA Part A § 4. A landlord may at any time commence an eviction proceeding if he or she files with the court, together with a petition to commence proceedings, an affidavit stating that he or she provided a form Hardship Declaration to a tenant, but that he or she has not received the completed form. *Id.* § 5(a). In addition, a landlord may at any time initiate an eviction proceeding against a tenant, regardless of whether that tenant has provided a Hardship Declaration, if the landlord files with the court, together with the petition, an affidavit stating that the tenant is engaging in ongoing nuisance activity. *Id.* § 5(b). If neither of the aforementioned affidavits is annexed to the petition, the court may not accept the petition for filing. *Id.* § 5(a), (b).

---

[2] New York's Penal Law provides "A person is guilty of perjury in the third degree when he swears falsely." N.Y. Penal Law § 210.05.

Tenants may submit Hardship Declarations in pending proceedings. Where no warrant of eviction has been issued, submission of the completed form will require the court to stay the matter until May 1, 2021. CEEFPA Part A § 6. Where a warrant has been issued, submission of a completed Hardship Declaration will require the court to stay execution of the warrant until at least May 1, 2021. *Id.* § 8(a)(ii). In addition, in pending eviction proceedings, courts may not issue default judgments or authorize enforcement of an already issued default judgment without a hearing. *Id.* § 7. Warrants may be executed if they state, in accordance with the statute, either that the tenant has been provided a form Hardship Declaration but did not return the complete form, or that the tenant is engaging in ongoing nuisance activity (regardless of whether the tenant filed a Hardship Declaration). *Id.* § 8(b).

As of May 1, 2021, in an eviction proceeding based on alleged non-payment of rent, the signed Hardship Declaration establishes a rebuttable presumption, pursuant to Chapter 127 of the Laws of 2020, that that the tenant is experiencing financial hardship due to COVID-19. CEEFPA Part A § 11. The court will determine whether the landlord has rebutted the presumption by applying statutory factors that preexisted CEEFPA. Ch. 127, L. 2020. The defense of financial hardship will no longer be available once the COVID-19-related economic restrictions are lifted in the county of the tenant's residence. Ch. 127, L. 2020. None of the stay provisions applies where a tenant creates a nuisance or safety hazard. CEEFPA Part A § 9.

The statute does not provide for rent forgiveness. *See id.* § 1(4). Tenants submitting a Hardship Declaration must declare their understanding that they are required to comply with all other obligations under their lease; remain responsible for all rent owed, potentially including interest; and that their non-payment may result in a money judgment against them. *Id.* Nothing in CEEFPA Part A prohibits landlords from seeking other legal relief against non-paying tenants, such as a lawsuit for breach of contract.

CEEFPA Part A contains a severance clause, which states: "If any clause, sentence, paragraph, section or part of this act shall be adjudged by any court of competent jurisdiction to be invalid and after exhaustion of all further judicial review, the judgment shall not affect, impair or invalidate the remainder thereof, but shall be confined in its operation to the clause, sentence, paragraph, section or part of this act directly involved in the controversy in which the judgment shall have been rendered." CEEFPA Part A § 12. "This act" for purposes of the severance clause means Part A. *See* CEEFPA § 1 (providing that a reference to a section "of this act" means "the corresponding section of the Part in which it is found").

CEEFPA Part B, subpart A, through similar provisions, also prevents mortgage foreclosures. It allows a mortgagor to submit a Hardship Declaration for mortgagors ("Mortgager Hardship Declaration"), which creates a rebuttable presumption in any foreclosure action or proceeding that the mortgagor is suffering financial hardship. CEEFPA Part B(A) §§ 2, 10. One basis for creating a rebuttable presumption of hardship is, "One or more of my tenants has defaulted on a significant amount of their rent payments since March 1, 2020." *Id.*

Similar to those provisions regarding evictions in Part A, Part B, subpart A requires that a foreclosing party must provide, with notice of a foreclosure action, a form Mortgagor Hardship Declaration in the mortgagor's primary language before a foreclosure action may be commenced. CEEFPA Part B(A) § 4. All foreclosure actions in which a mortgagor provides a Mortgagor Hardship Declaration are stayed until May 1, 2021. § 5. A foreclosing party may commence a foreclosure action only if he or she attests to having provided the mortgagor with a Mortgagor Hardship Declaration as required by the statute and having not received the completed form in return. *Id.* § 5. Pending foreclosure actions in which a judgment of sale has not been issued are stayed until May 1, 2021 where the mortgagor submits a Mortgagor Hardship Declaration. *Id.* § 7. All executions of judgment of sale are stayed until May 1, 2021, where the mortgagor submits a Mortgagor Hardship Declaration. *Id.* § 8.

