UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------x

PANTELIS CHRYSAFIS, BETTY COHEN,   :
BRANDIE LACASSE, MUDAN SHI, and   :
FENG ZHOU,   :
  :
    *Plaintiffs*,   :
  :        No. 21-cv-00998 (SJF/ARL)
    -against-   :
  :
LETITIA JAMES, in her official capacity as   :
Attorney General of the State of New York,   :
  :
    *Defendant*.   :

--------------------------------------------------------------x

# PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS BASED ON ELEVENTH AMENDMENT IMMUNITY

GIBSON, DUNN & CRUTCHER LLP

200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

*Attorneys for Plaintiffs*

March 26, 2021

**TABLE OF CONTENTS**

Page(s)

PRELIMINARY STATEMENT ................................................................ 1

BACKGROUND ................................................................................. 5

    I.   CEEFPA's Provisions ............................................................. 5

    II.  Procedural History ................................................................ 8

LEGAL STANDARD ........................................................................... 8

ARGUMENT .................................................................................... 10

    I.   Under *Ex Parte Young* And Its Progeny, The AG Is A Proper Party So Long As She Has "Some Connection" To The Enforcement of Part A of CEEFPA. ................. 10

    II.  The AG Has At Least "Some Connection" To The Enforcement of Part A of CEEFPA And Therefore Is A Proper Defendant In This Action. ................................. 13

CONCLUSION .................................................................................. 21

# TABLE OF AUTHORITIES

Page

**Cases**

*Ark. United v. Thurston*,
　2021 WL 411141 (W.D. Ark. Feb. 5, 2021) ..................................................15, 20

*Ass'n of Am. Med. Colleges v. Carey*,
　482 F. Supp. 1358 (N.D.N.Y. 1980) ............................................................. *passim*

*In re Bausch & Lomb Inc. ERISA Litig.*,
　No. 06-CV-6297, 2008 WL 5234281 (W.D.N.Y. Dec. 12, 2008) ...........................9

*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544 (2007) ...............................................................................................9

*Carter v. HealthPort Techs., LLC*,
　822 F.3d 47 (2d Cir. 2016) ......................................................................................9

*City of New York v. Gordon*,
　1 F. Supp. 3d 94 (S.D.N.Y. 2013) ..........................................................................8

*Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*,
　138 F. Supp. 3d 352 (S.D.N.Y. 2015) ...................................................................19

*Conn. Ass'n of Health Care Facilities, Inc. v. Rell*,
　No. 3:10CV136 PCD, 2010 WL 2232693 (D. Conn. June 3, 2010) .....................17

*CSX Transp., Inc. v. N.Y. State Off. of Real Prop. Servs.*,
　306 F.3d 87 (2d Cir. 2002) ...............................................................................2, 10

*In re Dairy Mart Convenience Stores, Inc.*,
　411 F.3d 367 (2d Cir. 2005) ......................................................................... *passim*

*In re Deposit Ins. Agency*,
　482 F.3d 612 (2d Cir. 2007) ..............................................................................2, 10

*Ecogen, LLC v. Town of Italy*,
　438 F. Supp. 2d 149 (W.D.N.Y. 2006) ..................................................................19

*Fed. Nat. Mortg. Ass'n v. Lefkowitz*,
　383 F. Supp. 1294 (S.D.N.Y. 1974) ...................................................3, 14, 19, 20

*HealthNow N.Y., Inc. v. New York*,
　448 F. App'x 79 (2d Cir. 2011) .............................................................................12

*HealthNow N.Y., Inc. v. New York*,
　739 F. Supp. 2d 286 (W.D.N.Y. 2010) ...................................................11, 12, 18

*Idaho v. Coeur d'Alene Tribe of Idaho,*
   521 U.S. 261 (1997)......................................................................................10

*Jones v. Schneiderman,*
   974 F. Supp. 2d 322 (S.D.N.Y. 2013)...........................................................17

*Keiler v. Harlequin Enters., Ltd.,*
   751 F.3d 64 (2d Cir. 2014).............................................................................9

*Kelly v. N.Y. Civ. Serv. Comm'n,*
   632 F. App'x 17 (2d Cir. 2016) ....................................................................12

*Kelly v. N.Y. State Civ. Serv. Comm'n,*
   No. 14 CV 716 VB, 2015 WL 861744 (S.D.N.Y. Jan. 26, 2015) ...........................12

*Littlejohn v. City of New York,*
   795 F.3d 297 (2d Cir. 2015)............................................................................9

*Makarova v. United States,*
   201 F.3d 110 (2d Cir. 2000)............................................................................9

*McCluskey v. N.Y. State Unified Ct. Sys.,*
   442 F. App'x 586 (2d Cir. 2011) ..................................................................21

*Nassau & Suffolk Cty. Taxi Owners Ass'n, Inc. v. State,*
   336 F. Supp. 3d 50 (E.D.N.Y. 2018) ............................................................10

*Nat'l Ass'n for Advancement of Colored People v. Merrill,*
   939 F.3d 470 (2d Cir. 2019)............................................................................1

*Nat'l Org. for Marriage, Inc. v. Walsh,*
   714 F.3d 682 (2d Cir. 2013)..........................................................................19

*Nelson v. MillerCoors, LLC,*
   246 F. Supp. 3d 666 (E.D.N.Y. 2017) ............................................................9

*Neroni v. Zayas,*
   No. 3:13-CV-0127 LEK/DEP, 2014 WL 1311560 (N.D.N.Y. Mar. 31, 2014)....................11

*Nodoushani v. S. Conn. State Univ.,*
   507 F. App'x 79 (2d Cir. 2013) ....................................................................22

*Pennhurst State Sch. & Hosp. v. Halderman,*
   465 U.S. 89 (1984)........................................................................................21

*Pugh v. Goord,*
   571 F. Supp. 2d 477 (S.D.N.Y. 2008).......................................................10, 12

*Riley v. Cuomo,*
    No. 217CV01631, 2018 WL 1832929 (E.D.N.Y. Apr. 16, 2018) ..................................11, 12

*Sabin v. Nelson,*
    No. 12-cv-1373, 2014 WL 2945770 (N.D.N.Y. June 30, 2014) ..............................................18