Part B, subpart B of CEEFPA contains corresponding provisions in the context of tax foreclosures. *See generally* CEEFPA Part B(B). Part B, subpart C contains provisions for owners of residential properties, including residential cooperatives, with ten or fewer units to provide for protections against discrimination in lending. *Id.* Part B(C).

No part of CEEFPA expressly sets forth any penalty, either civil or criminal, for non-compliance. No part of CEEFPA references the Attorney General.

## THE COMPLAINT

As alleged in the Complaint, and taken as true solely for purposes of this motion, Plaintiffs are residential property owners who rent their properties to tenants. Compl. ¶ 8. All of the Plaintiffs' tenants have stopped paying rent. *Id.* All Plaintiffs wish to evict their tenants, either so that they may occupy their property themselves (Plaintiffs Shi and Zhou), sell their property (Plaintiffs LaCasse and Chrysafis) or, presumably, rent the property to a paying tent (Plaintiff Cohen). *Id.* Plaintiffs LaCasse and Cohen allege they have received Hardship Declarations from their tenants. *Id.* Plaintiffs Chrysafis, Shi, and Zhou do not allege that they have received a Hardship Declaration from their tenants or that they served their tenants with the form. *Id.*

None of the Plaintiffs alleges that he or she has attempted to move forward with an eviction proceeding since CEEFPA has been in effect, either by attesting that they provided a form Declaration of Hardship and did not receive the completed form, or by attesting that any of their tenants is creating a nuisance. *Id.* Nor does any Plaintiff allege that he or she plans to attempt to move forward with an eviction in violation of CEEFPA Part A or any other law. *Id.*

Plaintiffs allege: (1) that the Pre-eviction notice requirements in CEEFPA Part A—*i.e.*, that landlords provide a Hardship Declaration and list of legal services providers together with notices to tenants related to commencement of eviction proceedings—amount to compelled speech in violation of the First Amendment and Article I, § 8 of the New York Constitution, Compl. ¶¶ 2, 63-70; (2) that

certain terms in the Hardship Declaration are unconstitutionally vague in violation of the Fourteenth Amendment Due Process clause and Article I, § 6 of the New York Constitution, *id.* ¶¶ 3, 73-80;[3] (3) that the eviction moratorium in effect until May 1, 2021 deprives them of an opportunity to challenge tenants' claims of hardship, in violation of the Fourteenth Amendment's Due Process Clause and Article I, § 6 of the New York Constitution, *id.* ¶¶ 3, 82-86; (4) that the eviction moratorium deprives them of their right to petition the government, in violation of the First Amendment's Petition Clause and Article I, § 9 of the New York Constitution, *id.* ¶ 3, 88-92; and (5) that CEEFPA Part A § 2 contains an unconstitutional judicial delegation in violation of Article VI, § 30 of the New York Constitution, Compl. ¶¶ 3, 94-98. In a subsequent filing with the Court, Plaintiffs appeared to agree that the latter claim is moot. *See* Pls.' Mem. (ECF No. 19) at 8-9 n.4.

Plaintiffs' complaint names only the Attorney General as a defendant. Plaintiffs seek a permanent injunction enjoining the Attorney General from implementing or enforcing CEEFPA Part A or, in the alternative, an injunction against implementing the challenged parts of CEEFPA Part A, facially and as applied to Plaintiffs. Plaintiffs also seek a declaration that CEEFPA Part A is facially invalid in violation of the First and Fourteenth Amendments to the United States Constitution and Article I, §§ 6, 8, 9 of the New York Constitution. Plaintiffs alternatively seek a declaration that certain challenged portions of CEEFPA are facially unconstitutional. Plaintiffs further seek a declaration that CEEFPA Part A, or the challenged provisions, is unconstitutional as applied to Plaintiffs. Compl. at 34-35 (Prayer for Relief).

As for the Attorney General, this is the entirety of the allegations in the Complaint: "Defendant Letitia James is the Attorney General of the State of New York and is responsible for defending the constitutionality of CEEFPA in this action as part of her duty under Executive Law

---

[3] Plaintiffs challenge only the Hardship Declaration in Part A of CEEFPA. The relief Plaintiffs seek would leave in place the nearly identical Mortgagor Hardship Declaration in Part B of CEEFPA.