*Schoenefeld v. New York,*
    No. 1:09-CV-0504 LEK RFT, 2010 WL 502758 (N.D.N.Y. Feb. 8, 2010).......................3, 11

*SD Prot., Inc. v. Del Rio,*
    498 F. Supp. 2d 576 (E.D.N.Y. 2007) ....................................................................................9

*Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v.*
    *Morgan Stanley Inv. Mgmt. Inc.,*
    712 F.3d 705 (2d Cir. 2013)....................................................................................................9

*State by Abrams v. Magley,*
    484 N.Y.S.2d 251 (3d Dep't 1984).................................................................................13, 16

*Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.,*
    535 U.S. 635 (2002).................................................................................................................2

*Williams v. Marinelli,*
    987 F.3d 188 (2d Cir. 2021).....................................................................................................9

*Ex Parte Young,*
    209 U.S. 123 (1908) ..................................................................................... *passim*

**Statutes**

N.Y. Exec. Law § 63(1) .................................................................................................................13

N.Y. Exec. Law § 63(12) ....................................................................................................... *passim*

N.Y. Exec. Law § 71 .........................................................................................................5, 6, 13, 21

**Rules**

Fed. R. Civ. P. 12(b)(1).....................................................................................................................9

Fed. R. Civ. P. 12(b)(6).....................................................................................................................9

## PRELIMINARY STATEMENT

Faced with having to try to defend the indefensible—a new law extending the State's eviction moratorium that imposes unconstitutional mandates on landlords—the AG tries to sidestep the merits altogether, seeking dismissal on procedural grounds that she is supposedly not a proper defendant responsible for enforcing this law, despite her repeated public pronouncements that her "office wants to know" about illegal evictions and "assist" in implementing this statute. Indeed, in connection with the State's pandemic eviction moratoria, her office has even sent out "cease and desist" letters to landlords. The AG can't have it both ways. She can't hold herself out to the public as protecting tenants under this statutory scheme but, then, tell this Court she is such a bit player here that she can't be sued to defend a law she otherwise claims she's committed to enforcing.

Even worse, the AG now contorts the applicable legal standard for immunity under *Ex Parte Young* and ignores binding Second Circuit precedent in an attempt to evade any responsibility for defending the constitutionality of Part A of CEEFPA. But that precedent makes clear that the AG is an appropriate defendant under *Ex Parte Young*'s permissive requirements where, as here, she has "some connection" with enforcement of CEEFPA's provisions. 209 U.S. 123, 157 (1908); *accord, e.g.*, *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 372–73 (2d Cir. 2005) (holding that "the state officer against whom a suit is brought must have some connection with the enforcement of the act that is in continued violation of federal law" (citation and internal quotation marks omitted)). The Second Circuit has time and again rebuffed state officials' asserted Eleventh Amendment defenses under the "straightforward inquiry" mandated by *Ex Parte Young*, which provides an "exception" for such a suit when, as here, "'[the] complaint (a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective.'" *Nat'l Ass'n for Advancement of Colored People v. Merrill*, 939 F.3d 470, 475–76

1

(2d Cir. 2019) (quoting *In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007)); *see also, e.g.*, *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (same); *CSX Transp., Inc. v. N.Y. State Off. of Real Prop. Servs.*, 306 F.3d 87, 98–99 (2d Cir. 2002) (same).

It is indisputable that the AG has at least "some connection" with the enforcement of CEEFPA. Indeed, in her opposition brief, the AG effectively concedes each of the following "connections":

- The AG *admits* that New York Executive Law § 63(12)—which gives the "Attorney General" the express authority to seek "restitution and damages" for various "fraudulent or illegal acts"—"would allow the Attorney General to pursue claims against those who engage in repeated or persistent violations of CEEFPA," and that she "may use" that authority in the future with respect to "CEEFPA Part A." Defendant's Memorandum of Law in Support of Motion to Dismiss, Dkt. 23-1 ("AG Br.") at 16–18.

- The AG has directly involved her office in the implementation and enforcement of CEEFPA, issuing detailed direction to local sheriffs and expressing her office's willingness "to assist" in implementing the statute. *See* Declaration of Akiva Shapiro ("Shapiro Decl.), Exs. 2–4.

- The AG maintains extensive information on CEEFPA and its Hardship Declaration on her website, including a link to the Declaration Form. *See* Shapiro Decl., Ex. 7.

- The AG has made public statements that her "office wants to know" if tenants are "being unlawfully subjected to eviction" during the pandemic. Shapiro Decl., Ex. 6.

- The AG has sent cease and desist letters to landlords and initiated investigations into "deceptive and false" eviction notices in enforcing New York eviction moratoria throughout the pandemic. *See* Shapiro Decl., Exs 4 at 3, 5.

In other words, Executive Law § 63(12) indisputably provides the AG with the power to enforce and enjoin violations of CEEFPA. And the AG has made clear in her public statements that she will use that authority to investigate violations of New York's pandemic eviction moratoria and seek penalties against anyone who, for example, sends rent demands without the challenged Declaration Form or whom she otherwise believes is not complying with the law that Plaintiffs here challenge. That should end the inquiry.

The AG has more than "some connection" to the implementation and enforcement of this statutory scheme, and she therefore should not now be heard to deny that reality when faced with having to defend against a lawsuit challenging its constitutionality. It comes as no surprise, then, that district courts have repeatedly held the AG amenable to suit as a party defendant in similar litigation contexts. *See, e.g., Schoenefeld v. New York*, No. 1:09-CV-0504 LEK RFT, 2010 WL 502758, at *4 (N.D.N.Y. Feb. 8, 2010) (finding AG to be proper defendant and noting that "[a]n official, whose office is tasked with an express or general duty to enforce a statute alleged to be unconstitutional, is sufficiently connected to that statute to make him a proper party to a suit for injunctive relief"); *Ass'n of Am. Med. Colleges v. Carey*, 482 F. Supp. 1358, 1364 (N.D.N.Y. 1980) (AG proper defendant where he would be "empowered to act under the Executive Law § 63(12) to enjoin" violations of challenged statute); *Fed. Nat. Mortg. Ass'n v. Lefkowitz*, 383 F. Supp. 1294, 1296–97 (S.D.N.Y. 1974) (*Ex Parte Young* "some connection" standard met where AG "could attempt to enjoin" conduct prohibited by statute under § 63(12)).