§ 63(1) to defend all actions and proceedings in which New York State is interested. She is also responsible for enforcement of any violations of the statute." Compl. ¶ 19.

## PROCEDURAL HISTORY

Although CEEFPA became effective on December 28, 2020 and is in effect for a total of four months, until May 1, 2021, Plaintiffs filed their Complaint on February 24, 2021 (ECF No. 1), and filed their motion for a temporary restraining order and preliminary injunction on February 25, 2021 (ECF No. 5), two months after the effective date and halfway through the duration of the statute.

In accordance with the Order to Show Cause, *see* ECF No. 14, Defendant filed her opposition to Plaintiffs' aforementioned motion on March 8, 2021, ECF No. 16. Plaintiffs filed their reply on March 12, 2021. *See* ECF No. 19. In addition, on March 10, 2021, Housing Court Answers and Make the Road New York moved for permission to file an *amicus* brief, and filed a proposed *amicus* brief. *See* ECF Nos. 18. On March 16, 2021, the Court held a telephonic hearing on Plaintiffs' motion. *See* Minute Entry for proceeding held March 16, 2021; ECF No. 22. The Court denied plaintiff's motion for a temporary restraining order and approved an agreed-upon briefing schedule for the instant motion. *See* ECF No. 22. The court granted permission for the filing of the *amicus* brief.

## ARGUMENT

### ALL CLAIMS SHOULD BE DISMISSED BECAUSE THEY ARE BARRED BY THE ELEVENTH AMENDMENT, AND THE *EX PARTE YOUNG* EXCEPTION DOES NOT APPLY

The claims against the Attorney General in this matter are barred by the Eleventh Amendment to the United States Constitution. Neither the Supreme Court nor the Second Circuit has definitively stated whether Eleventh Amendment immunity is a matter of subject matter jurisdiction or is an affirmative defense examined under Rule 12(b)(6). *See, e.g.*, *Woods v. Rondout Valley Cent. Sch. Dist. Bd of Educ.*, 466 F.3d 232, 238 (2d Cir. 2006). The majority view in the Second Circuit appears to be that it is a matter of subject matter jurisdiction. *See Oneida Indian Nation v. Phillips*, 981 F.3d 157, 177 (2d Cir.

2020) ("Our court has repeatedly recognized that state sovereign immunity limits our subject-matter jurisdiction." (concurring opinion)); *Williams v. Marinelli*, 987 F.3d 188, 196 (2d Cir. 2021) (ruling it was required to consider unpreserved Eleventh Amendment argument because it implicated subject matter jurisdiction); *Piscitello v. Giannetti*, No. 15-cv-398, 2016 WL 1559156, at *4 (E.D.N.Y. Apr. 18, 2016) (dismissing claims against state defendants, who were entitled to Eleventh Amendment immunity, based on lack of subject matter jurisdiction).

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

Some courts have treated an assertion of Eleventh Amendment immunity as an affirmative defense, which is examined under Federal Rule 12(b)(6) based on the pleadings. *See Rose v. New York City Dep't of Hum. Res.*, No. 12-cv-1764, 2013 WL 68993, at *2 (S.D.N.Y. Jan. 4, 2013), *report and recommendation adopted*, No. 12-cv-1764, 2013 WL 323995 (S.D.N.Y. Jan. 24, 2013). On a motion pursuant to Rule 12(b)(6), the court should assume the truth of factual allegations and "'determine whether they plausibly give rise to an entitlement of relief.'" *JTE Enterprises, Inc. v. Cuomo*, 2 F. Supp. 3d 333, 338 (E.D.N.Y. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)). However, "that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

The Court need not decide here whether this motion must be examined under Rule 12(b)(1) or 12(b)(6) because regardless of whether the Court examines Defendant's Eleventh Amendment immunity as a matter of subject matter jurisdiction or based on the pleadings, the Eleventh Amendment bars this suit against the Attorney General.

## A.  The Eleventh Amendment and the *Ex parte Young* Exception

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. This limit on jurisdiction also extends to suits brought against a state by its own citizens. *See Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 446 (2004). Accordingly, federal courts do not have jurisdiction over cases where a state is made party to a suit without its consent. *See Alden v. Maine*, 527 U.S. 706, 745-46 (1999); *Burnette v. Carothers*, 192 F.3d 52, 57 (2d Cir. 1999), *cert. denied*, 531 U.S. 1052 (2000). The Eleventh Amendment prohibits a federal court from exercising jurisdiction over lawsuits brought by a private party against a state unless the state waives sovereign immunity or Congress has expressly and validly abrogated that immunity. *Virginia Office for Protection and Advocacy v. Stewart*, 131 S. Ct. 1632, 1638 (2011); *Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001). A state official sued in his or her official capacity, as the Attorney General is here sued, is the state for purposes of Eleventh Amendment immunity. *See Burnette*, 192 F.3d at 57. Accordingly, as a general rule, a plaintiff cannot avoid the Eleventh Amendment's proscription by naming a state officer as a party in lieu of the state.