In support of her claim that she is an improper defendant in this action, the AG makes several arguments, none of which is persuasive. She asserts that under *Ex Parte Young*, Plaintiffs must identify a "particular duty" that the AG holds in relation to the challenged statute. AG Br. at 11–13. But this language, which the AG pulls from a few district court cases involving very different circumstances and then erroneously tries to make an element of the *Ex Parte Young* test, has never been embraced by the Supreme Court or the Second Circuit, is inconsistent with the lenient "some connection" standard adopted by both the Supreme Court and the Second Circuit, and, in any event, is satisfied by the AG's authority under Executive Law § 63(12). Relatedly, the AG argues that CEEFPA itself does not expressly provide her with enforcement authority. *Id.* at 14–15. However, as the AG admits, it is unnecessary for her to be named in CEEFPA to be a

proper defendant under *Ex Parte Young* and its Second Circuit progeny. *See* AG Br. at 13; *see also, e.g., Ex Parte Young*, 209 U.S. at 157 (whether duty "arises out of the general law, or is specially created by the act itself, is not material so long as it exists"); *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d at 372–73 (noting that "it is not necessary that the officer's enforcement duties be noted in the act"). Next, she concedes that Executive Law § 63(12) "would allow the Attorney General to pursue claims against those who engage in repeated or persistent violations of CEEFPA," but nevertheless claims that enforcement authority cannot serve as the basis for naming her as a defendant here. AG Br. at 16–18. But again, the AG cannot have it both ways. That statutory authority, the AG's own affirmative support of CEEFPA, and her enforcement of pandemic eviction moratoria are clearly "some connection" sufficient for her to be named as a defendant. Finally, the AG contends, her office has not brought and is not about to bring enforcement actions against these Plaintiffs for violating CEEFPA, so she shouldn't be able to be sued. *Id.* at 18–19. But that cannot be—and is not—the law. Plaintiffs need not wait to be sued or personally threatened with suit to seek prospective relief, particularly in light of the AG's public statements and actions regarding enforcement and in the context of a facial constitutional challenge.

As if it were not bad enough that the AG now misrepresents the proper standard for Eleventh Amendment immunity and tries to run away from her admitted enforcement powers and many public statements vowing to enforce CEEFPA, her counsel continues to dodge the Court's logical question: If not the AG, who else does the AG say would be a "proper" defendant? The Court still does not have a straight answer to that question. Just as at oral argument, the AG relies in her brief on innuendo to suggest that the "court system" might have been a correct party to sue. *See* AG Br. at 14 ("CEEFPA is administered by the court system"); Shapiro Decl., Ex. 1 at 7:4–7

(Assistant AG: "I will say that the court system, the New York State court system, is the entity that is enforcing the statute."). But as the AG well knows, the "court system" is not a proper *Ex Parte Young* defendant because the "court system" is not a state official at all, but an arm of the state.[1] Indeed, if this action had been brought against the "court system," the AG's office would be serving as defense counsel—given that one of that office's core functions, by statute, is to defend the constitutionality of this State's laws (N.Y. Exec. Law § 71)—and, we have no doubt, asserting the same arguments alleged here that Plaintiffs have not named a proper party. In other words, the AG continues to refuse to identify an alternate proper party because what she is really trying to do is hide the ball in an attempt to deny Plaintiffs the opportunity to challenge this plainly unconstitutional law. The Court should not countenance such gamesmanship.

Put simply, the AG is a proper party defendant here, her motion to dismiss should therefore be denied, and the Court should now grant Plaintiffs' request to enjoin Part A of CEEFPA because it imposes unconstitutional mandates on landlords.

## BACKGROUND

I. **CEEFPA's Provisions**

Signed into law on December 28, 2020, CEEFPA compels landlords to provide tenants with a Hardship Declaration "with every written demand for rent[,] . . . any other written notice required by the lease or tenancy agreement, law or rule to be provided prior to the commencement of eviction proceeding, and with every notice of petition served on a tenant." *See* Complaint ("Compl."), Ex. A, CEEFPA Part A § 3. That Hardship Declaration includes a "Declaration Form" explaining that a tenant's declaration of hardship will bar eviction proceedings until at least May

---

[1] Of course, it would be absurd to suggest that, because every State court judge could potentially hear eviction cases implicating this law, Plaintiffs should have sued the State's judges en masse, yet that is the logical import of the AG's illogical argument.

5

1.  *Id.*  While the New York Office of Court Administration is obligated to produce translated Declaration Forms in "Spanish and the six most common languages in the City of New York, after Spanish," *id.* § 10, it is "the landlord's responsibility to obtain a suitable translation of the hardship declaration in the tenant's primary language," *id.* § 3, if the tenant's "primary language" is not one of the seven.  The Hardship Declaration also includes a "pre-eviction notice," which consists of "a list of all not-for-profit legal service providers actively handling housing matters in the county where the subject premises are located," prepared by the Office of Court Administration.  *Id.*  If a tenant submits a Hardship Declaration to the landlord or the court, property owners cannot commence eviction proceedings, and any pending eviction proceedings are stayed, until at least May 1, 2021.  Compl. ¶ 26.

 The Declaration Form, the text of which is set out in CEEFPA itself, asks tenants to "select[]" one or both "option[s]" via checking a box—either that they are "experiencing financial hardship . . . during the COVID-19 pandemic" or that "moving . . . would pose a significant health risk"—to qualify for a stay of existing eviction proceedings or a suspension of new proceedings. *Id.* § 1(4).  A tenant need only "select[]" one of the options, without explaining more.  While the Declaration Form contains a "notice" clause informing the tenant that he or she is "signing and submitting the form under penalty of law," *id.*, there is no requirement to attach corroborating documents to support the category chosen, and no requirement that the form be submitted under penalty of perjury.  *Cf., e.g.*, *id.* § 4 ("If there is no pending eviction proceeding and a tenant provides a hardship declaration to the landlord, there shall be no initiation of an eviction proceeding against the tenant until at least May 1, 2021. . . .").