In *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court carved out a narrow exception to a state's Eleventh Amendment immunity in cases involving official-capacity suits against state officers. Under the *Ex parte Young* doctrine, a plaintiff may proceed against an individual state officer in his official capacity when the complaint "(a) 'alleges an ongoing violation of federal law' and (b) 'seeks relief properly characterized as prospective.'" *In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (quoting *Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

The *Ex parte Young* exception is directed at "officers of the state [who] are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to

commence proceedings . . . to enforce against parties affected [by] an unconstitutional act." *Ex parte Young*, 209 U.S. at 155-56. Where a plaintiff names a state officer in a constitutional challenge to a statute, the *Ex parte Young* exception cannot be satisfied if the state officer does not have a "particular duty" to enforce the law in question. *Riley v. Cuomo*, No. 17-cv-01631, 2018 WL 1832929, at *5 (E.D.N.Y. Apr. 16, 2018) (internal quotation marks omitted); *see also HealthNow New York, Inc. v. New York*, 739 F. Supp. 2d 286, 294 (W.D.N.Y. 2010), *aff'd* 448 F. App'x 79 (2d Cir. 2011). Courts also require a showing that the named official has threatened to enforce or has expressed a willingness to enforce the statute. *See Riley*, 2018 WL 1832929, at *5; *HealthNow*, 739 F. Supp. 2d at 294. Because both a particular duty to enforce the statute and a threat of enforcement are required to apply the *Ex parte Young* exception, a plaintiff's failure to establish either of these requirements requires dismissal of the claims. *See Riley*, 2018 WL 1832929, at *5; *HealthNow*, 739 F. Supp. 2d at 294; *see also Nassau & Suffolk Cty. Taxi Owners Ass'n, Inc. v. State*, 336 F. Supp. 3d 50, 68 (E.D.N.Y. 2018) (*Ex parte Young* exception not satisfied as to Governor because "it does not appear that his office has any particular enforcement authority over" the statute in question).

Without such a particular duty, the requisite connection between the officer and the statute cannot be found. "General authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law. Holding that a state official's obligation to execute the laws is a sufficient connection to the enforcement of a challenged statute would extend *Young* beyond what the Supreme Court has intended and held." *Connecticut Ass'n of Health Care Facilities, Inc. v. Rell*, No. 10-cv-136, 2010 WL 2232693, at *5 (D. Conn. June 3, 2010), *aff'd*, 395 F. App'x 741 (2d Cir. 2010), *and aff'd sub nom. Connecticut Ass'n of Health Care Facilities, Inc. v. Bremby*, 519 F. App'x 44 (2d Cir. 2013). Accordingly, in order for plaintiffs to overcome Eleventh Amendment immunity, they must identify a state official whose particular duty with respect to the challenged law

is a duty of affirmative enforcement or administration of the statute at issue, rather than a general duty to support or defend state statutes. *See Mendez v. Heller*, 530 F.2d 457, 460 (2d Cir. 1976).

The requirement that the named state official have a particular duty to enforce a challenged law preserves fundamental principles of comity and state sovereignty. The purpose of the *Ex parte Young* exception is to "ensure that the doctrine of sovereign immunity remains meaningful, while also giving recognition to the need to prevent violations of federal law." *Dairy Mart Convenience Stores, Inc. v. Nickel*, 411 F.3d 367, 372 (2d Cir. 2005). If a state official does not have a particular duty to administer or enforce a statute, that officer cannot be said to be participating in an ongoing violation of federal law based on the statute's mere existence. To hold otherwise would be to impermissibly stretch *Ex parte Young* beyond its intended purpose. *See Connecticut Ass'n of Health Care Facilities,* 2010 WL 2232693, at *5; *see also Dairy Mart*, 411 F.3d at 373 ("connection with enforcement" found because defendant state officers were specifically charged with overseeing state-administered fund). In addition, without having shown the requisite connection between a state official and the challenged statute, the plaintiff would be "merely making [the officer] a party as a representative of the state, and thereby attempting to make the state a party." *Ex parte Young*, 209 U.S. at 157. This would be a clear violation of the Eleventh Amendment.