 Tenants are instructed to return the Declaration Form to the landlord or, if an eviction proceeding has already commenced, to the court.  *Id.* § 1(4).  Unless landlords like Plaintiffs file

an affidavit with the court signed under penalty of perjury demonstrating that they have delivered a copy of the Hardship Declaration to a tenant—including the "manner in which the petitioner[-landlord] or the petitioner[-landlord]'s agent served a copy of the hardship declaration" and whether it was served both "in English and the tenant's primary language"—and attest that they have not "received" a completed Declaration Form in response, no landlord may commence an eviction proceeding. *Id.* § 5.

Under CEEFPA, the submission of a Declaration Form with the financial hardship option selected will create a "rebuttable presumption that the tenant is experiencing financial hardship" under New York's Tenant Safe Harbor Act ("TSHA"), an executive order, or other state or local laws—even after May 1. *Id.* § 11. This provision, together with the stay of proceedings, effectively eliminates what little opportunity landlords had to check claims of financial hardship under the TSHA. The new law is silent on what type of evidence, if any, would rebut the presumption, how a court is to evaluate such evidence, or in what manner or forum such evidence may be submitted.

Compounding the issue, and in keeping with CEEFPA's wholesale stripping of owners' rights and structural bar on court access, the law provides no mechanism for landlords to determine in eviction proceedings—let alone contest—the reasons for a declaration of hardship. Where a tenant submits a Declaration Form to the property owner, "there shall be no initiation of an eviction proceeding against the tenant" until at least May 1, 2021. CEEFPA Part A § 4. To effectuate this prohibition, CEEFPA provides that "no court shall accept for filing" any eviction petition or other filing unless a landlord files an affidavit under penalty of perjury attesting that it (and its agents) have not received a Hardship Declaration or that the CEEFPA's narrow nuisance exception applies. *Id.* § 5(1). Similarly, an in-progress eviction proceeding is automatically stayed upon

filing of a Hardship Declaration until at least May 1, 2021, and where an eviction warrant has been issued it may not be executed until at least the same date. *Id.* §§ 6, 8. Thus, property owners are for all practical purposes powerless to challenge, in an eviction proceeding, a tenant's representation of hardship.

## II.    Procedural History

Plaintiffs filed the Complaint on February 24, 2021, asserting facial and as-applied challenges to Part A of CEEFPA under the U.S. and New York State Constitutions. *See* Compl. ¶¶ 62–99. Plaintiffs filed a motion for a temporary restraining order or preliminary injunction the next day. *See* Dkt. 5–12. In her TRO/PI opposition brief, the AG raised the argument that she is not a proper party under the *Ex Parte Young* exception to Eleventh Amendment immunity, but did not identify a proposed alternative defendant responsible for CEEFPA Part A's enforcement. *See* Dkt. 16 at 11–13. Plaintiffs responded to that argument in their TRO/PI reply. *See* Dkt. 19 at 9–10. The Court held oral argument on Plaintiffs' TRO/PI motion on March 16, Dkt. 14. At the hearing, the Court asked counsel for the AG "[w]ho should have been sued, according to you?" Shapiro Decl., Ex. 1 at 5:13–14. The AG's counsel answered that "we refrained from including that in our papers because we viewed it as providing legal advice to . . . the [P]laintiffs . . . ." *Id.* at 5:15–18. After the Court cautioned the AG's counsel that "this is not a game," the AG's counsel asserted that "the New York State court system[] is the entity that is enforcing the statute," but did not state or represent that the "court system" would be a proper defendant. *Id.* at 5:21, 7:4–5. The Court then ordered the AG to file any motion to dismiss on the issue of whether she is a proper defendant by March 30. *See* Dkt. 22. The instant motion followed.

## <u>LEGAL STANDARD</u>

To survive a motion to dismiss, "the plaintiff must plead sufficient facts 'to state a claim to relief that is plausible on its face.'" *City of New York v. Gordon*, 1 F. Supp. 3d 94, 110 (S.D.N.Y.

2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (discussing 12(b)(6)); *see also Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016) (discussing plausibility standard for 12(b)(1) motions). Application of the plausibility standard is "context-specific, and requires assessing the allegations of the complaint as a whole." *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 719 (2d Cir. 2013) (citations and quotation marks omitted). The complaint need not contain "detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters., Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) (citation omitted). At the pleading stage, "all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015).

The Second Circuit has noted that the issue of Eleventh Amendment immunity is jurisdictional, *Williams v. Marinelli*, 987 F.3d 188, 196 (2d Cir. 2021), meaning that a motion to dismiss based on the Eleventh Amendment should be treated as one under Rule 12(b)(1), *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In seeking to demonstrate that jurisdiction exists, a party asserting jurisdiction may rely on—and the court should consider—evidence outside the pleadings. *Makarova*, 201 F.3d at 113.[2] The standard for a Rule 12(b)(1) motion is otherwise "substantively identical" to that applied to a Rule 12(b)(6) motion to dismiss. *SD Prot., Inc. v. Del Rio*, 498 F. Supp. 2d 576, 580 (E.D.N.Y. 2007) (citation omitted).

---

[2] Because the AG moves for dismissal on Eleventh Amendment immunity grounds, her motion is properly treated as one under Rule 12(b)(1), and the Court may consider materials outside the Complaint. *See Makarova*, 201 F.3d at 113; *see also* AG Br. at 1 (moving, *inter alia*, "pursuant to Rule[] 12(b)(1)"). To the extent she also purports to move under Rule 12(b)(6), she does so erroneously, as the sole basis for the motion is Eleventh Amendment immunity. In any event, the documents upon which Plaintiffs rely herein are properly subject to judicial notice because they are public and their authenticity is not disputed. *See, e.g., In re Bausch & Lomb Inc. ERISA Litig.*, No. 06-CV-6297, 2008 WL 5234281, at *1 n.1 (W.D.N.Y. Dec. 12, 2008) (court may take judicial notice of "public statements by government authorities" without converting motion to dismiss into motion for summary judgment); *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 673 (E.D.N.Y. 2017) (news articles).