Finally, "the *Young* exception to the principle of sovereign immunity under the Eleventh Amendment is inapplicable to claims 'against state officials on the basis of state law.'" *Colvin v. State Univ. Coll. at Farmingdale,* No. 13-cv-3595, 2014 WL 2863224, at *11 (E.D.N.Y. June 19, 2014) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984)). "[A] claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment." *Id.* This "applies as well to state-law claims brought into federal court under pendent jurisdiction." *Id.*

Plaintiffs assert only the barebones allegations that the Attorney General "is responsible for defending the constitutionality of statutes" and that she "is also responsible for enforcement of any violations of the statute." Compl. ¶ 19. These generic allegations do not come close to demonstrating that the *Ex parte Young* exception is triggered. As set forth below, Defendant does not have a particular duty to enforce CEEFPA Part A for purposes of overcoming the Attorney General's Eleventh Amendment immunity.

### B. Plaintiffs Fail to Demonstrate the Requisite Connection Between the Attorney General and Enforcement of CEEFPA Part A

The *Ex parte Young* exception is inapplicable here because the Attorney General does not have a particular duty to enforce CEEFPA Part A, and her general authority to enforce state laws (including CEEFPA) under N.Y. Executive Law § 63(12) is not sufficient for these purposes. Although the requisite connection between a state official and enforcement of a statute may be found in the statute at issue or in another state law, *see Ex parte Young*, 209 U.S. at 157, the connection must create a particular duty to enforce or administer the statute in question, *see HealthNow*, 739 F. Supp. 2d at 295 (to create particular duty to enforce statute, provisions of another law must "have the same effect as a special charge in the [challenged] statute"); *Dairy Mart*, 411 F.3d at 373 (officials had "significant responsibilities overseeing" fund and approving claims for reimbursement, and were the officials allegedly declining to apply bankruptcy code provision in finding plaintiffs reimbursement claims untimely). The absence of an express grant of authority in the statute, although not dispositive, is highly relevant. *See Jones v. Schneiderman*, 974 F. Supp. 2d 322, 352 (S.D.N.Y. 2013) (noting as relevant absence of reference to Attorney General in Alcoholic Beverage Control Law as opposed to different statute that did reference Attorney General).

Here, Plaintiffs allege that the Attorney General is "responsible for enforcement of any violations of" CEEFPA Part A. But neither the statute itself nor any other law of New York tasks the Attorney General with any particular duty with respect to enforcement of CEEFPA Part A.

CEEFPA Part A does not give the Attorney General any particular duty to enforce the statute

Nowhere in CEEFPA Part A is there any provision mandating, or even addressing, enforcement by the Attorney General. Indeed, CEEFPA Part A does not reference the Attorney General at all. CEEFPA is administered by the court system, which is prohibited by the statute until May 1, 2021 from accepting for filing any non-complying petition to commence an eviction proceeding, and is prohibited until May 1, 2021 from moving forward with pending proceedings, including issuance of eviction warrants, absent satisfaction of all statutory prerequisites. The text of the statute makes plain that the Attorney General has no immediate role in administering CEEFPA Part A—*i.e.*, no role in accepting or rejecting eviction-proceeding filings in court. Nor does the statute identify the Attorney General as having any particular mandate to enforce its terms.

CEEFPA Part A's language is dedicated primarily to setting forth procedural requirements regarding commencement and continuation of eviction proceedings. Obligations applicable to landlords under CEEFPA Part A are: (1) the Pre-eviction notice requirements, *i.e.*, the requirement to include a form Hardship Declaration (with landlord's contact information) and list of legal services providers with any pre-eviction notice to a tenant, *id.* § 3; (2) the requirement that any landlord seeking to commence an eviction proceeding attach, with any notice of petition sought to be filed in housing court, an affidavit demonstrating that the form Declaration of Hardship was served as required by the statute and attesting that either the form was not returned or that the tenant was creating a nuisance as defined in the statute, *id.* § 5; and (3) the requirement that any landlord in a pending eviction proceeding file a new petition if the landlord wishes to allege that a tenant is engaging in nuisance behavior but had not so alleged previously, *id.* § 9(1).