<u>**ARGUMENT**</u>

I.   **Under *Ex Parte Young* And Its Progeny, The AG Is A Proper Party So Long As She Has "Some Connection" To The Enforcement of Part A of CEEFPA.**

There can be no doubt that the AG is a proper defendant under the exception to Eleventh Amendment immunity established by the Supreme Court in *Ex Parte Young*.  That doctrine—a "landmark of American constitutional jurisprudence"—permits suit against an individual state officer where, as here, the complaint "(a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective."  *In re Deposit Ins. Agency*, 482 F.3d at 618 (citation and internal quotation marks omitted).  This "straightforward inquiry" thus "operates to end ongoing violations of federal law and vindicate the overriding federal interest in assuring the supremacy of that law."  *Id.* (citation and internal quotation marks omitted); *see also CSX Transp., Inc.*, 306 F.3d at 98 (purpose of *Ex Parte Young* is to "ensure that the doctrine of sovereign immunity remains meaningful, while also giving recognition to the need to prevent violations of federal law" (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 269 (1997))).

For a state official to be a proper defendant in a challenge to a statute under *Ex Parte Young*, that official must only have "some connection with the enforcement of the act."  209 U.S. at 157.  Consistent with that command, courts in the Second Circuit "require only that a defendant have a 'connection' with the act, and not more." *Pugh v. Goord*, 571 F. Supp. 2d 477, 517 (S.D.N.Y. 2008) (citing *In re Dairy Mart*, 411 F.3d at 372–73); *see also Nassau & Suffolk Cty. Taxi Owners Ass'n, Inc. v. State*, 336 F. Supp. 3d 50, 68 (E.D.N.Y. 2018) (that the defendant has "some connection with enforcement" is the "the important and material fact" in applying *Ex Parte Young* (quoting 209 U.S. at 157)).  In keeping with the permissive and "straightforward" nature of the *Ex Parte Young* test, "[s]o long as there is such a connection, it is not necessary that the officer's enforcement duties be noted in the act."  *In re Dairy Mart*, 411 F.3d at 372–73.  Indeed, a sufficient

obligation may "exist by reason of the general duties of the officer to enforce [the statute] as a law of the state." *Ex Parte Young*, 209 U.S. at 157–58 (whether officer's connection to enforcement of an act "arises out of the general law, or is specially created by the act itself, is not material so long as it exists"); *see Schoenefeld*, 2010 WL 502758, at *4 ("An official, whose office is tasked with an express or general duty to enforce a statute alleged to be unconstitutional, is sufficiently connected to that statute to make him a proper party to a suit for injunctive relief."). Similarly, "[t]he state official need not be personally involved with the alleged wrongdoing to be properly named as a defendant." *Neroni v. Zayas*, No. 3:13-CV-0127 LEK/DEP, 2014 WL 1311560, at *8 (N.D.N.Y. Mar. 31, 2014).

Ignoring the permissive "some connection" standard, the AG relies on language in two district court cases to assert that a state officer must have a "particular duty" to enforce the law in question. AG Br. at 11 (citing *HealthNow N.Y., Inc. v. New York*, 739 F. Supp. 2d 286, 294 (W.D.N.Y. 2010), *aff'd* 448 F. App'x 79 (2d Cir. 2011), and *Riley v. Cuomo*, No. 217CV01631ADSAYS, 2018 WL 1832929, at *5 (E.D.N.Y. Apr. 16, 2018)). In the AG's telling, that duty must be equivalent to a "special charge" in the challenged statute. AG Br. at 13 (quoting *HealthNow*, 739 F. Supp. 2d at 295). But as noted above, the Supreme Court and the Second Circuit have instructed otherwise. *See Ex Parte Young*, 209 U.S. at 157; *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d at 372–73. The reference in *HealthNow* and *Riley* to a state officer's "particular duty" to enforce the challenged statute thus incorrectly strays from the permissive test articulated in longstanding Supreme Court and Second Circuit jurisprudence.

Tellingly, while *HealthNow* purported to quote *Ex Parte Young* for the proposition that "a 'particular duty to enforce the statute in question' and a 'demonstrated willingness to do so' are needed" to name a state official as a defendant, 739 F. Supp. 2d at 294 (quoting 209 U.S. at 161),

no such language appears in *Ex Parte Young*. Indeed, the cited portion of *Ex Parte Young* says exactly the opposite: that "the duty to enforce the statute is sufficiently apparent when such duty exists under the general authority of some law, even though such authority is not to be found in the particular act. It might exist by reason of the general duties of the officer to enforce it as a law of the state." 209 U.S. at 158. In other words, the AG's presentation of the supposed legal standard is based on a case that *misquotes* the leading Supreme Court decision and as a result invents a non-existent requirement. It is not surprising, then, that in affirming the *HealthNow* court's decision, the Second Circuit did not use the district court's "particular duty" phraseology, *see HealthNow N.Y. Inc.*, 448 F. App'x at 81–82, and Plaintiffs have not found any case in which the Supreme Court or the Second Circuit have ever so much as referenced this so-called standard.

For its part, *Riley*—which involved a suit against the governor rather than the AG, and did not challenge the constitutionality of a statute—relied on another unpublished district court case in describing the purported "particular duty" requirement. *See Riley*, 2018 WL 1832929, at *5 (citing *Kelly v. N.Y. State Civ. Serv. Comm'n*, No. 14 CV 716 VB, 2015 WL 861744, at *2 (S.D.N.Y. Jan. 26, 2015), *aff'd*, 632 F. App'x 17 (2d Cir. 2016)). But the *Kelly* case itself derived this supposed requirement from *HealthNow*'s mistaken attribution. *See Kelly*, 2015 WL 861744, at *2. And once again, the Second Circuit did not adopt the *Kelly* district court's "particular duty" language on appeal, instead applying the well-established "some connection" standard. *Kelly*, 632 F. App'x at 18.

At bottom, the "particular duty" requirement the AG presents is unmoored from the governing Second Circuit and Supreme Court precedent and should not be adopted. That precedent requires "some connection" and "not more." *Pugh*, 571 F. Supp. 2d at 517. In any event, as discussed below, the AG is clearly a proper party under either formulation.

## II. The AG Has At Least "Some Connection" To The Enforcement of Part A of CEEFPA And Therefore Is A Proper Defendant In This Action.

The AG plainly has "some connection with the enforcement" of CEEFPA, making her a proper defendant here. *Ex Parte Young*, 209 U.S. at 157.