Plaintiffs do not allege that they plan to circumvent any of these obligations. And these obligations are litigation-related procedural prerequisites that are administered in the first instance by court employees, who have responsibility for ensuring parties' compliance with filing requirements

before accepting an eviction petition or allowing a preexisting proceeding to move forward. The statute provides that if Plaintiffs were to attempt to circumvent these requirements, the court system would prevent such circumvention and halt any eviction proceedings. To the extent section 4, "Prohibition on initiation of eviction proceedings," which states, "there shall be no initiation of an eviction proceeding against [a tenant who provides a Hardship Declaration] until at least May 1, 2021," is construed as imposing an obligation on landlords, court employees administer this provision and are responsible for ensuring that no such noncomplying proceeding is initiated. If Plaintiffs fail to comply, the statute prohibits the court from accepting their petition to commence a proceeding. CEEFPA Part A §§ 3, 5.

The remainder of CEEFPA Part A's mandates apply primarily to courts and law enforcement officers who execute eviction warrants. For example, in addition to the initial overall stay that has now expired, *see id.* § 2, courts are required to stay the initiation of new proceedings and stay current proceedings, except for those involving nuisance tenants or tenants who do not provide a completed Hardship Declaration after having been provided one as required by the statute, *id.* §§ 4, 5. Part A further imposes restrictions on the issuance and execution of eviction warrants. In a pending proceeding, no warrant may be issued until the court has held a hearing, and no warrant may be issued until at least May 1, 2021 if the tenant has provided a Hardship Declaration to the landlord or to the court. *Id.* § 8(a). No warrant may be executed unless it expressly states either that the tenant did not provide a Hardship Declaration after having been served with the form as required by the statute (including the dates of service by the landlord and by the court), or that the tenant is creating a nuisance. *Id.* § 8(b).

Accordingly, CEEFPA Part A does not create a particular duty for the Attorney General to enforce the statute.

     ii.    No other state law gives the Attorney General any particular duty to enforce CEEFPA Part A

In their Complaint, Plaintiffs assert that the Attorney General has the requisite connection to CEEFPA Part A based on two general state laws: Executive Law 63(1) and Executive Law 63(12). Compl. ¶ 19. But neither statute imbues the Attorney General with a "particular duty" to enforce CEEFPA Part A or administer the filing of eviction proceedings that would be necessary to overcome Eleventh Amendment immunity. Accordingly, Plaintiffs' claims must be dismissed.

First, the allegation that the Attorney General is responsible for "defending the constitutionality of CEEFPA [Part A] in this action as part of her duty under Executive Law § 63(1)," *id.*, does not demonstrate the requisite connection with enforcement of the statute. Courts have made abundantly clear that the duty to defend a statute does not create a particular connection with enforcement of the statute under *Ex parte Young. See Mendez*, 530 F.2d at 460 ("Although [s]he has a duty to support the constitutionality of challenged state statutes, and to defend actions in which the state is 'interested', the Attorney General does so, not as an adverse party, but as a representative of the State's interest in asserting the validity of its statutes." (internal citations omitted)); *Ulrich v. Mane*, 383 F. Supp. 2d 405, 410 (E.D.N.Y. 2005) ("While the Attorney General is charged with defending the constitutionality of state law, this fact alone does not provide a basis for bringing an action against [her]."); *Filler v. Port Washington Union Free Sch. Dist.*, 436 F. Supp. 1231, 1234-35 (E.D.N.Y. 1977).

Second, contrary to Plaintiffs' contention, the Attorney General's discretionary authority to seek enforcement against "illegal acts" under Executive Law § 63(12) does not bestow a particular duty to enforce CEEFPA Part A sufficient to invoke the *Ex parte Young* exception. The Attorney General is authorized under Executive Law § 63(12) to seek an injunction "[w]henever any person shall engage in repeated fraudulent or illegal acts or otherwise demonstrate persistent fraud or illegality in the carrying on, conducting or transaction of business." N.Y. Exec. Law § 63(12). Although this statute would allow the Attorney General to pursue claims against those who engage in repeated or

persistent violations of CEEFPA, it does not create a particular duty to enforce CEEFPA itself that would make the Attorney General the appropriate state defendant for a pre-enforcement lawsuit like this one seeking prospective relief. *See HealthNow*, 739 F. Supp. 2d at 295 ("[T]he Attorney General's general authority to investigate and enforce the laws of New York State pursuant to Executive Law § 63(12) is not a sufficient connection to support an exception to sovereign immunity under *Ex parte Young* for the Attorney General to be a proper party in the instant case."); *Jones*, 974 F. Supp. 2d at 352-53 (holding Attorney General's general responsibility to enforce New York laws is insufficient connection for *Ex parte Young* exception).