New York law provides that "[w]henever any person shall engage in repeated fraudulent or illegal acts or otherwise demonstrate persistent fraud or illegality in the carrying on, conducting or transaction of business," the "[A]ttorney [G]eneral" is empowered to "apply . . . for an order enjoining the continuance of such business activity or of any fraudulent or illegal acts" and, among other things, "directing restitution and damages." N.Y. Exec. Law § 63(12). The AG admits that this provision "would allow the Attorney General to pursue claims against those who engage in repeated or persistent violations of CEEFPA . . . ." AG Br. at 16–17; *see also State by Abrams v. Magley*, 484 N.Y.S.2d 251, 252–53 (3d Dep't 1984) (misrepresentations in notices of termination sent to tenants "clearly fell within the provisions of" § 63(12)). And she even admits that she "may use her discretionary authority under section 63(12) to take some future action with respect to repeated or persistent violations of CEEFPA Part A." AG Br. at 18. Thus, there is no dispute that the AG is empowered by Executive Law § 63(12) to enforce CEEFPA's provisions.[3]

This statutory power supplies the necessary connection to name the AG as a defendant in this action. The Supreme Court in *Ex Parte Young* made clear that such grants of statutory authority may be sufficient for a finding of "some connection" to enforcement. There, the Court considered whether Minnesota's attorney general was a proper defendant in a suit challenging the constitutionality of state railroad rate requirements. *Ex Parte Young*, 209 U.S. at 126–34. The

---

[3] New York law also provides that the AG "shall" "[p]rosecute and defend all actions and proceedings in which the state is interested, and have charge and control of all the legal business of the departments and bureaus of the state." N.Y. Exec. Law § 63(1). And the AG is further empowered to appear in defense of state statutes whenever their constitutionality is called into question. *Id.* § 71. These provisions only further illustrate the AG's necessary involvement in constitutional challenges such as the one here.

Court noted that the attorney general had a "general duty imposed upon him" by common law and various statutes "to enforce the statutes of the state," including the rate requirements at issue. *Id.* at 161. That power "sufficiently connected him with the duty of enforcement" to make him a proper party to a suit challenging the rate requirements' constitutionality. *Id.* at 162.

Consistent with *Ex Parte Young*'s holding, and as the AG acknowledges, AG Br. at 17–18, district courts within the Second Circuit have previously concluded that the AG's enforcement powers under Executive Law § 63(12) were sufficient to name the AG as a defendant in constitutional challenges to state laws. *See Carey,* 482 F. Supp. at 1364 (AG was proper defendant where he was "empowered to act" under Executive Law § 63(12) to enjoin violations of the New York Education Law if the plaintiff "cho[]se to violate its provisions"); *Lefkowitz*, 383 F. Supp. at 1297 (AG's authority to "affirmatively seek an injunction" under Executive Law § 63(12) satisfied requirement that AG have "some connection" to enforcing allegedly unconstitutional New York law). Given the AG's admitted power to enforce CEEFPA under Executive Law § 63(12), the same is true here.

While the AG now tries to run from her enforcement authority in order to evade this suit, the AG's public statements and actions regarding CEEFPA make abundantly clear that she is a proper defendant. Indeed, one day after CEEFPA was signed, the AG's housing unit issued detailed directions to local sheriffs regarding compliance with the law. *See* Shapiro Decl., Ex. 2. One week later, the AG publicly affirmed that her "office remains willing and able to assist local sheriffs and law enforcement departments" with respect to implementing CEEFPA. *See* Shapiro Decl., Ex. 3 at 2. And she maintains extensive information on CEEFPA and the Hardship Declaration on her website, including a link to the Declaration Form. *See* Shapiro Decl., Ex. 7. The AG has, moreover, broadcast to the public that "[i]f you or someone you know is being

unlawfully subjected to eviction, my office wants to know[.]" Shapiro Decl., Ex. 6. The AG's actions with respect to New York's previous eviction moratoria also support her authority and intent to enforce CEEFPA. Her office "has already sent cease and desist letters to landlords throughout the state who have unlawfully threatened tenants with eviction amidst the COVID-19 pandemic." Shapiro Decl., Ex. 4 at 3. And, under a prior eviction moratorium, the AG initiated an investigation into a law firm for serving "deceptive and false" eviction notices to tenants. Shapiro Decl., Ex. 5. In light of the AG's public guidance regarding the implementation of CEEFPA and its Hardship Declaration requirements, as well as her demonstrated willingness to enforce New York's eviction moratoria, the AG cannot now credibly claim that she has no "willingness to enforce CEEFPA Part A." AG Br. at 19; *see Ark. United v. Thurston*, 2021 WL 411141, at *8 (W.D. Ark. Feb. 5, 2021) (board of election commissioners proper defendants in suit challenging election provision where they "provid[ed] statewide guidance and training to election officers and county election commissioners" and "issue[d] a manual of procedures for county election commissions as well as additional training materials for election officials").

CEEFPA's structure also supports the conclusion that the AG is a proper party. As a general matter, the statute directs certain actions or non-action, or imposes various requirements in certain circumstances, on New York's courts; sheriffs, constables, and marshals; and landlords like Plaintiffs. But it does not expressly describe which state officials are responsible for enforcing its provisions, leaving such enforcement authority to be granted to the AG through other statutes, such as Executive Law § 63(12), consistent with the enforcement framework discussed in *Ex Parte Young*. And in fact, if Plaintiffs fail to comply with the statute's Hardship Declaration requirements, the AG plainly possesses the power to bring suit against them. For example, CEEFPA mandates that landlords "include a 'Hardship Declaration' . . . with every written demand

for rent[,] . . . any other written notice required by the lease or tenancy agreement, law or rule to be provided prior to the commencement of eviction proceeding, and with every notice of petition served on a tenant." CEEFPA Part A § 3. This provision—which is central to Plaintiffs' First Amendment claim—does not specify how it may be enforced if landlords do not comply. But there can be no doubt that it is the AG—not New York courts or local sheriffs—that has authority to bring suit against landlords who fail to provide the required Hardship Declarations along with tenant communications. *Cf. Magley*, 484 N.Y.S.2d at 252–53. Thus, enjoining the AG from enforcing the requirement will remedy Plaintiffs' constitutional harms under the First Amendment. Regardless of whether there are other proper defendants in an action challenging CEEFPA's constitutionality, for all of these reasons the AG has at least "some connection" to CEEFPA's enforcement and is *a* proper party, and that is all that is necessary. And even if the AG were correct that she must have a "particular duty" to enforce CEEFPA to be properly named as a defendant— and she is not—that standard would be met here in light of the AG's enforcement authority under Executive Law § 63(12) and her public support and assistance in enforcing CEEFPA.