Indeed, because Executive Law § 63(12) gives the Attorney General broad authority to investigate and pursue claims for injunctive relief *whenever* a person engages in any repeated or persistent illegality in the conduct of business, relying solely on § 63(12) to find a particular duty to enforce a specific state law would allow lawsuits against the Attorney General to try to invalidate nearly any statute that regulates "the carrying on, conducting or transaction of business." But the state has many such laws regulating countless issues which do not imbue the Attorney General with any particular enforcement duty. Thus, finding that the requisite connection exists between the Attorney General and CEEFPA Part A based solely on Executive Law § 63(12) "would extend *Young* beyond what the Supreme Court has intended and held." *Connecticut Ass'n of Health Care Facilities,* 2010 WL 2232693, at *5; *see also HealthNow*, 739 F. Supp. 2d at 297 ("If a federal case could be made for the purpose of testing the constitutionality of a state statute merely by naming any state official in an injunction suit, the limited exception of *Ex parte Young* would be stretched far beyond its intended purpose.").

Two district court cases were found, one from 1974 and one from 1980, that cited Executive Law § 63(12) in concluding a sufficient connection between the Attorney General and enforcement of a statute for an *Ex parte Young* exception existed. But these cases are incorrect to the extent they

relied on section 63(12). In any event, the courts in these cases did not rely on section 63(12) alone; rather, there were additional facts demonstrating that enforcement by the Attorney General was either imminent or likely. In *Federal Nat'l Mortgage Ass'n v. Lefkowitz*, the plaintiff, unlike Plaintiffs herein, had announced its intention to defy the challenged statute by ignoring its mandate to pay interest to mortgage investing institutions. 383 F. Supp. 1294, 1297 (S.D.N.Y. 1974). Other courts have noted that this additional factor, not the mere existence of section 63(12), is what established the sufficient connection under *Ex parte Young*. *See HealthNow*, 739 F. Supp. 2d at 295 (distinguishing *Federal Nat'l Mortgage* on basis that plaintiff in that case announced intention to defy the law). In the second case that cited Executive Law § 63(12), a matter involving new testing requirements for the Medical College Admissions Test ("MCAT"), again, it was not section 63(12) alone that created the requisite connection. In that case, the Commissioner of Education stated that he planned to refer violations of new MCAT requirements to the Attorney General, and the court viewed violations as likely. *Ass'n of Am. Med. Colleges v. Carey*, 482 F. Supp. 1358, 1364 (N.D.N.Y. 1980).

Here, although the Attorney General may use her discretionary authority under section 63(12) to take some future action with respect to repeated or persistent violations of CEEFPA Part A, this is not sufficient under *Ex parte Young*. And Plaintiffs here are not positioned to seek broad prospective relief against any such future enforcement actions because, unlike in *Federal National Mortgage* and *American Association of Medical Colleges*, nothing in the Complaint indicates that Plaintiffs intend to or are even likely to violate CEEFPA Part A such that the Attorney General would be likely to file an enforcement action against them specifically. *See Riley*, 2018 WL 1832929, at *5; *see also Goodspeed Airport, LLC v. E. Haddam Inland Wetlands & Watercourses Comm'n*, 632 F. Supp. 2d 185, 189 (D. Conn. 2009) ("remote possibility" of enforcement action against plaintiff insufficient to overcome Eleventh Amendment immunity). To the contrary, the Complaint makes clear that Plaintiffs have *not* filed

eviction proceedings in violation of CEEFPA Part A, despite their wish to pursue such evictions, because they know that the courts will not accept their petitions.

To the extent Plaintiffs allege that the Attorney General's guidance to sheriffs as to their obligations under CEEFPA Part A or public statements regarding illegal evictions[4] indicates a particular duty or a willingness to enforce CEEFPA Part A, they are incorrect. CEEFPA Part A contains provisions restricting issuance of eviction warrants, including that issuance of any previously eviction warrant is stayed until, either until a status conference is held, or until May 1, 2021 if the tenant provides a Hardship Declaration. *Id.* 8(a). In addition, warrants may be executed prior to May 1, 2021 only if they state that the tenant did not provide a Hardship Declaration after having been served with the form in compliance with the statute, or if the tenant has created a nuisance or safety hazard. *Id.* § 8(b).