In response to these facts, the AG attempts to minimize her statutory authority to enforce CEEFPA, arguing at length that "[n]owhere in CEEFPA Part A is there any provision mandating, or even addressing enforcement by the Attorney General." AG Br. at 14–15. But that is a non sequitur. As the AG herself concedes, "[t]he absence of an express grant of authority" is "not dispositive" in determining the proper state defendant in a suit seeking prospective injunctive relief. *Id.* at 13; *see also Ex Parte Young*, 209 U.S. at 157; *In re Dairy Mart, Inc.*, 411 F.3d at 372–73. That is especially true where, as discussed above, the text of CEEFPA does not clearly delineate which state officials are responsible for its enforcement, and instead leaves other statutes to fill that gap. This fact plainly distinguishes the case the AG cites in support of her claim that

the absence of specific statutory enforcement authority is a significant factor, as another state body *was* granted exclusive enforcement authority there. *See Jones v. Schneiderman*, 974 F. Supp. 2d 322, 352 (S.D.N.Y. 2013) (AG did not have "some connection" with enforcement of Alcoholic Beverages Law where violations could be "punished only by suspension or revocation of the offender's liquor license," which was "the purview of the New York State Liquor Authority").

The AG also asserts that her enforcement powers under Executive Law § 63(12) are insufficient to make her a proper defendant. *See* AG Br. at 16–19. Of course, she admits that § 63(12) would permit her to "pursue claims against those who engage in repeated or persistent violations of CEEFPA." *Id.* at 16–17. That concession alone renders her a proper party under *Ex Parte Young* and subsequent Second Circuit precedent, which the AG again strays from in erroneously relying on *HealthNow*'s "particular duty" language. The AG also asserts—citing a district court case addressing a suit against Connecticut's governor—that finding her a proper party here would "extend *Young* beyond what the Supreme Court has intended and held" by permitting the AG's office to be named as a defendant in suits seeking to "invalidate nearly any statute that regulates 'the carrying on, conducting or transaction of business.'" *Id.* at 17 (citing *Conn. Ass'n of Health Care Facilities, Inc. v. Rell*, No. 3:10CV136 PCD, 2010 WL 2232693, at *5 (D. Conn. June 3, 2010), *aff'd,* 395 F. App'x 741 (2d Cir. 2010), *and aff'd sub nom. Conn. Ass'n of Health Care Facilities, Inc. v. Bremby*, 519 F. App'x 44 (2d Cir. 2013)). Not so. CEEFPA does not designate an officer responsible for enforcing the statute, underscoring the necessary role the AG will play in enforcement, including through Executive Law § 63(12), and the importance of naming the AG as a defendant so Plaintiffs can vindicate their constitutional rights. The same is not true for many other statutes—such as the one at issue in *Jones,* 974 F. Supp. 2d at 352—for which primary enforcement authority clearly belongs to a different official or agency. Moreover,

as explained above, the AG has taken it upon herself to publicly assist and support the enforcement of CEEFPA, and shown particular interest in enforcing New York's eviction moratoria. *See supra* 14–15. Given CEEFPA's structure and the AG's own affirmative statements and actions, permitting suit against her here will not result in the purported cascade of litigation of which she warns. Indeed, both the *Carey* and *Lefkowitz* courts concluded decades ago that the AG could be named a defendant pursuant to New York Executive Law § 63(12) under proper circumstances, and those decisions did not result in a flood of litigation inconsistent with *Ex Parte Young*.[4]

Next, the AG attempts to distinguish *Carey* and *Lefkowitz*, arguing that in those cases there "were additional facts demonstrating that enforcement by the Attorney General was imminent or likely." AG Br. at 17–18. This is simply not correct. In *Carey*, the plaintiff stated that it would *not* administer its Medical College Admissions Test in New York unless the allegedly unconstitutional law was enjoined, yet the court found it sufficient that the AG would be "empowered" under Executive Law § 63(12) to enjoin any violations that might occur, and that the plaintiff did "not look favorably upon the testing legislation and could *conceivably* choose to violate its provisions." *Carey*, 482 F. Supp. at 1363–64 (emphasis added). The *Carey* court, moreover, reached that holding *despite* the fact that the Commissioner of Education had a duty to enforce the challenged law, since he had stated that violations "would be brought to the attention of" the AG. *Id.* at 1364. And in *Lefkowitz*, the court noted that the plaintiff announced its intention to defy the statute "by bringing [the] suit" to enjoin the law's provisions, and that the AG could bring suit against the plaintiff under Executive Law § 63(12) in the future if it failed to make the

---

[4] The other cases cited by the AG, in addition to *HealthNow* and *Jones*, in which the AG was dismissed as an improper defendant, *see* AG Br. at 20–21, did not address the AG's authority under Executive Law § 63(12) and, in some instances, involved statutes plainly enforced by other state entities. *See, e.g.*, *Sabin v. Nelson*, No. 12-cv-1373, 2014 WL 2945770, at *2 (N.D.N.Y. June 30, 2014) (dismissing AG where enforcement of New York Human Rights Law was responsibility of Division of Human Rights).

annual payments required by the challenged statute. 383 F. Supp. at 1296–97. Clearly, then, there was no more risk of enforcement in *Carey* or *Lefkowitz* than against Plaintiffs here, given CEEFPA's indisputable application to them and the AG's conceded power to enforce the statute. Indeed, the AG acknowledges that she "may use her discretionary authority under section 63(12) to take some future action with respect to repeated or persistent violations of CEEFPA Part A." AG Br. at 18. This is exactly the threatened enforcement of future violations of the challenged statute held to be sufficient in *Carey* and *Lefkowitz*.