The Attorney General's provision of general guidance about the plain terms of CEEFPA Part A to sheriffs and local law enforcement officers does not come close to establishing a particular duty to enforce CEEFPA Part A or an imminent threat to do so against Plaintiffs. Stated more simply, guidance is not enforcement. Indeed, the fact that the Attorney General provided general information to the local law enforcement officers who are directly responsible for complying with CEEFPA's restrictions on the execution of eviction warrants further underscores that it is other state and local officials, rather than the Attorney General, who may have the particular duty to administer or enforce the eviction-warrant provisions of CEEFPA Part A. To hold that general guidance to local officials about their responsibilities in administering a state statute equates to a particular duty to enforce the statute would eviscerate and stretch the *Ex parte Young* exception beyond recognition.

---

[4] The public statement cited by Plaintiff in their reply papers on their motion for interim relief was dated May 8, 2020, more than seven months before CEEFPA was enacted. *See* ECF No. 20-5.

Any contention that the Attorney General might exercise her discretionary powers under Executive Law § 63(12) against Plaintiffs to enforce CEEFPA Part A is thus insufficient to apply the *Ex parte Young* exception. Plaintiffs have not alleged or indicated in any way that they intend to participate in an unlawful eviction. In any event, to the extent a Plaintiff or any other landlord attempted an unlawful eviction, any enforcement against such action by the Attorney General would be under section 768 of the RPAPL, which provides for civil and criminal penalties for unlawful evictions. *See* RPAPL § 768(1) (prohibiting illegal evictions and lockouts); *id.* 768(b) (providing that violations are a class A misdemeanor and are subject to civil fines). Therefore, to the extent any Plaintiff would engage in a self-help eviction, any enforcement would not be under CEEFPA Part A.

In sum, the mere existence of the Attorney General's general discretionary authority under Executive Law § 63(12) fails to demonstrate a particular duty to enforce or a willingness to enforce CEEFPA Part A. *See, e.g. Dairy Mart*, 411 F.3d at 373; *Connecticut Ass'n of Health Care Facilities,* 2010 WL 2232693, at *5.

Accordingly, none of the requirements of *Ex parte Young* is satisfied, and the Attorney General should be dismissed from this lawsuit. Courts throughout the State have regularly dismissed the Attorney General from lawsuits asserting challenges to the constitutionality of state statutes over which she has no particular enforcement authority. *See, e.g., Burke v. Verizon Commc'ns, Inc.*, No. 18-cv-4496, 2020 WL 4741043, at *4 (S.D.N.Y. Aug. 17, 2020), *report and recommendation adopted*, No. 18-cv-4496, 2020 WL 6538748 (S.D.N.Y. Nov. 6, 2020) (recommending dismissal of action against Attorney General involving constitutional challenge to labor statute); *Sabin v. Nelson*, No. 12-cv-1373, 2014 WL 2945770, at *2 (N.D.N.Y. June 30, 2014) (dismissing constitutional challenge to N.Y. Human Rights Law); *Jones*, 974 F. Supp. 2d at 352-53; *HealthNow New York*, 739 F. Supp. 2d at 295 (dismissing claims because "the Attorney General lacks the required enforcement 'connection'"); *Johnson v. Rockefeller*, 58

F.R.D. 42, 46 (S.D.N.Y. 1972) (dismissing claims against Attorney General, who was not "obligated to enforce the statute here attacked").

Courts in the Eastern District have agreed. *See Ulrich*, 383 F. Supp. 2d at 410 ("[T]he Attorney General has no connection with the enforcement of [the statute at issue], and therefore cannot be a party to this suit." (citing *Ex parte Young*, 209 U.S. 123)).

Accordingly, because the requisite connection between the Attorney General and enforcement of CEEFPA Part A does not exist, the "particular duty" prong of *Ex parte Young* is not satisfied, and she cannot be a Defendant in this lawsuit. *See Mendez*, 530 F.2d at 460 ("The Attorney General has no connection with the enforcement of [the state statute in question], and therefore cannot be a party to this suit.").

## CONCLUSION

For all of the forgoing reasons, Defendant respectfully requests that the Court grant this motion and dismiss all claims asserted in the Complaint, in their entirety and with prejudice.

Dated:  Mineola, New York
         March 23, 2021

LETITIA JAMES
Attorney General
State of New York
*Attorney for Defendant*
By: _s/ Helena Lynch_
Helena Lynch
Assistant Attorney General, *of Counsel*
200 Old Country Road, Suite 240
Mineola, New York 11501
(516) 248-3312 | Helena.lynch@ag.ny.gov