Relatedly, the AG asserts that Plaintiffs may not seek prospective relief against CEEFPA's enforcement because they have not yet "filed eviction proceedings in violation of CEEFPA Part A." AG Br. at 18–19. Yet, as *Carey* explains, "[t]his position . . . flies in the face of well established judicial precedent which holds that a party need not await the occurrence of a threatened injury which will result from enforcement of a statute under attack before being allowed to seek preventive relief." 482 F. Supp. at 1362 (collecting cases). That principle is particularly true here, as Plaintiffs bring *facial* challenges—which, "by virtue of being facial challenges, are ripe and have been ripe from the moment the [c]hallenged laws were passed." *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 138 F. Supp. 3d 352, 384 (S.D.N.Y. 2015) (alterations and quotation marks omitted), *aff'd*, 945 F.3d 83 (2d Cir. 2019); *accord Ecogen, LLC v. Town of Italy*, 438 F. Supp. 2d 149, 155 (W.D.N.Y. 2006) ("[F]acial challenges to legislative acts are ripe by their very nature." (quotation marks omitted)). Plaintiffs—who are undisputedly subject to CEEFPA Part A, *see, e.g.*, Compl. ¶ 8—need not risk liability by violating CEEFPA and awaiting the consequences—including the deprivation of their First Amendment rights. *See, e.g.*, *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 689 (2d Cir. 2013) ("[W]e assess pre-enforcement First Amendment claims . . . under somewhat relaxed standing and ripeness rules,"

as "without the possibility of pre-enforcement challenges, plaintiffs [must] refrain[] from activity they believe the First Amendment protects, or risk civil or criminal penalties for violating the challenged law." (internal quotation marks omitted)). "[T]he Court clearly has before it a controversy which is ripe for determination," *Carey*, 482 F. Supp. at 1363, and the AG is wrong to suggest otherwise.[5]

The AG also seeks to distance herself from her own public involvement with CEEFPA and its enforcement, which she downplays as providing only "general information" to other law enforcement officers. *See* AG Br. at 19. But since the start of the pandemic, the AG has done far more—including, as discussed in more detail above, advertising her willingness to directly "assist" officers in implementing CEEFPA, *see* Shapiro Decl., Ex. 3 at 2, sending cease and desist letters to landlords threatening eviction, *see* Shapiro Decl., Ex. 4 at 3, initiating investigations into "deceptive and false" eviction notices, *see* Shapiro Decl., Ex. 5, and broadcasting that her office "wants to know" about illegal evictions, Shapiro Decl., Ex. 6, which can only mean for enforcement purposes. The AG has thus directly inserted her office into the law's enforcement— through both public statements and actions. That AG cannot walk back those decisions now as a means of shielding her office from suit. *See Thurston*, 2021 WL 411141, at *8.

Finally, despite the AG's protestations that she is not the proper party here, her counsel *still* dodges the Court's question: If not the AG, who else would be a "proper" defendant? The AG's brief does not provide an answer, offering only the tepid claims that "CEEFPA is administered by the court system" and court employees "in the first instance," and that portions of

---

[5] Contrary to the AG's claim, *Lefkowitz*, 383 F. Supp. 1294, in no way suggests that this pre-enforcement action is unripe. *See* AG Br. at 18. As explained above, in *Lefkowitz*, "the plaintiff, *by bringing th[e] action*, . . . announced its intention to defy the statute in its entirety and utterly to ignore its mandate." 383 F. Supp. at 1297 (emphasis added). Likewise here, "by bringing this action," Plaintiffs have adequately demonstrated their "intention" not to comply with CEEFPA Part A's unconstitutional provisions. *Id.*

its mandates are "directly primarily to courts and law enforcement officers." AG Br. at 14–15. This innuendo mirrors the similarly oblique statements of the AG's counsel at oral argument. *See* Shapiro Decl., Ex. 1 at 7:4–7 ("I will say that the court system, the New York State court system, is the entity that is enforcing the statute."). But as the AG is surely aware, the "court system" is not a proper *Ex Parte Young* defendant because the "court system" is not a state official at all, but an arm of the state. *See, e.g.*, *McCluskey v. N.Y. State Unified Ct. Sys.*, 442 F. App'x 586, 588 (2d Cir. 2011) (explaining that "'regardless of the nature of the relief sought,'" "claims against the Unified Court System are barred by the Eleventh Amendment since it is an arm of the State of New York" (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)). And if this action had been brought against the "court system," the AG's office would be serving as defense counsel, *see* N.Y. Exec. Law § 71 (entrusting AG with power to defend constitutionality of New York laws), and no doubt would be arguing that Plaintiffs have not named a proper defendant. In other words, what the AG is really doing here is obfuscating in an attempt to deny Plaintiffs the opportunity to challenge this plainly unconstitutional law. But in the end, CEEFPA's provisions, the AG's statutory authority, and her own statements and actions make clear that she is a proper defendant in this suit.

## CONCLUSION

For the foregoing reasons, this Court should deny the AG's motion to dismiss. The AG is the State officer with the greatest connection to CEEFPA's enforcement. Hence, the AG is a proper party defendant here, her motion to dismiss should therefore be denied, and the Court should now grant Plaintiffs' request to enjoin Part A of CEEFPA because it imposes unconstitutional mandates on landlords.[6]

---

[6] If the Court were nevertheless inclined to grant the AG's motion, Plaintiffs respectfully request that it be without prejudice and that they be permitted to amend their Complaint to name as defendants "court system"

Dated:   New York, New York              GIBSON, DUNN & CRUTCHER LLP
         March 26, 2021


                                         By:  */s/ Randy M. Mastro*
                                              Randy M. Mastro
                                              Akiva Shapiro
                                              200 Park Avenue
                                              New York, NY 10166
                                              Tel.:  (212) 351-4000
                                              rmastro@gibsondunn.com
                                              ashapiro@gibsondunn.com

                                              *Attorneys for Plaintiffs*

---

representatives, which Plaintiffs would immediately do, thereby permitting the Court to address Plaintiffs' preliminary injunction application in any event.  *See, e.g.*, *Nodoushani v. S. Conn. State Univ.*, 507 F. App'x 79, 80 (2d Cir. 2013) (cases dismissed based on Eleventh Amendment immunity should be dismissed without prejudice because the court lacks subject matter jurisdiction).